1

Name: Nicole Albrecht

2

Address: 11064 Mississippi Ave

3

Los Angeles, CA 90025

4

Phone: 310-293-1847

5

Fax: _____

6

In Pro Per

7

FILED
CLERK, U.S. DISTRICT COURT

MAY 1 9 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

8

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

9

NICOLE ALBRECHT

CASE NUMBER:

10

11

Plaintiff

SACV15-00451 GW (SS)

12

v.

13

DEPARTMENT OF HOMELAND SECURITY /

**Supporting Documents for Habeas Corpus**

14

IMMIGRATION AND CUSTOMS ENFORCEMENT

TITLE OF PLEADING

15

Defendant(s).

Exhibits

16

17

Exhibit 1-Humanitarian Parole-1/7/15

X   Nicole

18

Exhibit 2-Humanitarian Parole-1/15/15

19

Exhibit 3-Humanitarian Parole-1/25/15

20

Exhibit 4-Humanitarian Parole-2/4/15

21

Exhibit 5-Humanitarian Parole-2/4/15

22

Exhibit 6-Rodriguez Bond Appeal Brief

23

Exhibit 7-Rodriguez Bond Transcripts- Partial

24

Exhibit 8-Criminal Court Docket, Proof of Detention

25

Exhibit 9-Alexandra Paul TRO

26

Exhibit 10-Ian Murray TRO

27

Exhibit 11-Police Threat Report, Unnecessary Lockdowns

28

(SEE NEXT PAGE)

CV-127 (09/09)                    **PLEADING PAGE FOR A SUBSEQUENT DOCUMENT**

1 Exhibit 12-Medical Neglect, Court Continuance, Unnecessary Lockdowns, Denial of

2 Legal Phone Calls, Resulting in Asylum and Rodriguez Bond Hearing Denials

3 Exhibit 13-Approved / Bona Fide I-130 Petition

4 Exhibit 14-Jayson Albrecht Extradition, Asylum Receipt

5 Exhibit 15-Attorney & Husband Letters to ICE / FOD Deputy, Inaction and Neglect of Case,

6 Multiple Detainee Complaint-Unnecessary Lockdowns at SACJ

7 Exhibit16-Denied Legal Phone Calls Requests (most), Denied or Unanswered Medical Requests

8

9

10                    Exhibits

11

12            X   _Nicole _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date of Submission: 5/15/15

Nicole ALBRECHT- Habeas Corpus  / Case # SACV15-00451 GW (SS)

<u>Table of Contents</u>

| <u>Exhibit</u> | <u>Description</u> | <u>Page</u> |
|---|---|---|
| 1 | Humanitarian Parole | 1-6 |
| 2 | Humanitarian Parole | 7-25 |
| 3 | Humanitarian Parole | 26-31 |
| 4 | Humanitarian Parole | 32-35 |
| 5 | Humanitarian Parole | 36-38 |
| 6 | Rodriguez Bond Appeal Brief | 39-57 |
| 7 | Rodriguez Bond Transcripts-Partial | 58-60 |
| 8 | Criminal Court Docket, Proof of Detention | 61-64 |
| 9 | Alexandra Paul TRO | 65-86 |
| 10 | Ian Murray TRO | 87-104 |
| 11 | Police Threat Report, Unnecessary Lockdown | 105-111 |
| 12 | Medical Neglect, Court Continuance, Unnecessary Lockdowns, Denial of Legal Phone Calls, Result-Asylum And Rodriguez Hearing Denials | 112-115 |
| 13 | Approved / Bona Fide I-130 Petition | 116 |
| 14 | Jayson Albrecht Extradition, Asylum Receipt | 117-122 |
| 15 | Attorney & Husband Letters to ICE FOD Deputy Ruben Vela Jr, Inaction and neglect of case, Multiple Detainee Complaint- Unnecessary Lockdowns at SACJ | 123-131 |
| 16 | Denied Legal Phone call requests (most), Denied or Unanswered Medical Requests | 132-139 |



Immigrant Rep, Inc.    ☎ (310) 427-7705
PO Box 4736    ☎: (310) 988-2886
Rolling Hills Estates, CA 90274    ✉: info@immigrantrep.com
🌐: www.immigrantrep.com

January 7, 2015

### Re: Request for Humanitarian Parole:
### Petra Albrecht, A# 206-409-411
### Nicole Albrecht, A# 206-407-728

To Whom It May Concern:

The purpose of this letter is to request **Humanitarian Parole** under Section 212(d)(5)(A) of the Immigration and Nationality Act.[1] My G-28 is already in the file for both individuals named above; for convenience, please find attached copies of the G-28's.[2]

### Background

Petra Albrecht is the mother of Nicole Albrecht. Both individuals named above are citizens of Germany and are currently in the custody of the Department of Homeland Security. Petra is currently detained in the Otay Detention Facility, while Nicole is currently detained in the Santa Ana City Jail (under contract with Immigration and Customs Enforcement).

In 2011, both individuals entered the United States on the Visa Waiver Program, along with Petra's eleven-year-old son (and Nicole's brother), Jayson Albrecht. Petra and Nicole have not left the United States since then. (Jayson remained in the United States until approximately December 18, 2014, at which time he was forced to return to Germany, in a joint operation conducted by the governments of California and Germany, discussed below.)

The reason why they remained in the United States was out of fear of persecution, torture, and retribution in Germany due to their failure to abide by Germany's policies compelling attendance in government schools. Both Petra and Nicole were involved in Jayson's homeschooling – in violation of German law – and now face persecution and torture in Germany as a result. Jayson also faces persecution in Germany, in the form of removal from his mother's home by German government officials (due to her failure to send him to government-run schools) and through that government forcing him to attend government schools, in violation of the values with which he has been brought up.

For almost three years, the Albrechts continued to live in the United States without incident. Then, in 2014, the Albrechts began to be systematically victimized by Alexandra Paul and Ian Murray, their neighbors in Los Angeles, CA. As a result of this victimization, Nicole filed criminal fraud reports with the Los Angeles Police Department (LAPD) that were dismissed by the police without investigation into the merits thereof.

---

[1] 8 USC §§ 1101-1503 (1952) (as amended) (hereinafter "INA").

[2] Note, Petra is currently detained by the Department of Homeland Security in Otay, which is a number of hours drive from Attorney's office; it has thus been difficult to have physical access to her in order to obtain her signature on her G-28; Nicole's G-28, however, has been signed by both Attorney and client.

Ms. Paul and Mr. Murray, in retaliation, filed police reports against Nicole. These reports resulted in Nicole's arrest and brief detention by the Los Angeles Police Department on May 22, 2014. Although Nicole immediately paid her bail, she was, for unknown reasons, not released from jail until almost one week later. Also, causing Nicole to miss the hearing on the restraining order (from threats against her life) that she sought against Mr. Murray, on May 28, 2014, which resulted in the dismissal of said restraining order request.

On September 4, 2014, as Nicole and Petra were leaving their home in Los Angeles to drive to criminal court so that Nicole could testify in a hearing as a defendant in one of the cases resulting from the retaliatory complaints filed by Ms. Paul and Mr. Murray, agents from Immigration and Customs Enforcement (ICE) suddenly appeared in what could only be described as a commando-style raid usually reserved for violent criminals, and Nicole and Petra were promptly arrested by ICE agents, supported by LAPD Threat Management Unit Detective Nava Mercado. There appears to be a connection between the arrest by ICE and the complaint against Ms. Paul and Mr. Murray, inasmuch as Detective Nava Mercado, the same LAPD Threat Management Unit detective who had arrested Nicole on May 22, 2014 (see above) was present during this raid.

Nicole and Petra have been detained by ICE ever since, which has prevented them from being available to testify in the matters currently pending in California civil and criminal courts.

Meanwhile, Jayson was taken into custody by the Department of Children and Family Services / M.A.R.T- Multi Agency Response Team, usually associated with high levels of illegal gang, narcotic, and weapons activity, which did not apply in this case, and they usually only reach out through law enforcement referrals. Jayson was then placed in foster care and dependency court proceedings. It should be noted that the United States federal government declined to place Jayson in removal proceedings along with his mother and sister.

The family's asylum claims are in immigration court, where they are based on protecting the child, therefore minor Jayson Albrecht was included on his mothers "Petra Albrecht" asylum application, and additionally has his own individual affirmative case filed when he was present in the United States.  In December 2014, Petra and Nicole filed with the Immigration Court defensive applications for Asylum under INA § 101(a)(42) and INA § 208, Withholding of Removal under INA § 241(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.[3] Jayson filed an affirmative Asylum application with United States Citizenship and Immigration Services, also in December 2014.

Despite Jayson's pending asylum application, and due to misconduct by ICE, Jayson Albrecht was extradited to Germany into the hands of the same authority the family tried to protect him from. Being in ICE custody, Petra and Nicole were powerless to prevent this extradition, despite numerous requests to ICE to be released in order to halt the extradition and protect the child from any further harm.

---

[3] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* February 4, 1985, 23 I.L.M. 1027 (1984), *modified in* 24 I.L.M. 535 (1985) (hereinafter "CAT").

2

Jayson's current whereabouts in Germany remain unknown.

## Circumstances Meriting Parole

Under INA § 212(d)(5)(A), the Department of Homeland Security has the power to parole an alien for urgent humanitarian reasons or significant public benefit. INA § 212(d)(5)(B) goes on to state that a refugee may not be paroled into the United States unless there are "compelling reasons in the public interest with respect to that particular alien require that the alien be paroled into the United States rather than be admitted as a refugee."

The instant case meets the requirements for humanitarian parole, inasmuch as there are urgent humanitarian reasons, significant public benefit, and compelling reasons in the public interest weighing in favor of a grant of humanitarian parole:

1. **Humanitarian Reasons and Compelling Reasons**

- ICE disregarded immigration laws and proceedings, denying 11-year-old Jayson Albrecht (Petra Albrecht's son and Nicole Albrecht's brother) the right to be placed in the immigration system and giving him protection, ICE exposed him purposefully to the same authority from which the family fears harm and mistreatment. The family's Asylum claims are in Immigration Court, where they are based on protecting the child. Therefore, minor Jayson Albrecht was included on his mother's (Petra Albrecht's) asylum application and additionally has his own individual affirmative case filed when he was present in the United States. Due to the misconduct by ICE, Jayson Albrecht has been extradited to Germany in the hands of the same authority from which the family tried to protect him, he was abruptly taken out of his known "Americanized" lifestyle, without being able to take any personal belongings/clothes etc. with him. In addition, Jayson was not allowed to communicate to his family in his mother language German, the only language his mother speaks, meaning for more than three months he got even more "Americanized."
- Since December 18, 2014, Jayson Albrecht has vanished, and his mother (who is his primary caregiver) and sister have no knowledge about the whereabouts and safety of the child. Throughout their entire case, ICE discriminated against the family by ignoring their own directive on facilitating Parental Rights (released in 08/13) and did not support them once. Petra and Nicole Albrecht have asylum cases in immigration court proceedings, linked to protecting Jayson from the authority that now holds him. Jayson deserves the right to be put immediately under protection of his Asylum claim and needs to be returned to the United States, so that Petra and Nicole will be able to properly continue their asylum cases. Those actions cannot be taken while mother and daughter are still detained, and the family is torn apart between two countries and the mother's language barrier (no English), making it for her to deal with those extreme circumstances and take care of them. The family is in

3

an emergency situation, where the safety, well-being and custody of minor Jayson Albrecht has first priority and is at enormous risk! The situation is not in the best interest of the child; he deserves to be heard and informed about his family, and he has a right to be protected from emotional and physical harm!

- Nicole is married to Richard Wheeler, a United States citizen, who has long been settled in California. Upon her release, she will remain with her husband in his home and thus does not pose any flight risk.
- The detention of Petra and Nicole since September 4, 2014, has also caused hardship to Nicole's 80-year-old grandmother who lives in Los Angeles but only speaks German, relies on their care, and needs medical attention.
- As discussed, throughout their entire case, ICE has discriminated against the family by ignoring its own directive on facilitating Parental Rights (released in 08/13) and has not supported the family:

  o The ongoing discrimination and harassment at James A. Musick Facility (where Nicole and Petra were both previously detained before being moved to their present facilities), and retaliations against them as a result of filing these complaints caused Nicole, who was pregnant when she was arrested and detained by ICE, to suffer from an early miscarriage. The tragic loss left deep emotional scars on her, with which she is still dealing. Her health has steadily declined; she has suffered significant weight loss, heart palpitations and mental anguish.

  o Throughout her detention, Petra has been brought to the hospital numerous times, most recently on 12/21/2014, when she was brought to the Emergency Room at a hospital in Chula Vista, CA, due to heart and high blood pressure issues.

  o In short, as a result of their current detention, Nicole and Petra have been traumatized and put in an extreme situation that is affecting their physical and mental well-being.

- These violations have been documented in numerous complaints that have been submitted to different authorities, including:

  Immigrations and Customs Enforcement
  Los Angeles Field Office
  300 North Los Angeles St. Room 763I A Los Angeles, CA, 900 I2

  Immigrations and Customs Enforcement
  San Diego Field Office
  880 Front Street #2232
  San Diego, CA, 92101

  ICE Office of Detention and Removal
  U.S. Dept. of Homeland Security
  Attn: Mr. Timothy Perry
  80 I Street, Suite 980
  Washington, DC 20536

4

James A. Musick Facility
13502 Musick Road
Irvine, CA 92618

Otay Detention Center
446 Alta Road
San Diego, CA 92143

Capt. Phillip Jarres
Branch Chief of Field Operations
US Public Health Service
1220 L Street NW Suite 500
Washington D.C. 20005

Dept. of Homeland Security
Mailstop #800
Office for Civil Rights and Civil Liberties
Washington D.C. 20528

Customs and Border Protection
Office of Internal Affairs- Intake

National Immigrant Justice Center
208 S. La Salle Street Suite 1818
Chicago, IL 60604

ACLU Los Angeles
1313 W 8th St.
Los Angeles, CA 90017

## 2. <u>Significant Public Benefit</u>

Petra and Nicole's Humanitarian Parole will also constitute a significant public benefit for the following reasons:

- As discussed, Petra, Nicole, and Jayson Albrecht are all witnesses in civil and criminal court against Alexandra Paul and Ian Murray, a celebrity neighborhood couple that utilized deportation to avoid criminal prosecution by coopting one law enforcement agency (ICE) to prevent other law enforcement agencies from prosecuting them for a series of criminal activities committed against the family.
- Witness tampering, perjury, and obstruction of justice were the catalysts for the family losing their child, Jayson, a key crime witness. As outlined *supra*, Petra and Nicole have been virtually powerless to prevent this series of events, due to their current detention by ICE.
- The prosecution of the persons who have threatened the family members' lives will be in the interest of the people of the United States and benefit the public, not only because

there is always a public interest in securing the conviction of individuals who commit such violent crimes but also because said convictions will prevent Ms. Paul and Mr. Murray from being able to threaten others in a similar manner.

For the foregoing reasons, and in consideration of criteria set out by the Women's Refugee Commission regarding detained and removed parents with child custody concerns, the Department of Homeland Security needs to make every effort to grant Petra and Nicole Albrecht Humanitarian Parole. In the alternative, they should be released on their own recognizance or on a bond in order to find and protect Jayson Albrecht, to prevent further emotional damages for the child and secure his return to the United States, to continue with their asylum cases, and to prosecute the crimes that have been committed to them as witnesses.

The detention of Petra and Nicole Albrecht allows the celebrity neighborhood couple Alexandra Paul and Ian Murray, momentarily to use ICE as a law enforcement agency to help continue their criminal behavior of witness tampering and obstruction of justice and prevents other law enforcement agencies from prosecuting them. Therefore, the Department of Homeland Security is now responsible to stop the constitutional violations and support the family to seek justice and help protect the public from this criminal behavior.

It is therefore hoped that you give positive consideration to this request.

Should you have any further questions or concerns regarding this request, please do not hesitate to contact me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

6



Immigrant Rep, Inc.
P.O Box 4736
Rolling Hills Estates, CA 90274

☎ : (310) 427-7705
📠 : (310) 988-2886
✉ : info@immigrantrep.com
🖥 : www.immigrantrep.com

January 15, 2015

Department of Homeland Security
Immigration and Customs Enforcement

**Re: Humanitarian Parole, Nicole Albrecht Wheeler, AKA Nicole Albrecht, A# 206-407-728
and Petra Albrecht, A# 206-409-411**

To Whom It May Concern:

Our office represents the above-named applicants for Humanitarian Parole ("Applicants").
(Although my G-28's are already in the file, for convenience I am attaching another copy of
them.)

### Background

Applicants are mother and daughter and have been in the custody of Immigration and Customs
Enforcement (ICE) since September 4, 2014. On 01/08/2015, they faxed to several offices of
ICE (including all applicable Deportation Officers, field offices, and DHS Headquarters in
Washington, DC) a request for **Humanitarian Parole**, under INA § 212(d)(5)(A). I followed up
with telephone calls to the same offices.

The factors meriting Humanitarian Parole are substantial and are laid out in the 01/08/2015 fax.
These factors include **the loss of their child and brother** due to **ICE mishandling the case,
declining health of both detainees**, and the **significant public benefit and the right to assist
in the prosecution** of the celebrity couple Alexandra Paul and Ian Murray ("The Couple") for
crimes that The Couple committed against Applicants. ICE continues to prevent Applicants from
prosecuting The Couple and appears to have been involved in detaining Applicants in a manner
timed specifically to ensure that Applicants would not be able to pursue legal remedies against
The Couple.

This is particularly evidenced by the fact that ICE arrested Applicants as they were on their way
to criminal court to testify in a criminal matter that The Couple had filed in retaliation for
Applicants' legal actions against The Couple; as Applicants were being arrested by ICE, they
were observed by the same officers from the Los Angeles Police Department who had previously
arrested Nicole (the daughter) in a manner timed to again ensure that she could not testify in
criminal court.

Inasmuch as there was no independent reason for officers of the Los Angeles Police Department
to have been present at the time of Applicants' arrest by ICE, one can only conclude that either
the Los Angeles Police Department or The Couple (or both) was working with ICE to ensure that
Applicants were arrested in order to prevent Applicants from being able to attend criminal court
and pursue action against The Couple.

Should these suppositions prove true, this would be tantamount to witness tampering, obstruction of justice, and malicious prosecution on the part of ICE, and every day that ICE continues to detain Applicants would then amount to a continuing course of criminal conduct by ICE.

## ICE's Responses to the Fax

On 01/13/2015, I received a telephone call from Officer Quinonez, the supervisor of Officer Debbie Leon, Nicole's Deportation Officer. (I apologize in advance for any mistakes as to the spellings of these individuals' names.)

Despite the urgent circumstances well documented in the fax, Officer Quinonez stated that his office still declined to release Nicole. He further stated that, as a Visa Waiver Program overstay, Nicole did not qualify for Humanitarian Parole, even though the attached Policy Memorandum (on the bottom of **page 3**) specifically states that a Visa Waiver Program overstay who has been detained by ICE qualifies for Adjustment of Status if such individual has been paroled pursuant to INA § 212(d)(5)(A); such a statement would be meaningless if Visa Waiver Program overstays did not qualify for Humanitarian Parole under INA § 212(d)(5)(A), as Officer Quinonez contended.

ICE Officer Venetta (and I again apologize for any misspellings), who is Petra's ICE Officer in Los Angeles, has yet to reply to the fax, even though he was visited by Petra's son in-law, Richard Wheeler, and even though I spoke with Officer Palmer from Officer Venetta's office, who assured me that he would pass along the message to Officer Venetta.

## Conclusion re: Humanitarian Parole

ICE continues to act with complete disregard and with no urgency regarding this matter and with the approach that Applicants do not deserve any type of release, even though it is their right as detainees to be released if they qualify for release.

## Medical Attention

As a separate but related issue, Nicole has been requesting medical attention since 01/08/2015, but she has yet to receive medical attention, except for a quick vitals check of blood pressure and pulse at Santa Ana City Jail.

Meanwhile, Petra, who is being detained at Otay San Diego, continues to be denied access to a hospital for her serious health concerns. Since Nicole had not received any treatment prior to her 01/15/2015 Immigration Court hearing (for her pending asylum application), Immigration Judge Muñoz granted a continuance, because Nicole was unable to competently testify.[1] This further strengthens the grounds for Humanitarian Parole.

---

[1] Additionally, the Government did not have its file for Nicole at the time of the hearing and was thus unable to move forward on Nicole's case.

8

### Extradition of Jayson Albrecht Back to Germany While His I-589 Was Pending

Finally, on December 8, 2014, **Jayson Albrecht** (A# 206-409-422), the eleven-year-old son of Petra and brother of Nicole, filed an I-589 on account of his fear of persecution in Germany. The receipt number for the I-589 is **ZLA1400174260** . As the receipt itself expressly states, Jayson has the right to remain in the USA until his asylum application has been adjudicated. At a minimum, he cannot be returned to the very country from which he is claiming persecution (Germany) until and unless his application has been denied and all administrative appellate and review options have been exhausted.

Nonetheless, on December 17, 2014, Jayson was extradited back to Germany, both against his will (see attached letter from Jayson to Nicole,[2] in which Jayson clearly voices his desire to remain in the United States with his mother and sister) and against the law, inasmuch as a final decision had not yet been reached on his I-589, which remains pending with USCIS to this day.

The extradition was carried out by California dependency court, even though attempts were made to apprise that court of Jayson's pending I-589, to no avail. Both Nicole and Petra also attempted to prevent Jayson's extradition back to Germany, at least until the final adjudication of his I-589. However, their current status as ICE detainees prevented them from effectively doing so.

### Conclusion

For the foregoing reasons, ICE must grant Applicants Humanitarian Parole under INA § 212(d)(5)(A). Should you decline to grant Humanitarian Parole, we request that this denial be **in writing** and that you **clearly state the reasons** why you are denying this request. This is especially so in light of the strong factors weighing *in favor* of a grant of Humanitarian Parole. Specifically:

(1) Humanitarian Parole will give Applicants the chance to have their day in court in order to bring criminals (The Couple) to justice, and to prevent these crimes from happening to someone else in the future. This alone is a huge public benefit.
(2) Both Applicants have been denied the medical attention that they need and to which they are legally entitled. A grant of Humanitarian Parole will prevent their medical problems from worsening and will give them a chance to be examined by a real medical doctor outside of the strict limitations that are necessarily currently imposed upon them as ICE detainees.
(3) ICE did nothing to prevent the government of California from illegally extraditing Jayson Albrecht back to Germany before the resolution of his I-589 application (which had already been filed and was pending on the day of his extradition). Applicants must be granted Humanitarian Parole in order to give them the opportunity to use the resources that they have at their disposal outside of ICE detention, to remedy the problem that ICE

---

[2] It should be noted that the letter was written and addressed by Jayson to his sister, Nicole, before he was sent out of the USA in December. However, for reasons as yet unknown, the letter was held by someone and not mailed to Nicole until January 7, 2015.

itself has brought about. Specifically, Applicants need to use their resources outside of detention to locate Jayson in Germany and arrange for his return to the United States so that his I-589 can continue to be adjudicated, before the very persecution from which he had escaped to the United States is allowed to continue.

We hope that this request is given positive consideration and look forward to hearing from you soon.

Should you have any questions or concerns regarding this request, please do not hesitate to contact me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

(0



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship
and Immigration
Services**

November 14, 2013                                    PM-602-0093

## Policy Memorandum

SUBJECT:   Adjudication of Adjustment of Status Applications for Individuals Admitted to the
United States Under the Visa Waiver Program

### Purpose

This policy memorandum (PM) provides guidance on the adjudication of Form I-485, Application
to Register or Adjust Status, filed by immediate relatives of U.S. citizens who were last admitted
under the Visa Waiver Program (VWP). This PM updates the Adjudicator's Field Manual (AFM)
by adding a new section (j) to Chapter 10.3 and 23.5 (AFM Update AD11-30).

### Scope

This PM applies to, and is binding on, all U.S. Citizenship and Immigration Services (USCIS)
employees, unless specifically exempt.

### Authority

- Immigration and Nationality Act (INA) sections 217, 245 and 245(c)(4)
- 8 CFR 245.1(b)

### Background

The VWP allows qualifying foreign nationals of designated countries to enter the United States for
up to 90 days to conduct business or for pleasure without first obtaining a visa.[1] Before a foreign
national is admitted under the VWP, in addition to meeting certain requirements, he or she must
waive the right to contest any action for removal, other than on the basis of an application for

---

[1] INA section 217(a)(1). Pursuant to INA section 217(a)(1), an individual seeking admission under the VWP applies for
admission as a nonimmigrant, as that term is defined in INA section 101(a)(15)(B), and is provided with a waiver of the
visa requirement. See INA section 212(a)(7)(B)(i)(II).

PM-602-0093:  Adjudication of Adjustment of Status Applications for Individuals Admitted to the United States Under the Visa Waiver Program
Page 2

asylum.[2]  Removal of such an individual "shall be effected without referral of the alien to an immigration judge for a determination of deportability."[3]

Unlike those who enter the United States in B-1 Temporary Visitor for Business status or as a B-2 Temporary Visitor for Pleasure, individuals admitted under the VWP cannot extend the duration of their stays.  Under limited circumstances, the local USCIS Director may grant a 30-day period of "Satisfactory Departure"; otherwise, the individual must depart from the United States prior to the expiration of the VWP admission period.[4]

INA section 245(c)(4) renders aliens admitted under the VWP ineligible to adjust status to that of a person admitted for permanent residence.  This provision, however, includes an exception for immediate relatives of U.S. citizens.[5]  Thus, an individual admitted under the VWP who is also an immediate relative is not precluded from seeking adjustment of status, even after the VWP period has expired.

U.S. Immigration and Customs Enforcement (ICE) has authority to order the removal of a VWP overstay, including an immediate relative, under INA section 217(b) and 8 CFR 217.4(b).  Numerous courts of appeals agree that, generally, a VWP overstay may not contest a removal action on the basis that he or she has filed Form I-485.[6]  However, these cases concern only the individual's inability to contest removal.  They do not address whether the Department of Homeland Security (DHS) can, as a matter of discretion, decline to seek the individual's removal and grant adjustment if the individual is eligible.  Nor do these decisions preclude a VWP overstay who is not subject to a removal order from filing a Form I-485 with USCIS.

Whether to grant adjustment to an eligible applicant is a matter entrusted to DHS discretion.  USCIS exercises this discretion on behalf of DHS.

**Policy**
USCIS field offices shall adjudicate adjustment of status cases filed by immediate relatives of U.S. citizens who were last admitted to the United States under the VWP, in accordance with section 245 of the INA.  This includes cases where Form I-485 was filed after the 90-day period of admission.  Adjudication shall occur prior to referral to ICE unless:

- ICE has issued a removal order;

---

[2] INA section 217(b)(2). An application for asylum is also deemed to be an application for withholding of removal under INA section 241(b)(3). See 8 CFR 1208.3(b).
[3] 8 CFR 217.4(b).
[4] In the event of an emergency that prevents the individual from departing the United States by the 90th day, USCIS may provide a period of Satisfactory Departure not to exceed 30 days.  See 8 CFR 217.3(a).
[5] INA section 201(b)(2)(A)(i) defines "immediate relatives" of U.S. citizens and provides that they are not subject to numerical limitations.
[6] See Bradley v. Att'y Gen., 603 F.3d 235 (3rd Cir. 2010); Lang v. Napolitano, 596 F.3d 426 (8th Cir. 2010); Bayo v. Napolitano, 593 F.3d 495 (7th Cir. 2010); McCarthy v. Mukasey, 555 F.3d 459 (5th Cir. 2009); Momeni v. Chertoff, 521 F.3d 1094 (9th Cir. 2008); Zine v. Mukasey, 517 F.3d 535 (8th Cir. 2008); Lacey v. Gonzales, 499 F.3d 514 (6th Cir. 2007); Ferry v. Gonzales, 457 F.3d 1117 (10th Cir. 2006); Schmitt v. Maurer, 451 F.3d 1092 (10th Cir. 2006); Freeman v. Gonzales, 444 F.3d 1031 (9th Cir. 2006); see also Nose v. Att'y Gen., 993 F.2d 75 (5th Cir. 1993).

12

PM-602-0093: Adjudication of Adjustment of Status Applications for Individuals Admitted to the
United States Under the Visa Waiver Program
Page 3

- The adjustment applicant is under investigation for, has been arrested for (without disposition),
  or has been convicted of an egregious public safety offense as described in Part IV of USCIS
  Policy Memo 602-0050, "Revised Guidance for the Referral of Cases and Issuance of Notices
  to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens" (November 7,
  2011); or
- There are fraud and/or national security issues that require resolution.[7]

### Removal Order

INA section 245 provides that applicants who were inspected and admitted or paroled into the
United States may be adjusted by the Secretary of Homeland Security,[8] in his or her discretion.[9] If
ICE has issued a removal order for violation of INA section 217, USCIS should interpret the entry
of that order as the Secretary exercising his or her discretion not to adjust the status of that
individual. Therefore, as long as the individual remains subject to a section 217 removal order,
USCIS should deny the Form I-485 *as a matter of discretion*. If ICE withdraws or rescinds the
removal order, USCIS can then approve the application as appropriate.

### Refusal of Admission

A VWP applicant who is refused admission may also be removed from the United States. Refusal
of admission under the VWP is not a "removal" for purposes of future inadmissibility under INA
section 212(a)(9)(A) or (C). 8 C.F.R. § 217.4(a)(3). But like someone actually admitted under the
VWP, a refused applicant is not entitled to appeal or review of the refusal of admission. INA
section 217(b)(1).

The individual's actual removal, however, may be deferred pending an asylum-only proceeding
before an immigration judge. Whether the refused applicant can seek adjustment at all would
depend on his or her custody status. Adjustment of status would not be available if the individual
were detained or released on a basis other than parole under INA section 212(d)(5)(A). But if, in a
given case, the individual were paroled under INA section 212(d)(5)(A), that would be "parole" for
purposes of adjustment of status under INA section 245(a).

---

[7] Before denying an application, ISO's must follow the guidance contained in the USCIS National Background Identity
and Security Checks Operating Procedures (NaBISCOP) Handbook (FOUO) and the Fraud Detection and National
Security Standard Operating Procedures (FOUO). These documents are continuously updated and contain links to all
relevant PMs.
[8] INA section 245 specifically reads, "The status of an alien who was inspected and admitted or paroled into the United
States . . . may be adjusted by the Attorney General, in his discretion . . . ." Pursuant to the Homeland Security Act of
2002, tit. XV, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557 (Supp. IV 2004)), the
reference to the Attorney General in section 245(a) of the Act is now deemed to refer to the Secretary of Homeland
Security as well.
[9] An alien who was released from custody on conditional parole pursuant to section 236(a)(2)(B) of the Act has not
been 'paroled into the United States' for purposes of establishing eligibility for adjustment of status under section
245(a) of the Act, 8 U.S.C. § 1255(a) (2006)." *See Matter of Castillo-Padilla*, 25 I&N Dec. 257 (BIA 2010). Aliens
who were refused admission under the VWP are only eligible for adjustment of status under INA section 245(a) if they
were paroled into the United States under INA section 212(d)(5)(A).

13

PM-602-0093: Adjudication of Adjustment of Status Applications for Individuals Admitted to the
United States Under the Visa Waiver Program
Page 4

Nevertheless, the refusal of admission under the VWP is a factor that weighs against a finding that
the applicant merits a favorable exercise of discretion. It could be a basis for denying adjustment of
status, *as a matter of discretion*, especially if other negative factors are present.

### Denied Applications

A VWP overstay whose case is denied by USCIS has no appeal rights and may not be placed in
removal proceedings before an immigration judge. There is, however, an exception for cases filed
within the jurisdiction of the Ninth Circuit.[10] A VWP overstay who is an immediate relative and
whose Form I-485 was filed within the 90-day period of admission within the jurisdiction of the
Ninth Circuit is entitled to be placed in removal proceedings under INA section 240 should the
adjustment application be denied by USCIS. In such cases, USCIS will refer the case to ICE for its
consideration. USCIS may also issue an NTA before referring a Ninth Circuit case to ICE, if doing
so is consistent with USCIS guidance on NTA issuance.

### Jurisdiction

Since ICE makes the determination to issue an order of removal for a VWP overstay under
INA section 217, and the removal of that individual is, "effected without referral of the alien to an
immigration judge for a determination of deportability,"[11] jurisdiction over the adjustment of status
application remains with USCIS at all times. There is no appeal from a denial of the adjustment of
status application,[12] and the VWP overstay may not renew the application in removal proceedings
before an immigration judge. The only exception, as noted, applies to a case in the Ninth Circuit in
which the individual applied for adjustment before the VWP admission expired.[13]

### Implementation

The AFM is updated by:

☞   1. Adding new section 10.3(j);
    2. Redesignating current section 23.5(p) as section 23.5(q); and
    3. Adding a new section 23.5(p).

The revisions read as follows.

---

[10] See *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006); *Momeni v. Chertoff*, 521 F.3d 1094 (9th Cir. 2008).
[11] 8 CFR 217.4(b).
[12] 8 CFR 245.2(a)(5)(ii).
[13] In the Ninth Circuit, a VWP overstay whose adjustment of status application is filed within the 90-day period of
admission and denied by USCIS has the right to renew that application in removal proceedings. *See Freeman v.
Gonzales*, 444 F.3d 1031 (9th Cir. 2006); *see also Momeni v. Chertoff*, 521 F.3d 1094 (9th Cir. 2008).

PM-602-0093: Adjudication of Adjustment of Status Applications for Individuals Admitted to the
United States Under the Visa Waiver Program
Page 5

## 10.3 General Adjudication Procedures

* * * * *

(j) <u>Adjudicating Form I-485 for Immediate Relatives Last Admitted Under the Visa Waiver
Program (VWP) outlined in Immigration and Nationality Act (INA) section 217.</u>

    (1) VWP overstays

o  Unless ICE has issued a removal order under 8 CFR 217.4(b), USCIS field offices
may, as a matter of discretion, grant  adjustment of status applications filed by
immediate relatives of U.S. citizens, or by section 245(i) applicants, who are present
in the United States pursuant to admission under the VWP if they meet the
requirements of INA section 245 and the USCIS Field Operations Standard
Operating Procedures (the "SOP") for Form I-485, Application to Register
Permanent Residence or Adjust Status.  This includes Form I-485 cases filed after
the 90-day period of admission.

o  USCIS should deny the Form I-485, as a matter of discretion, in any case in which
ICE has issued a removal order under 8 CFR 217.4(b).  Approval may be a proper
exercise of discretion only if ICE rescinds or withdraws the removal order.

o  If, in the course of adjudication, information indicates the individual is under
investigation, or has been arrested (without disposition), or has been convicted of
an egregious public safety offense as described in USCIS Policy Memo 602-0050
titled "Revised Guidance for the Referral of Cases and Issuance of Notices to
Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens" (November
7, 2011); or, there are fraud and/or national security issues that require resolution,
do not adjudicate the case.  Instead, follow the guidance contained in USCIS's
National Background Identity and Security Checks Operating Procedures
(NaBISCOP) Handbook (FOUO) and the Fraud Detection and National Security
Standard Operating Procedures (FOUO).

o  USCIS will refer all denied Form I-485 cases filed by VWP overstays to the local
ICE office for consideration of a § 217 removal order.  There is an exception for
certain cases filed within the Ninth Circuit.

     • *Ninth Circuit Jurisdiction* – A VWP overstay who is an immediate relative
and who files a Form I-485 during the 90-day period of admission within the
jurisdiction of the Ninth Circuit is entitled to be placed in section 240 removal
proceedings if the case is denied.  This includes cases where the beneficiary
originally files the Form I-485 while living within the jurisdiction of the Ninth
Circuit, but moves out of the Ninth Circuit jurisdiction before the Form I-485 is
adjudicated.  If USCIS denies an I-485 filed within the jurisdiction of the Ninth
Circuit during the applicant's VWP admission, USCIS will refer the case to the

15

PM-602-0093: Adjudication of Adjustment of Status Applications for Individuals Admitted to the
United States Under the Visa Waiver Program
Page 6

local ICE office. USCIS may issue an NTA before referring the case to ICE, if
doing so is consistent with USCIS guidance on NTA issuance. If, however, the
I-485 is filed after the 90-day period of admission, the VWP overstay is not
entitled to be placed in removal proceedings if the I-485 is denied, and will be
referred to ICE for consideration of a section 217 removal order.

(2) Refused VWP applicants

o If an adjustment applicant was refused admission under the VWP, the refused
individual's eligibility for adjustment of status depends on his or her custody status.
Adjustment is not available if the individual is detained or has been released on a
basis other than parole under INA section 212(d)(5)(A). In particular, release under
INA section 236 is not parole. *See Matter of Castillo-Padilla*, 25 I&N Dec. 257 (BIA
2010). If the individual was paroled under INA section 212(d)(5)(A), that is "parole"
for purposes of adjustment under INA section 245(a).

o Before reaching the exercise of discretion, the USCIS officer should examine the
basis for the VWP refusal, to determine whether the basis for the refusal supports a
finding of inadmissibility. This inadmissibility, if not waived, would warrant denial of
the Form I-485 as a matter of statutory ineligibility.

o Refusal of admission does not, in the legal sense, result in a "removal" order. Still,
the refused applicant cannot challenge the refusal of admission. For this reason,
the fact that the applicant was refused VWP admission is a negative factor that, in
conjunction with any other negative factors and in the absence of favorable equities,
could warrant denial of the Form I-485, as a matter of discretion, even if CBP
paroled the applicant for asylum-only proceedings.

## 23.5 Adjustment of Status under Section 245 of the Act

* * * * *

(p) Exercise of discretion in Visa Waiver Program cases.

See chapter 10.3(j) for guidance concerning exercise of discretion in VWP cases.

(q) Precedent Decisions Pertaining to Adjustment of Status.

* * * * *

16

PM-602-0093: Adjudication of Adjustment of Status Applications for Individuals Admitted to the United States Under the Visa Waiver Program
Page 7

☞   4. The AFM Transmittal Memoranda button is revised by adding, in numerical order, a new entry to read:

| AD11-30 11/14/2013 | Chapter 10.3(j) | Adds guidance regarding the adjudication of adjustment of status applications for immediate relatives who were last admitted under the Visa Waiver Program (VWP). |
| | Chapter 23.5 | Adds cross reference to chapter 10.3(j). |

**Use**

This PM is intended solely for the guidance of USCIS personnel in the performance of their official duties. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**Contact Information**

Questions regarding the guidance contained in this PM should be forwarded to the Field Operations Directorate, through appropriate channels.

( 7

Dear Mama,

I love you and I drew you this picture to wish you a very very Merry Christmas! I wanted to tell you that I am fine and doing okay in school. My grades are very good and I'm getting enough food at the foster home. I promise you that we will see and be together again soon and after Christmas. You will always be in my heart and we are always together. I will my my best to stay with you here in America.

And you Brases how the german me if they don't get what they want! LOL! Also we will get our right back. I can't stop thinking about you Mom I go to bed. I love you very much and I hope you write me back. Hugs and kisses from me and Cinel! ☺

Love, Jayson

18

Evidence ○
Nina Siskor case
Photo



Nicole Albrecht
Santa Ana Jail - M-88
Po box 22003    Santa Ana CA. 92701

SANTA CLARITA CA 913
07 MAY 2015 PM 5 L

BK

"Evidence"
immigration case
marical

20

SANTA CLARITA
CA 913
97 JUN 25
PM 5 L

Enclosure
immigration cover &
to offend

21



## Notice of Entry of Appearance
## as Attorney or Accredited Representative
### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 02/29/2016

**Part 1. Information About Attorney or Accredited Representative**

Name and Address of Attorney or Accredited Representative

**1.a.** Family Name *(Last Name)* | Effron
**1.b.** Given Name *(First Name)* | Joshua
**1.c.** Middle Name |

**2.** Name of Law Firm or Recognized Organization
Immigrant Rep Inc

**3.** Name of Law Student or Law Graduate

**4.** State Bar Number | CA, 225247

**5.a.** Street Number | POB 4736
**5.b.** Street Name |
**5.c.** Apt. ☐ Ste. ☐ Flr. ☐ |
**5.d.** City or Town | Rolling Hills Estate
**5.e.** State | CA  **5.f.** Zip Code | 90274
**5.g.** Postal Code |
**5.h.** Province |
**5.i.** Country | United States

**6.** Daytime Phone Number ( 3 1 0 ) 4 2 7 - 7 7 0 5

**7.** E-Mail Address of Attorney or Accredited Representative
effron@immigrantrep.com

**Part 2. Eligibility Information For Attorney or Accredited Representative**

(Check applicable items(s) below)

**1.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following State(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia.

**1.a.** California

**1.b.** I *(choose one)* ☒ **am not** ☐ **am** subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law. (If you are subject to any order(s), explain fully in the space below.)

**1.b.1.**

**2.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals pursuant to 8 CFR 292.2. Provide the name of the organization and the expiration date of accreditation.

**2.a.** Name of Recognized Organization

**2.b.** Date Accreditation expires *(mm/dd/yyyy)* ▶

**3.** ☐ I am associated with

**3.a.**

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request. If you check this item, also complete **number 1 (1.a. - 1.b.1.) or number 2 (2.a. - 2.b.)** in Part 2 *(whichever is appropriate)*.

**4.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2)(iv).

22

**Part 3. Notice of Appearance as Attorney or Accredited Representative**

This appearance relates to immigration matters before (select one):

1. [ ] USCIS - List the form number(s)

1.a. _____

2. [X] ICE - List the specific matter in which appearance is entered

2.a. All Immigration Matters

3. [ ] CBP - List the specific matter in which appearance is entered

3.a. _____

I hereby enter my appearance as attorney or accredited representative at the request of:

4. Select only one: [X] Applicant   [ ] Petitioner
[ ] Respondent (ICE, CBP)

**Name of Applicant, Petitioner, or Respondent**

5.a. Family Name (Last Name)   Albrecht

5.b. Given Name (First Name)   Nicole

5.c. Middle Name   Lynn

5.d. Name of Company or Organization, if applicable _____

NOTE: Provide the mailing address of Petitioner, Applicant, or Respondent and not the address of the attorney or accredited representative, except when a safe mailing address is permitted on an application or petition filed with Form G-28.

6.a. Street Number and Name   17153 Palisade Circle

6.b. Apt. [ ] Ste. [ ] Flr. [ ]  _____

6.c. City or Town   Los Angeles

6.d. State   CA   6.e. Zip Code   90272

7. Provide A-Number and/or Receipt Number
206407728

Pursuant to the Privacy Act of 1974 and DHS policy, I hereby consent to the disclosure to the named Attorney or Accredited Representative of any record pertaining to me that appears in any system of records of USCIS, ICE, or CBP.

8.a. Signature of Applicant, Petitioner, or Respondent
*Nicole Albrecht*

8.b. Date   (mm/dd/yyyy) ▶   9 |17| 14

**Part 4. Signature of Attorney or Accredited Representative**

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

1. Signature of Attorney or Accredited Representative
*Josh Effron*

2. Signature of Law Student or Law Graduate
_____

3. Date   (mm/dd/yyyy) ▶   09/17/2014

**Part 5. Additional Information**

1. _____
_____
_____
_____
_____
_____
_____
_____
_____
_____

23



**Notice of Entry of Appearance**
**as Attorney or Accredited Representative**
Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 02/29/2016

| Part 1. Information About Attorney or Accredited Representative | Part 2. Eligibility Information for Attorney or Accredited Representative |
|---|---|

Name and Address of Attorney or Accredited Representative

**1.a.** Family Name *(Last Name)* — Effron

**1.b.** Given Name *(First Name)* — Joshua

**1.c.** Middle Name

**2.** Name of Law Firm or Recognized Organization — Immigrant Rep Inc

**3.** Name of Law Student or Law Graduate

**4.** State Bar Number — CA, 225247

**5.a.** Street Number — POB 4736

**5.b.** Street Name

**5.c.** Apt. ☐  Ste. ☐  Flr. ☐

**5.d.** City or Town — Rolling Hills Estate

**5.e.** State — CA   **5.f.** Zip Code — 90274

**5.g.** Postal Code

**5.h.** Province

**5.i.** Country — United States

**6.** Daytime Phone Number ( 3 1 0 ) 4 2 7 - 7 7 0 5

**7.** E-Mail Address of Attorney or Accredited Representative — effron@immigrantrep.com

(Check applicable items(s) below)

**1.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following State(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia.

**1.a.** California

**1.b.** I (choose one) ☒ am not ☐ am subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law. (If you are subject to any order(s), explain fully in the space below.)

**1.b.1.**

**2.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals pursuant to 8 CFR 292.2. Provide the name of the organization and the expiration date of accreditation.

**2.a.** Name of Recognized Organization

**2.b.** Date Accreditation expires *(mm/dd/yyyy)* ▶

**3.** ☐ I am associated with

**3.a.**

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request. If you check this item, also complete **number 1 (1.a. - 1.b.1.) or number 2 (2.a. - 2.b.)** in Part 2 *(whichever is appropriate).*

**4.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2)(iv).



Form G-28 02/28/13 N

Page 1 of 2

24

**Part 2. Notice of Appearance as Attorney or Accredited Representative**

This appearance relates to immigration matters before (select one):

1. ☐ USCIS - List the form number(s)

1.a. _____

2. ☒ ICE - List the specific matter in which appearance is entered

2.a. All Immigration Matters

3. ☐ CBP - List the specific matter in which appearance is entered

3.a. _____

I hereby enter my appearance as attorney or accredited representative at the request of:

4. Select only one: ☐ Applicant ☐ Petitioner
   ☒ Respondent (ICE, CBP)

**Name of Applicant, Petitioner, or Respondent**

5.a. Family Name (Last Name) Albrecht

5.b. Given Name (First Name) Petra

5.c. Middle Name _____

5.d. Name of Company or Organization, if applicable _____

**NOTE:** Provide the mailing address of Petitioner, Applicant, or Respondent and not the address of the attorney or accredited representative, except when a safe mailing address is permitted on an application or petition filed with Form G-28.

6.a. Street Number and Name  Ice Custody

6.b. Apt. ☐  Ste. ☐  Flr. ☐ _____

6.c. City or Town  San Diego

6.d. State  CA   6.e. Zip Code _____

7. Provide A-Number and/or Receipt Number

   206409411

Pursuant to the Privacy Act of 1974 and DHS policy, I hereby consent to the disclosure to the named Attorney or Accredited Representative of any record pertaining to me that appears in any system of records of USCIS, ICE, or CBP.

8.a. Signature of Applicant, Petitioner, or Respondent _____

8.b. Date (mm/dd/yyyy) ▶ _____

**Part 4. Signature of Attorney or Accredited Representative**

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

1. Signature of Attorney or Accredited Representative

2. Signature of Law Student or Law Graduate _____

3. Date (mm/dd/yyyy) ▶ 09/28/2014

**Part 5. Additional Information**

1. _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

25



Immigrant Rep, Inc.
PO Box 4736
Rolling Hills Estates, CA 90274

☎: (310) 427-7705
📠: (310) 988-2886
✉: info@immigrantrep.com
🌐: www.immigrantrep.com

January 25, 2015

### Re: Request for Humanitarian Parole:
### Petra Albrecht, A# 206-409-411
### Nicole Albrecht, A# 206-407-728

### Request for Release from Protective Custody:
### Nicole Albrecht, A# 206-407-728

To Whom It May Concern:

The purpose of this letter is to request **Humanitarian Parole** under Section 212(d)(5)(A) of the Immigration and Nationality Act[1] and also to request that Nicole Albrecht **be released from "Protective Custody"** immediately. My G-28 is already in the file for both individuals named above; for convenience, please find attached copies of the G-28's.[2]

### Background

Please see the attached <u>01/15/2015</u> Humanitarian Parole request for the complete background of Petra's and Nicole's cases.

**Part of the Humanitarian Parole** request is based on the significant public benefit to allow the Albrecht family the right to assist in the prosecution of the celebrity couple Alexandra Paul and Ian Murray, ("The Couple"), for crimes that the couple committed against Nicole and Petra Albrecht ("Applicants"). (See <u>01/15/2015</u> Humanitarian Parole request.) ICE continues to prevent Applicants from prosecuting The Couple and appears to have been involved in detaining the Applicants in a manner timed specifically to ensure that Applicants would not be able to pursue legal remedies against The Couple.

This is particularly evidenced by the fact that ICE arrested Applicants as they were on their way to criminal court to testify in a criminal matter that The Couple had filed in retaliation for the Applicants legal actions against The Couple; as Applicants were being arrested by ICE, they were observed by the same officers from the LAPD who had previously arrested Nicole (the daughter) in a manner timed to again assure that she could not testify in criminal court. Inasmuch as there was no independent reason for officers of the LAPD to have been present at the time of Applicants arrest by ICE, one can only conclude that either the LAPD or The Couple (or both)

---

[1] 8 USC §§ 1101-1503 (1952) (<u>as amended</u>) (hereinafter "INA").
[2] Note, Petra is currently detained by the Department of Homeland Security in Otay, which is a number of hours drive from Attorney's office; it has thus been difficult to have physical access to her in order to obtain her signature on her G-28; Nicole's G-28, however, has been signed by both Attorney and client.

26

U.S. Department of Homeland Security        Continuation Page for Form I-213

| Alien's Name <br> PETRA ALBRECHT | File Number <br> 206 409 411 <br> Event No: LOS1409000059 | Date <br> 09/04/2014 |
|---|---|---|

At/Near
--------------------------------------------
PACIFIC PALISADES, CA

Record of Deportable/Excludable Alien:
On September 4, 2014, at about 730 PST, Los Angeles ERO officers, assisted by the U.S.
Marshals Fugitive Task Force and the Los Angeles Police Department Threat Management Unit,
arrested Petra Albrecht and Nicole Albrecht. The two women are mother and daughter and both
are citizens of Germany. They were arrested at their shared residence in Pacific Palisades,
CA, without incident.

On August 27, 2014, Los Angeles Fugitive Operations was forwarded an email message which had
been sent to the Los Angeles ERO Outreach mailbox by actress Alexandra Paul. In the
message, Ms. Paul stated that for more than a year she has been stalked and harassed by
Nicole Albrecht and her mother Petra Albrecht. The message further stated that both
subjects are "illegal aliens from Germany" and that they have violated court orders to stay
more than 100 yards away from Ms. Paul almost two dozen times in the past year.

While investigating the claims made by Ms. Paul in the email, the ERO case officer
discovered that both Petra Albrecht and Nicole Albrecht entered the United States at Los
Angeles International Airport on September 2, 2011, under the visa waiver program. An 11-
year-old boy named Jayson Albrecht and Petra's 77-year-old mother, Anni Bruhn, also entered
the U.S. with Petra and Nicole Albrecht on September 2, 2011. All four subjects were
granted admission valid until December 1, 2011. Additional database queries revealed that
Petra Albrecht is wanted for questioning in Germany regarding Child Abduction for bringing
Jayson Albrecht to the U.S. in 2011. The ERO case officer contacted INTERPOL and German law
enforcement officials at the German Embassy in Washington D.C. who confirmed that Petra
Albrecht is wanted for questioning in Germany regarding Child Abduction.

After the arrest of Petra and Nicole Albrecht by ERO officers, Los Angeles County Department
of Children and Family Services (DCFS) took custody of Jayson Albrecht while arrangements
are made with German officials to return him to his family in Germany. Another German
citizen, Anni Bruhn, who is also an overstay, was at the residence, but due to her advanced
age was not arrested. At about 1230 PST, Los Angeles County Adult and Aging Services
personnel responded to the Albrecht residence and attempted to make contact with Bruhn, but
Bruhn declined assistance.

On September 4, 2014, Petra and Nicole Albrecht were served with Visa Waiver Removal Orders,
for overstaying their period admission, pursuant to Section 217 of the INA. Petra Albrecht
has an outstanding warrant for larceny in California and another warrant in Florida for
theft. Both women will be held in ERO custody without bond pending removal.

Other Identifying Numbers
--------------------------------------------
ALIEN-206409411

State Criminal Number/State Bureau Number-FL07741488 (FLORIDA UNITED STATES)

State Criminal Number/State Bureau Number-CA34222086 (CALIFORNIA UNITED STATES)

ENTRY STATUS

| Signature <br> AL CASTILLO | Title <br> DEPORTATION OFFICER |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

was working with ICE to ensure that Applicants were arrested in order to prevent Applicants from being able to attend criminal court and pursue action against The Couple.

## New Evidence

**The new evidence**, event # LOS1409000059, on the Form I-831, was given to Petra in her Asylum hearing in Immigration Court on 01/20/2015. This document leaves no doubt that The Couple contacted ICE to put the wheels in motion for Applicants' arrest on September 4, 2014.

Specifically, **on August 27, 2014, two days after Alexandra Paul had a criminal threat report filed against her, and a restraining order in civil court, for using her vehicle as a deadly weapon against the Albrecht family, she e-mailed the Los Angeles ERO Outreach mailbox,** stating that for more than a year she had been stalked by and harassed by Nicole Albrecht and her mother Petra Albrecht. It also stated that the subjects are "illegal aliens from Germany" and that they have violated court orders to stay more than 100 yards away from Ms. Paul almost two dozen times in the past year.

Ms. Paul was less than forthcoming when she failed to alert ICE of the fact that **she herself just had a police report filed against her two days prior to contacting ICE, along with a restraining order in civil court, and that her husband, Ian Murray, also had a restraining order against him in May 2014 that was only dropped when Nicole was prevented from attending the court hearing.** It must also be noted that Nicole Albrecht has not been convicted of stalking, and that, at the time of Applicants' arrest by ICE, they were still in court proceedings with Ms. Paul and Ian Murray. Secondly, Petra Albrecht does not have any stalking charges or police reports or restraining orders against her; this, again, demonstrates the lack of complete candor on the part of Ms. Paul.

It should also be noted that Ms. Paul's charge that Applicants had stalked and harassed her was filed merely in retaliation for the legitimate claims that Applicants had made against Ms. Paul and her husband. However, as discussed, in the 01/15/2015 Humanitarian Parole request, Applicants were prevented from presenting this evidence in criminal court by the Los Angeles Police Department and then by Immigration and Customs Enforcement.

In the first incident, Nicole was arrested and briefly detained by the Los Angeles Police Department on May 22, 2014. Although Nicole immediately paid her bail, she was, for unknown reasons, not released from jail until almost one week later. This caused Nicole to miss the hearing on the restraining order (from threats against her life) that she had sought against Ms. Paul's husband (Ian Murray), on May 28, 2014, which resulted in the dismissal of said restraining order request.

28

In the second incident, both Applicants were arrested by ICE on September 4, 2014, as they were on their way to criminal court to defend themselves against Ms. Paul's false allegations against them.

As discussed in the 01/15/2015 Humanitarian Parole request, the timing of both arrests seemed timed around the criminal court hearings such that these arrests would prevent the Applicants from testifying in court. The new evidence from the I-831 has since confirmed that the arrests were enacted as part of Ms. Paul's plan to remove Applicants as potential witnesses, the very definition of witness tampering. The fact that the Los Angeles Police Department and ICE have assisted in Ms. Paul's plan would thus appear to make both agencies accessories to this crime.

As this new evidence clearly shows, the timely contact from Alexandra Paul to ICE was the only catalyst for arresting and detaining Nicole and Petra Albrecht on September 4, 2014. It can be concluded that the sole purpose of the contact was to have the entire family deported, to prevent Nicole, Petra, and Jayson Albrecht from being able to assist in the prosecution of her and of her husband, Ian Murray. Such actions suggest both witness tampering and obstruction of justice.

ICE can no longer turn its head away from this evidence, and these are clear grounds to release Applicants on Humanitarian Parole, so that they work to ensure not only that Ms. Paul and Mr. Murray are prosecuted, but also that Applicants' themselves are cleared of all wrongdoing in this case.

## II. Nicole's Release from Protective Custody

On 1/16/15, Nicole was the victim of a verbal altercation in which another detainee threatened her life. The surveillance tape was confirmed by supervisors and officers that Nicole walked away from the situation only to be confronted by the same detainee (and a friend of the detainee) moments later. After Nicole told the detainee that this continued harassment was unacceptable, Nicole walked away from the situation and shortly afterward reported this incident.

Before Nicole filed a police report against the detainee the following day, she got assurance from supervisors that she would not face retaliation for filing a report. Consequently, police report, Case # 15-01359, was filed by the Santa Ana Police Department. Nevertheless, the following day, in addition to the perpetrator being locked down, Nicole was also locked down for 23 hours a day. I immediately contacted the facility and ICE Supervisor Quinones,[3] explaining that Nicole was the victim, and that she did not deserve punishment for this act against her. I also reminded him that Nicole had her asylum hearing in one week, and that she could not be restricted in any way from preparing for her hearing.

---

[3] I ask in advance that you please forgive any misspelled names; such mistakes, if any, are inadvertent.

This was especially so in light of the fact that Nicole's previous hearing was continued two weeks earlier, when Immigration Judge Muñoz decided that Nicole was too sick to competently testify in an Immigration Court hearing. This, in turn, had been directly caused by the failure of the staff of the Santa Ana Jail to get Nicole the medical treatment that she had been requesting the week before that hearing.

I persistently contacted ICE Supervisor Quinones and jail supervisors, and their response was that Nicole was not being disciplined, but, rather, that she was in protective custody for her own safety. I explained that she did not have a problem with anyone but the girl who had threatened her, and that the perpetrator, not Nicole, should face punishment. It is true that Nicole's placement in protective custody was not classified as punishment. However, despite being classified otherwise, it could only be called punishment to lock Nicole up for 23 hours a day, without legal counsel phone calls before her asylum hearing, and the declining health Nicole is now experiencing is a direct result of her being locked up in protective custody.

I also suggested to ICE Supervisor Quinones they put Nicole back in DH1 or DH2, since she does not have any disciplinary write ups at this facility, or to release her with the many options we have presented with her Humanitarian Parole. Supervisor Quinones presented these options to the staff of the Santa Ana Jail, who, by this time, had viewed the video confirming that Nicole was the victim, not the aggressor, in the incident in question.[4]

Nonetheless, after one week of indecision, and Nicole's health steadily declining, and no legal phone calls with my client, ICE Supervisor Quinones left Friday, January 23, 2015, and will not return for at least one week.

Also, we found out today, Sunday January 25, 2015, that the perpetrator had been released out of lockdown on Friday, January 23, 2015, and has been allowed to circulate in the general detainee population ever since, while my client, the victim, still sits in solitary confinement ("protective custody") for 23 hours a day. This is unacceptable, and as it violates both common sense and Nicole's basic rights as a detainee to lock her up while the perpetrator is returned to the general detainee population. My client is now being discriminated against by ICE and jail supervisors, and completely humiliated, and she needs to be released back into the general population immediately; the detainee who threatened Nicole, not Nicole herself, should be locked down.

If my client is unable to properly present and defend herself in her asylum case tomorrow, because of her lack of access to legal counsel, and for her health significantly declining as a

---

[4] ICE and the Santa Ana Jail facility continuously mention that Nicole had issues at the James A. Musick facility prior to her transfer to the Santa Ana Jail. However, Nicole was retaliated against after she filed many documented complaints about deputy harassment and discrimination at that facility; these complaints were the reason for her transfer from James A. Musick to the Santa Ana Jail.

30

result of her placement in protective custody, she will have to take all necessary actions to vindicate herself and ensure that all civil rights violations against her have been addressed.

Conclusion

It is therefore hoped that you give positive consideration to this request.

Should you have any further questions or concerns regarding this request, please do not hesitate to contact me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

31



(310) 927-7705
Immigrant Rep, Inc.
PO Box 4736
Rolling Hills Estates, CA 90274
☎ : (310) 988-2886
✆ : info@immigrantrep.com
🌐 : www.immigrantrep.com

February 4, 2015

### Re: Request for Humanitarian Parole:
### Petra Albrecht, A# 206-409-411
### Nicole Albrecht, A# 206-407-728

To Whom It May Concern:

The purpose of this letter is to request **Humanitarian Parole** under Section 212(d)(5)(A) of the Immigration and Nationality Act.[1] My G-28 is already in the file for both individuals named above; for convenience, please find attached copies of the G-28's.

### Background

Please see the attached <u>01/07/2015</u> and <u>01/15/2015</u> Humanitarian Parole requests for the complete background of Petra's and Nicole's cases.

**Part of the Humanitarian Parole** request is based on the significant public benefit to allow the Albrecht family the right to assist in the prosecution of the celebrity couple Alexandra Paul and Ian Murray, ("The Couple"), for crimes that the couple committed against Nicole and Petra Albrecht ("Applicants"). (See <u>01/15/2015</u> Humanitarian Parole request.) ICE continues to prevent Applicants from prosecuting The Couple and appears to have been involved in detaining the Applicants in a manner timed specifically to ensure that Applicants would not be able to pursue legal remedies against The Couple.

This is particularly evidenced by the fact that ICE arrested Applicants as they were on their way to criminal court to testify in a criminal matter that The Couple had filed in retaliation for the Applicants legal actions against The Couple; as Applicants were being arrested by ICE, they were observed by the same officers from the LAPD Threat Management Unit who had previously arrested Nicole (the daughter) in a manner timed to again assure that she could not testify in criminal court. Inasmuch as there was no independent reason for officers of the LAPD Threat Management Unit to have been present at the time as Applicants arrest by ICE, one can only conclude that either the LAPD Threat Management Unit or The Couple (or both) was working with ICE to ensure that Applicants were arrested in order to prevent Applicants from being able to attend criminal court and pursue action against The Couple.

---

[1] 8 USC §§ 1101-1503 (1952) (<u>as amended</u>) (hereinafter "INA").

32

## New Evidence

**The new evidence**, event # LOS1409000059, on the Form I-831, was given to Petra in her Asylum hearing in Immigration Court on 01/20/2015. This document leaves no doubt that The Couple contacted ICE to put the wheels in motion for Applicants' arrest on September 4, 2014, and that they did so in order to abuse the immigration enforcement process as a way of criminal prosecution. The Couple thus set one law enforcement agency (ICE) against Applicants, in order to prevent other law enforcement agencies from prosecuting The Couple for a series of criminal activities committed against Applicants.

Specifically, **on August 27, 2014 – which was just two days after Applicants filed a criminal threat report against Alexandra Paul, along with a restraining order in civil court in order to press charges and prosecute Ms. Paul, for threats against the Albrecht family's life – Ms. Paul e-mailed the Los Angeles ERO Outreach mailbox,** stating that for more than a year she had been stalked by and harassed by Nicole Albrecht and her mother Petra Albrecht. It also stated that the subjects are "illegal aliens from Germany" and that they have violated court orders to stay more than 100 yards away from Ms. Paul almost two dozen times in the past year.

Enforcement and Removal Operations (ERO) case officer Castillo was assigned to investigate the claims by Ms. Paul, in which she mainly referred to having stalking problems with Applicants. Again, Ms. Paul used these allegations as a catalyst to seek attention for an investigation for her claims; she further stated that the applicants were "illegal aliens," in order to recruit ICE to take care of her of personal legal matter (by removing Applicants as witnesses against her).

Even though ICE has no jurisdiction over court order violations and cannot investigate stalking and harassment matters, ERO case officer Castillo cooperated with LAPD Threat Management Unit Detective Nava Mercado, by relying on the allegations provided by Ms. Paul and treating them as if they were proven facts.[2]

Ms. Paul was less than forthcoming when she failed to alert ICE of the fact that **she herself just had a police report filed against her two days prior to contacting ICE, along with a restraining order in civil court and was served those legal documents only one day prior to contacting ICE, and that her husband, Ian Murray, also had a restraining order against him in May 2014 that was only dropped when Nicole was prevented from attending the court hearing.** It must also be noted that Nicole Albrecht has not been convicted of stalking, and that, at the time of Applicants' arrest by ICE, they were still in court proceedings with Ms. Paul

---

[2] It should be mentioned that there is currently an investigation against Detective Mercado regarding her own mishandling of the alleged claims by Ms. Paul and husband Ian Murray against the Albrecht family, especially given that Detective Mercado's mishandling of these claims led to Applicants' arrest on September 4, 2014.

 33

and Ian Murray. Secondly, Petra Albrecht does not have any stalking charges or police reports or restraining orders against her; this, again, demonstrates a lack of complete candor on the part of Ms. Paul and her efforts to incriminate Applicants.

It should also be noted that Ms. Paul's charge that Applicants had stalked and harassed her was filed merely in retaliation for the legitimate claims that Applicants had made against Ms. Paul and her husband. However, as discussed, in the 01/15/2015 Humanitarian Parole request, Applicants were prevented from presenting this evidence in criminal court by the Los Angeles Police Department and then by Immigration and Customs Enforcement.

In the first incident, Nicole was arrested and briefly detained by the LAPD Threat Management Unit on May 22, 2014. Although Nicole immediately paid her bail, she was, for unknown reasons, not released from jail until almost one week later. This caused Nicole to miss the hearing on the restraining order (from threats against her life) that she had sought against Ms. Paul's husband (Ian Murray), on May 28, 2014, which resulted in the dismissal of said restraining order request.

In the second incident, both Applicants were arrested by ICE on September 4, 2014, as they were on their way to criminal court to defend themselves against Ms. Paul's false allegations against them. In addition, Applicants' arrest by ICE prevented from going to the restraining order hearing on September 16, 2014, against Alexandra Paul..

As discussed in the 01/15/2015 Humanitarian Parole request, the timing of both arrests seemed timed around the criminal court hearings such that these arrests would prevent the Applicants from testifying in court. The new evidence from the I-831 has since confirmed that the arrests were enacted as part of Ms. Paul's plan to remove Applicants as potential witnesses, the very definition of witness tampering. The fact that the Los Angeles Police Department and ICE have assisted in Ms. Paul's plan would thus appear to make both agencies accessories to this crime.

As this new evidence clearly shows, the timely contact from Alexandra Paul to ICE was the only catalyst for arresting and detaining Nicole and Petra Albrecht on September 4, 2014. It can be concluded that the sole purpose of the contact was to have the entire family deported, to prevent Nicole, Petra, and Jayson Albrecht from being able to assist in the prosecution of her and of her husband, Ian Murray. Such actions suggest both **witness tampering** and **obstruction of justice**.

ICE can no longer turn its head away from this evidence, and these are clear grounds to release Applicants on Humanitarian Parole, so that they work to ensure not only that Ms. Paul and Mr. Murray are prosecuted, but also that Applicants' themselves are cleared of all wrongdoing in this case.

 34

## Conclusion

It is therefore hoped that you give positive consideration to this request.

Should you have any further questions or concerns regarding this request, please do not hesitate to contact me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

35



Immigrant Rep, Inc.
PO Box 4736
Rolling Hills Estates, CA 90274

☎: (310) 427-7705
☎: (310) 988-2886
✉: Info@immigrantrep.com
🌐: www.immigrantrep.com

February 4, 2015

U.S. Department of Justice
Criminal Division
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**RE: Humanitarian Parole,**
**Nicole Albrecht Wheeler, AKA Nicole Albrecht, A# 206-407-728**
**Petra Albrecht, A# 206-409-411**

To Whom It May Concern:

Our office represents the above named applicants for Humanitarian Parole. (Please see the attached G-28's.)

The purpose of this letter is to request that The Department of Justice investigate and rule on the Department of Homeland Security's failure and slow pace to consider Humanitarian Parole to the ("Applicants") since January 7, 2015, based on the ample evidence that supports such a release, which also supports a significant public benefit, namely, that the Nicole Albrecht Wheeler and Petra Albrecht ("Applicants") have a right to ensure that those who have committed crimes against them are prosecuted.

**Background**

As the attached materials demonstrate, the Los Angeles Immigration and Customs Enforcement (ICE) Field Office has been provided with a large amount of evidence regarding witness tampering, obstruction of justice, malicious prosecution, and perjury, but, for unknown reasons, they continue to ignore it.

Since ICE has mishandled the case and has refused to allow Applicants to attend criminal court proceedings to vindicate themselves, Applicants have been forced to bear the consequences of abuses and discrimination throughout their detention by Immigration and Customs Enforcement, the intentional separation of Petra Albrecht to a different detention facility, and ICE's refusal to allow Petra to attend dependency court hearings, which led to her losing custody of her 11-year-old son and key witness, Jayson Albrecht. Since ICE's actions directly caused Jayson Albrecht to be illegally extradited to Germany, ICE now bears the burden of bringing him back to the United States.

 36

**Significant Public Benefit**

Please see attached February 4, 2015, Humanitarian Parole request detailing the significant public benefit, along with the underlined evidence that clearly shows the timely contact from Alexandra Paul to ICE on August 27, 2014, with the sole purpose of deporting the Albrecht family in order to avoid prosecution against her and her husband Ian Murray. **Alexandra Paul's contact with ICE was just two days after she had a criminal threat report filed against her, and a restraining order in civil court, for threatening the Albrecht family's life.** Please note that this was our claim since the beginning, and ICE officer Castillo[1] and others knew this exculpatory evidence existed since 09/04/2014 but kept it from the Albrecht family until Petra was served with a copy of this evidence at her asylum hearing in the Immigration Court on 01/20/2015.

Also, on 01/13/2015, Supervisor Quinonez stated that his office was still declining to release Nicole and Petra, since Applicants are not eligible for humanitarian parole because they are Visa Waiver Program overstays, even though the attached policy memo states that they do qualify for Humanitarian Parole.[2] Shortly afterward, Supervisor Quinonez stated, in light of the statements in the policy memo, there is a possibility that Applicants may, in fact, be eligible for humanitarian parole and that he would have ICE's attorneys look into the matter. However, to date, no ICE attorneys (nor any other representative from ICE) have gotten back to me or made a decision regarding humanitarian parole.

We also asked that any and all decisions regarding Applicants' requests for humanitarian parole be done in writing, but this was never done, either.

Please also see the index of the additional attached items:

- Three (3) Humanitarian Parole requests from 01/7/2015, 01/15/2015, and 02/04/2015.
- New witness tampering evidence received 01/20/2015.
- DHS Policy Memo regarding adjustment of status under the visa waiver program. (See especially page 3 at the bottom.)
- Page 15 from the National Detainee Handbook (regarding attending already scheduled court cases out of immigration.)

---

[1] Please note that any misspellings of names are unintentional, and I apologize in advance should any such misspellings be found in this letter.

[2] Specifically, the policy memo states, on the bottom of page 3, that "…if, in a given case, the individual [Visa Waiver Program overstay who was detained by Immigration and Customs Enforcement] were paroled under INA section 212(d)(5)(A), that would be "parole" for purposes of adjustment of status under INA section 245(a)." Obviously, this policy memo would not mention that Visa Waiver Program overstays who are released from ICE custody under a grant of humanitarian parole are eligible for adjustment of status if there were no jurisdiction to release such individuals under humanitarian parole in the first place.



- Jayson Albrecht Extradition Explanation, and the letter from 11-year-old Jayson Albrecht, who was illegally extradited out of the U.S. even though his asylum application was still pending.

## Conclusion

In conclusion, Immigration and Customs Enforcement has had ample time to consider the multitude of evidence supporting a grant of humanitarian parole but has failed to do so. While awaiting a decision, Nicole and Petra Albrecht have remained in Immigration detention, having to endure the many hardships inherent in detention, and Jayson Albrecht has been illegally extradited back to Germany before a decision could be reached on his pending application for asylum from Germany.

Nicole and Petra must be granted humanitarian parole immediately, in order to afford them the opportunity to rectify the problems brought about directly by ICE's failure to grant them humanitarian parole, especially:

1. The ability to use the resources at their disposal outside of Immigration detention to locate Jayson Albrecht and return him to the United States in order to have his pending asylum application considered; and
2. The ability to attend court hearings in criminal court, both to clear themselves of the charges brought against them by Alexandra Paul and Ian Murray and to ensure that Ms. Paul and Mr. Murray are prosecuted for their crimes against the Albrechts.

Your prompt consideration of this request would be greatly appreciated. Should you have any questions or concerns regarding this request, please do not hesitate to contact me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

38

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

In the Matter of:

NICOLE ALBRECHT

A# 206 407 728

Petitioner

APPEAL FROM A DECISION OF JOHN F. WALSH,
IMMIGRATION JUDGE
LOS ANGELES, CA
RODRIGUEZ BOND DENIAL

## BRIEF OF APPELLANT / PETITIONER

PRO SE

Judge's Memo Received by Detainee- April 6th, 2015

39

Date of Submission: 4/16/15

Nicole ALBRECHT A# 206 407 728

<u>Index- Appeal Brief- Rodriguez Bond Denial</u>

| <u>Exhibit</u> | <u>Description</u> | <u>Page</u> |
|---|---|---|
| A | Judge Walsh Memo<br>Regarding Rodriguez Denial | 1-3 |
| B | Nicole Albrecht Brief- with Judge Walsh<br>Memo Notes, and Nicole Albrecht Rebuttals,<br>and Conclusion | 4-11 |
| C | Rodriguez Court Transcript / Corrected | 12-29 |
| D | Judge Walsh Memo notice, Nicole Albrecht<br>Rodriguez Bond Denial | 30-32 |
| E | Alexandra Paul TRO, Ian Murray TRO<br>Radar On-Line Articles, Evidence Alexandra Paul<br>Contacted ICE, Picture of Albrecht family | 33-38 |
| F | Declarations for Nicole Albrecht, Alexandra Paul letter,<br>Ian Murray letter, Marguerite LaLonde letter,<br>Contradictions against submitted letters | 39-51 |
| G | Court Docket – Proof of Appearances | 52-54 |
| H | Judge Walsh Memo- Proof of Delivery 4/6/15 | 55-56 |
| I | Nicole Albrecht Appeal-Prior to Judge Memo | 57-60 |

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 20530*

ALBRECHT, NICOLE
A206-407-728
C/O CUSTODIAL OFFICER
62 CIVIC CENTER PLAZA
SANTA ANA, CA 92701

DHS/ICE Office of Chief Counsel - LOS
606 S. Olive Street, 8th Floor
Los Angeles, CA 90014

Name: ALBRECHT, NICOLE                           A 206-407-728

Type of Proceeding: Removal                      Date of this notice: 4/3/2015

Type of Appeal: Bond Appeal                      Filed By: <u>Alien</u>

### NOTICE -- BRIEFING SCHEDULE

o   Enclosed is a copy of the decision of the Immigration Judge.

o   Enclosed is a copy of the transcript of the testimony of record.

o   Appealing party is granted until 4/27/2015          to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date

o   Opposing party is granted until 4/27/2015          to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date

o   **BOND** - Transcripts are not prepared for appeals from an Immigration Judge's decision in bond proceedings. If you wish to listen to the audio recording of the custody hearing or obtain copies of audio recordings, you should contact the Immigration Court for assistance. You may also address the need for a transcript in your brief to the Board

**WARNING:** If you indicate on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal. If you fail to file a brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal. See 8 C.F.R. § 1003.1(d)(2)(i)(E)

If you are an alien and you received this notice, you are not represented by an attorney or accredited representative. An attorney or accredited representative must file a Notice of Entry of Appearance (Form EOIR-27) to represent you. 8 C.F.R. §§ 1003.3(a)(3) and 1003.38(g). Until a Form EOIR-27 is received, you are responsible for submitting a brief, and any submissions by anyone other than you will be rejected.

<u>FILING INSTRUCTIONS</u> -- In General.

**IMPORTANT:** The Board of Immigration Appeals has included two copies of this notice. **Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for your records.** Thank you for your cooperation.

41

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
LOS ANGELES, CALIFORNIA

| | | |
|---|---|---|
| File Number: | A 206 407 728 ) | DETAINED |
| | ) | |
| In the Matter of: | ) | |
| | ) | |
| | ALBRECHT, Nicole, ) | IN BOND PROCEEDINGS |
| | ) | |
| Respondent | ) | |

**ON BEHALF OF RESPONDENT**
Joshua Effron, Esquire
Immigrant Rep, Incorporated
Post Office Box 4736
Rolling Hills Estates, California 90274

**ON BEHALF OF THE DEPARTMENT:**
Franklin S. Yu, Assistant Chief Counsel
U.S. Department of Homeland Security
606 South Olive Street, Eighth Floor
Los Angeles, California 90014

## BOND MEMORANDUM AND ORDER OF THE IMMIGRATION JUDGE

### I.    Procedural History

Nicole Albrecht (Respondent) is a native and citizen of Germany. On January 26, 2015, the Court denied Respondent's applications for relief and ordered her removed. On February 19, 2015, Respondent appealed the Court's order to the Board of Immigration Appeals (the Board). The appeal is pending.

On March 4, 2015, the Court conducted a custody redetermination hearing pursuant to the U.S. District Court for the Central District of California's order in *Rodriguez v. Holder*, No. CV 07-3239-TJH, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013) (order granting permanent injunction); *see also Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) (affirming preliminary injunction). At the hearing, the U.S. Department of Homeland Security (the Department) presented evidence that Respondent had been stalking an actress and the actress' husband. Ex. B-2. Specifically, the evidence documented that Respondent had repeatedly violated two separate restraining orders, prohibiting her from coming within 100 yards of either the actress or the actress' husband. Id., Tabs B-I.

After considering all of the evidence presented, the Court found that the Department had established by clear and convincing evidence that Respondent's ongoing detention is justified because she poses a danger to the community and a flight risk. *See Rodriguez*, 2013 WL 5229795. Accordingly, the Court denied her request for bond.

On March 12, 2015, Respondent appealed the Court's bond decision to the Board. The Court provides this Memorandum to facilitate the Board's review of Respondent's appeal. *See* Immigration Court Practice Manual, Chapter 9.3(e)(vii) (June 10, 2013)

## II.      Law and Analysis

In *Rodriguez v. Holder*, Senior U.S. District Court Judge Terry J. Hatter, Jr., ordered that bond hearings be conducted in the cases of several identified class members, each of whom have remained in immigration custody for longer than six months without being afforded a bond hearing. *See* 2013 WL 5229795. Specifically, Judge Hatter ordered the Department to provide class members with an individualized bond hearing before an immigration judge. *See id.* Additionally, the District Court's injunction requires the Department to establish by clear and convincing evidence that the respondent's continued detention is justified because the respondent is a danger to the community or a flight risk. *See id.*

In *Matter of Guerra*, the Board made clear that the Court "has extremely broad discretion in deciding whether or not to release an alien on bond." 24 I&N Dec. 37, 39 (BIA 2006). The Board provided an extensive, but not exhaustive, list of factors that the Court may consider when determining whether an alien should be released on bond. *Id.* at 39-40; *see also Matter of Saelee*, 22 I&N Dec. 1258, 1262-63 (BIA 2000); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994); *Matter of Sugay*, 17 I&N Dec. 637, 638-39 (BIA 1981). These factors include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) manner of entry to the United States.

*Guerra*, 24 I&N Dec. at 40. Additionally, "[t]he Immigration Judge may choose to give great weight to one factor over others, as long as the decision is reasonable." *Id.*

In the present matter, the Court considered the positive and negative factors in Respondent's case and determined that she poses a danger and a flight risk. The Court noted that Respondent submitted letters of support from her new husband, her acquaintances, his acquaintances, and her fellow detainees. Nevertheless, these positive factors are outweighed by Respondent's willingness to disobey the restraining orders, as evidenced by the documents in the Department's submission. Ex. B-2, Tabs C-M. In particular, the letter that Respondent wrote to the actress' mother indicates that Respondent is completely irrational regarding the appropriateness of her own behavior toward the actress and the actress' husband. *Id.*, Tab J. Their statements, as well as the statement of Respondent's former roommate, indicate that Respondent refuses to leave the actress and the actress' husband alone and that she poses a danger to them. *Id.*, Tab K-M. Furthermore, Respondent was unwilling to discuss the events documented in the Department's submission and explain her conduct to the Court.

With regard to Respondent's flight risk, the Court noted that Respondent's refusal to abide by the law militates strongly against the likelihood that she will comply with future court

orders. The Court also considered that Respondent's limited prospects for relief diminish her incentive to appear for future proceedings if she is released from the Department's custody. *See Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1988) ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief."). In the present matter, the Court already ordered Respondent removed on January 26, 2015; the Court denied her applications for asylum and withholding of removal because she failed to establish a nexus to a protected ground, did not establish harm rising to the level of persecution, and had no objective basis for her fear of returning to Germany. IJ Oral Decision at 6 (Jan. 26, 2015). There is no indication that Respondent's appeal to the Board will be successful.

Accordingly, the Court found that the positive factors in Respondent's case did not outweigh the negative factors presented by her history of noncompliance with civil and criminal restraining orders, stalking, and reduced incentive to appear at future proceedings. Furthermore, the Court considered alternatives to detention and found them inadequate. Therefore, the Court concluded that the Department had established by clear and convincing evidence that Respondent's ongoing detention is justified because she is a danger and a flight risk. *See Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) ("An Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community.").

Accordingly, the Court entered the following order:

## ORDER

**IT IS HEREBY ORDERED** that Respondent's request for custody redetermination pursuant to *Rodriguez v. Holder* be **DENIED**.

DATE:   3/18/15

John F. Walsh
Immigration Judge

44

Nicole Albrecht Rebuttal to Judge John F. Walsh Bond Memo
RE: Denial of my Rodriguez Bond on 3/4/2015

1. Procedural History (From Judge John Walsh Memo)

On March 4th, 2015, the court conducted a custody redetermination hearing / Rodriguez Bond. At the hearing, the U.S. Dept. of Homeland Security presented evidence that the Respondent had been stalking an actress and the actress' husband. Ex. B-2. Specifically, the evidence documented that the Respondent had repeatedly violated two separate restraining orders, prohibiting her from coming within 100 yards of either the actress or the actress' husband. Id., Tabs B-I

After considering all of the evidence presented, the court found that the DHS established by clear and convincing evidence that the Respondents ongoing detention is justified because she poses a danger to the community and a flight risk. See Rodriguez, 2013 WL 5229795. Accordingly, the court denied her request for bond. On March 12th, 2015, the Respondent appealed the court's decision, and the court provided this memo to facilitate the Board's review of the Respondents appeal.

**Nicole Albrecht Rebuttal- Inaccuracies and untruths in the judge's statements, and the couple's statements, based on "non-credible evidence" submitted to the DHS by the couple".**

My brief will show that my bond hearing has little or nothing to do with immigration, and that the DHS, ICE and the judge are using hypocritical methods to keep me detained, which is keeping me from attending criminal court against a couple, which in turn, is protecting the couple from losing their private citizen legal battle against me and my family, which all started as a result of me turning down sexual favors from both Alexandra Paul and her husband Ian Murray (sexual harassment).

My brief shows that the immigration court is convicting me in criminal court, before actually attending criminal court, by using non-credible letters and statements against me provided by ex-Baywatch actress Alexandra Paul, husband Ian Murray, and a former roommate.

The judge and the DHS did not prove that the evidence submitted was "credible", therefore they cannot conclude that I am a danger or flight risk, based on non-credible evidence. One of the most common ways to raise doubt about testimony or evidence is to provide jurors or judges with a potential motivating factor for why a witness is saying what he or she is saying. **For example, if the witness has a conflict with the accused, or defendant, that may provide a reason to doubt what otherwise could be considered credible evidence. The process of raising doubt about what a witness is saying is often referred to as impeaching the witness. Prosecutors can usually use evidence of actual convictions only. They can't ask the defendant-witness about pending charges or arrests that didn't result in convictions. (Reason for denial)**

Page 4- A #206 407 728

45

I HAVE NO CONVICTIONS- But, for the sake of argument, even if I were to be convicted of the charges against me, (which I have not), the charges are misdemeanors, (1- civil restraining order), with no violence involved, and these are not deportable offenses.

Also, the actress Alexandra Paul threatened me and my family's lives on August 23rd, 2014, a judge granted a TRO against her, and in turn, she contacted ICE one day after being served said TRO, to have me deported, making it impossible to attend court against her and her husband. It also took ICE eight days until they actually arrested me, as I was on my way to court as a defendant, which was strategically timed so I would miss the pre-trial hearing on Sept. 4th, 2014. I also missed the TRO hearing against Alexandra Paul on Sept. 16th, 2014, which led to the dismissal of that TRO against Ms. Paul.

In Judge John Walsh's questioning to me during the Rodriguez hearing, (per the corrected transcripts) the judge keeps probing, and trying to associate me with mental illness, as he keeps asking me over and over if I have seen a doctor for mental issues? Per Transcripts: Page 12, line 2 - line 4 on Page 13. Page 15, line 1-line 4. And when he got nowhere with his questioning, he simply shut down the hearing without warning, or allowing me or my attorney Joshua Effron to ask a question before his abrupt denial regarding evidence in my open criminal trial.

**As per the questions Judge Walsh asked on PAGE 11, the judge acknowledged that I had not yet been able to attend criminal court to defend myself against these charges, but he later used this so called "evidence" to deny my bond later in the hearing. Please read below per transcripts, Page 11, line 3- line 21:

**Did you ever go to court? **Yes, every hearing. **Were those the charges you were going to attend on Sept. 4th, 2014 when ICE arrested you? **Yes. **SO YOU'VE NEVER HAD A HEARING- A CRIMINAL HEARING TO DECIDE WHETHER THE RESTRAINING ORDER WAS VIOLATED OR NOT? NO. I WASN'T ABLE TO ATTEND THE HEARING, I WAS ARRESTED ON SEPT. 4TH, 2014. I ATTENDED EVERY PRE-TRIAL HEARING. **OTHER THAN THESE CHARGES FOR VIOLATING A RESTRAINING ORDER, HAVE ANY OTHER CRIMINAL CHARGES EVER BEEN FILED AGAINST YOU? NO. I'M SORRY? NO.

Below are the judge's Memo statements, along with my rebuttals to each statement.

- The DHS presented evidence that the Respondent had been stalking an actress and the actress' husband. The DHS or the court cannot simply "conclude" or "state" that I had been stalking anyone, as the case has not gone to trial yet, therefore, it has not been proven that I stalked anyone, or broke any laws. I have not been convicted of anything. So it is irresponsible and unjust for the judge to base any kind of decision regarding my immigration release, on so called "evidence" provided by a party that is pursuing a case against me in criminal court, which is the same court the DHS is preventing me from attending to vindicate myself.

Page 5- A #206 407 728

46

Also, in the DHS supplement against me, the table of contents lists; K- Victim's Statement, L- Victim's Husband Statement, this is grossly inaccurate and a legally incorrect statement by the DHS. The government can't simply decide to call the couple "victim's" before someone has been convicted of a crime. These things "allegedly" happened, and they have yet to be proven in court.

- Also, the judge and the DHS have no way of knowing that the evidence submitted is credible, since they are simply statements from the couple and former landlord, and not "documented court evidence", or evidence from a "completed trial" with a verdict handed down. This is not the case. I would like the BIA to rule on this matter regarding all of the so called "evidence" against me provided to the DHS for my bond hearing.

Example- I could write a 100 page essay on Judge John Walsh, stating that he is a criminal, crook and a thief, but how could you be sure that the information I am providing is credible? I cannot prove it's credible, therefore, you cannot allow a judge to make decisions based on evidence he cannot prove are credible. This is what court is for, to prove whether it's credible or not, and this so called evidence is relative to criminal court, not immigration court. BTW- It's just an example, I do not believe that Judge Walsh is a criminal, crook or a thief.

- In addition, the letters submitted by this couple clearly state their motives, which are to keep me detained or deported so we cannot attend court hearings against them. This is another clear strike against the "evidence submitted" as being impartial or credible. Their goal is to destroy my family, without allowing me to go to court to defend myself, and the DHS is preventing me from this. Also, the couple failed to submit to the DHS my declaration letters / evidence I submitted to criminal court (see attached) which contradicts the claims the couple made against me, and a declaration that completely destroys the reputation of Marguerite LaLonde, which is listed in more detail later in this brief.

- <u>Specifically, the evidence documented that the Respondent had repeatedly violated</u> **(two) separate restraining orders,** <u>prohibiting her from coming within 100 yards of either the actress or the actress' husband- per the Ian Murray letter dated 1/7/2015 (neither the RO nor the order of protection ordered by another judge had any effect).</u> **This statement is a COMPLETE LIE FROM THE COUPLE.** There is only **(one)** restraining order, period. The protective order was simply issued after my arrest on May 22nd, 2014, while I was still in custody, and there was never anything else "allegedly" violated after that date, <u>so it's a lie to suggest that I violated a "Protective Order",</u> as well as the RO, "allegedly. So the couple lied to make it appear as if I violated two separate orders to indicate that I continued another act against them "allegedly", which in untrue. This is criminal from the couple, as they are stating false evidence.

Page 6- A #206 407 728

47

2. Law and Analysis

- In the Matter of Guerra, the board made it clear that the court "has extremely broad discretion in deciding whether or not to release an alien on bond. The list of factors include: 1. Whether the alien has fixed address in the U.S.? **YES.** 2. The alien's length of residence in the U.S.? **3 1/2 years.** 3. The alien's family ties in the U.S. and whether they may entitle the alien to reside permanently in the U.S. in the future? **I am married to a U.S. citizen, and can adjust my status if I can achieve Humanitarian Parole, while in or outside of detention - which I am eligible.** 4. The alien's employment history? **None, but I will work when status is adjusted.** 5. The alien's record of appearance in court? **I have kept all court dates, see proof per docket.** 6. The alien's criminal record? **No convictions.** 7. The alien's history of immigration violations? **No past violations.** 8. Any attempts by the alien to flee prosecution or otherwise escape from authorities? **None.** 9. The manner of entry into the U.S.? **I arrived into the U.S. with inspection.**

- Guerra, 24 I&N DEC. at 40. Additionally, "the immigration judge may choose to give great weight to one factor over others, as long as the decision is reasonable". In the present matter, the court considered the positive and negative factors in the the Respondent's case and determined that she poses a **danger and a flight risk.** The Respondent submitted letters of support from her new husband, her acquaintances, his acquaintances, and her fellow detainees. Nevertheless, these positive factors were outweighed by the Respondents willingness to **disobey the restraining orders (plural)**, as **evidenced** by the **documents** in the Departments submission. EX.B-2, Tabs C-M. In particular, the letter that the respondent wrote to the actress' mother indicates that the respondent is completely irrational regarding the appropriateness of her own behavior toward the actress and the actress' husband. Id., Tab J. **Their statements**, as well as the **statements of Respondents former roommate,** indicates the Respondent refuses to leave the actress and the actress' husband alone, and that she poses a threat to them. Id., Tab K-M. Furthermore, the **Respondent was unwilling to discuss the events documented in the Departments submission and explain her conduct to the court.**

- I pose a danger and flight risk? Based on what? The judge said that the positive factors were outweighed by my willingness to disobey the restraining orders (plural), as evidenced in the Departments submission. First, there is only ONE restraining order, not TWO, and I request that the court produce this "2nd RO" against me? Secondly, it has not been proven that I disobeyed a restraining order since this case has not gone to trial yet, and the judge cannot simply state this as it were fact, since it is not fact. This is not how the judicial system works. I am innocent until proven guilty, so why is this major factor, which is the cornerstone of the American justice system being overlooked in my case?

- And it also says, "as evidenced in the Departments submission". Isn't evidence generally something you can deem credible, like a RO, or legal court document with a time stamp? The DHS and the judge simply allowed letters from the couple and roommate, and they are treating the letters and statements as if they were fact, and this cannot be confirmed by the judge or DHS, so you cannot hold this against me. These people have the motive to keep me from court, so how could the BIA not see that this "evidence" cannot be deemed as credible? It breaks every basic theory of practicing law. Since my criminal court case is still in pre-trial, any letters, statements, or so called "evidence" submitted from either side is simply **discovery** at this point, formal and informal, and it cannot be used against me until I reach the trial.

- Their statements, as well as the statements of Respondents former roommate, indicates the Respondent refuses to leave the actress and the actress' husband alone, and that she poses a danger to them. This is completely false, and the judge or the court cannot prove this due to the following reasons: After my arrest on May 22nd, 2014, for "allegedly" violating a RO, there were no other accusations or charges brought against me, so how could the couple, or former roommate, or the judge make a claim that I "refuse to leave the couple alone", therefore I am a danger and a flight risk? When in fact, Alexandra Paul made threats against me and my family's life next, on August 23rd, 2014, as she tried to run us off the road in her husband's vehicle, in which I filed a criminal threat report, and was issued a temporary restraining order against her. That TRO was served to her on August 26th, 2014, and then on August 27th, 2014, Alexandra Paul contacted ICE to have us deported so we could not attend court against her on Sept. 4th, 2014, which would have left her case destroyed when presenting to the judge that I had obtained a TRO against her for threatening me and my family's life days before. Then, as Alexandra Paul planned, I was unable to attend the TRO hearing against her on Sept. 16th, 2014, which allowed her TRO to be dismissed. This couple has kept me from court (THREE TIMES), as to which, two TRO's were conveniently dismissed. (See attached TRO's, detention report). I am asking the BIA point blank, when do I get the justice I deserve and the benefit of the doubt? As I give you court documents indicating the trail and pattern of the couple's actions keeping me from court, but you simply rely on personal letters and statements from them which cannot be deemed credible, but then use that information against me to deny my eligible release from immigration custody. Please explain how this adds up to justice?

Page 8- A #206 407 728

49

- Former Roommate / Marguerite LaLonde Letter- This letter was originally thrown out by a judge in 2013 due to not enough evidence for Alexandra Paul to obtain a RO against me, so it's inadmissible, also, please see the attached declaration submitted to the court at that time from Zoe Reeves, who completely destroys Marguerite Lalonde's character, as Zoe describes Marguerite LaLonde as a "start struck manipulator motivated in her own self-interests, who gets involved with everyone's personal business, and who has deep depressions from economic losses." (read the declaration).

- <u>Furthermore, the Respondent was unwilling to discuss the events documented in the Departments submission and explain her conduct to the court.</u> Stating- <u>Your request for bond is denied. Ma'am, this statement is completely irrational. I don't think you are thinking straight. I would be frightened that you're not thinking correctly. You would not-- I'm not sure it's a product of mental illness. I think you are a danger and a flight risk. I don't need to hear anymore. The documents I think speak for themselves and your failure to be upright with me does not assist your case. You can appeal this decision if you want. Hearing closed.</u> This is not true, read the transcripts. I offered up more information than the judge asked me throughout the questioning, before he simply shut down the hearing and deemed me a danger and a flight risk. At the time he shut down the hearing, I was simply explaining that I did not want to incriminate myself in criminal court, by speaking about evidence that can still be used against me in that court. I meet all of the eligible criteria to be released from detention after 180 days, I have also been eligible for Humanitarian Parole for months, and it's <u>not irrational</u> to want to protect myself from being convicted of a crime that I did not commit, by answering questions that will be held against me in criminal court. What kind of double-standard justice is the immigration court trying to deliver? When the judge denied my bond, I immediately asked him if I could ask a question, and he said no. He also failed to give my attorney a chance to ask him a question, which would have been to discuss what we can and can't talk about, and to come to some compromise, as I obviously did not want my bond hearing denied because the judge perceived I did not want to explain myself to the court. The judge should have explained that he was going to halt and deny the hearing, before he simply halted and denied my hearing. It says that in the practice manual, that the Respondent has a right to ask the judge a question upon, or prior to ending a hearing, and he did not allow me or my attorney do this.

Page 9- A #206 407 728

50

- The judge also says, "The documents speak for themselves". The documents are all letters which prove no credibility, how can this judge state that the documents speak for themselves, as if they were legally binding documents that prove without a shadow of a doubt that the information provided is correct and true? If anything, the "documents submitted" prove nothing, since the court does not know if the information is true. But my evidence submitted to the court are legal documents from the courts, showing a pattern of obstruction, and the court will not consider those documents stronger than the others submitted?

- With regard to the Respondents flight risk, the court noted that the Respondent's refusal to abide by the law militates strongly against the likelihood that she will not comply with future court orders. This statement by the judge is based on what? I have never been convicted, so it's not been proven that I refused to abide by the law. How can the judge state this? And I've missed no court dates in the past, per the docket provided.

- The court also considered that the Respondent's limited prospects for relief diminish her incentive to appear for future proceedings if she is released from the Department's custody. In the present matter, the court already ordered Respondent removed on Jan. 26th, 2015; The court denied her applications for asylum and withholding of removal because she failed to establish a nexus to a protected ground, and there is no indication that the Respondent's appeal to the Board will be successful. This is untrue since I am also eligible for relief from humanitarian parole, which may be granted to me if I can work on my case with resources outside of detention. Also, I am eligible to adjust my status if I achieve humanitarian parole, which is applicable even with a visa waiver overstay, which means I can get a green card and legally stay in the US with my husband, as it should be.

- Accordingly, the court found that the positive factors in the Respondent's case did not outweigh the negative factors presented by her history on non-compliance with civil and criminal restraining orders, stalking, and reduced incentive to appear at future proceedings. Therefore, the court concluded that the Department had established by clear and convincing evidence that the Respondent's ongoing detention is justified because she is a danger and a flight risk. Once again, the statements from the judge have no merit, since it has not been proven that I was non-compliant with anything, such as a civil and criminal restraining order, (there is only a civil restraining order, and it's a misdemeanor), or stalking, as I have yet to be tried of these charges. Again, the judge's words sound as if there have been convictions handed down, and that's not the case, since it hasn't even gone to trial yet.

Page 10- A #206 407 728

5(

Conclusion

The judge nor the DHS satisfied their criteria for keeping me detained, as they did not prove their burden that I would be a danger or a flight risk, since the evidence they based decisions on were never proven to be credible. Judge Walsh, ICE and the DHS continue to keep me detained, and defame my character, due to discriminative and hypocritical practices and double-standards, that they do not enforce on other detainees. For the last 7 months, I have watched approximately 20-30 detainees be released on Rodriguez or other bonds, and most of them actually had past criminal convictions, as to which I have none. Please explain to me how you can justify their release over mine based on "non-credible evidence" from another court that hasn't gone to trial yet?

- Examples: Gisele Salas- felony drug convictions, ankle monitor tampering, and probation violations- released on bond.
- Betina Carter- Two felonies for stabbing, released on bond.
- Countless other detainees who have served time in Santa Ana for criminal convictions involving the sale of drugs, home invasion burglary, and other convictions were released on bond.

Respectfully, I am asking that the Board of Immigration Appeals looks at the simplicity of my arguments, which prove that all of the evidence, or statements submitted to the DHS and the court by "the couple" and ex-roommate cannot be categorized as credible material, as this "couple's sole purpose is to prevent me and my family from going to court to pursue them legally. Again, deeming evidence to be credible is one of the cornerstones of the American justice system, so how can the Board pretend as if this huge argument should not reverse my appeal decision, period? The court, the judge, and the DHS don't know this couple, and you cannot simply take their word for anything, since I have proven with written documents from the courts that they have motives, and they have also lied to the court about me violating (two) restraining orders, and their letters contradict on many points. Also, I ask that the Board please take into consideration that ICE and the DHS are supporting "the couples" witness tampering and obstruction of justice, by not allowing me to appear in criminal court while I'm still in ICE custody. This is fairly simple, please ask yourself, "Why has ICE or the DHS not allowed me to make a trip to court and vindicate myself for over seven months?

For all of these, and the many other credible reasons I have provided, the Board must rule that the immigration judge and the DHS were wrong in their determination, and I am asking that the Board reverse this decision, and allow me to be released so that I may fight my case outside of detention, like everyone else who meets the criteria that I have also met for release.

Thank you,

Nicole Albrecht.

Page 11

52

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

CLAERY & GREEN, LLP.          State Bar no : 217 133
Lance R. Claery, ESQ
2121 Avenue Of The Stars , Ste 2900
Los Angeles, CA 90067
TELEPHONE NO.: (310) 362 2273          FAX NO. (Optional):     (877) 856 4111
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):  Nicole Albrecht

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Los Angeles, Ca 90012
BRANCH NAME:  Central - Stanley Mosk

PLAINTIFF/PETITIONER:  Nicole Albrecht

DEFENDANT/RESPONDENT:  Ian Douglas Murray

| DECLARATION | CASE NUMBER: |
|---|---|

My name is Zoe Reeves and I am a formal roommate of Marguerite Lalonde. I resided with her at 17181, Avenida De Santa Ynez, Pacific Palisades, CA 90272 from August 2012 to December 2012. Lisette Kremer is the owner and landlord of this property.

When I resided at this property I have witnessed Marguerite Lalonde intervening in other people's relationships and friendships to cause havoc out of jealousy & spite fullness.

Marguerite is a vindictive manipulator that is motivated in her own self-interest. She lends towards women and has extreme frustrations when she isn't the center of attention.

She is also very "star struck" and always talked about "who she knows". Marguerite tries to elevate her status in society because she has deep depressions from economical losses.

She has tendencies of a social-path in her manipulations and lives in a world that she fantasizes over whom she knows and tries to go to places, celebrities like to go to (events, restaurants etc.). Marguerite is a very good manipulator and comes across what ever she learns about a person to benefit her in the end.

It is very disturbing to see her do to others and frustrating to have her manipulations done to Nicole.

Marguerite is known by others and roommates to lie and outright causes issues.

I would not trust any statements that come from her, I am sure she is lying in favor to get in good gracious of a "celebrity" and was done a favor for her testimony.

While I resided at this property I never witnessed Marguerite to rise early in the morning to go to the gym. She wasn't a morning person and would only get up early if she had to work, and that time frame would not be before 8 am. She hated waking up early and never paid attention to others schedules so early in the morning. If she did rise at her early 8 am time frame, she would come out for her cup of coffee and would go straight back to her room or bathroom ( please see back side of document for further declaration)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  1/28/2014

ZOE REEVES
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other (Specify):

Form Approved for Optional Use
Judicial Council of California
MC-030 [Rev. January 1, 2006]

**DECLARATION**

Page 1 of 1

53

to get ready. I can bare witness that Marguerite worked out during my time there at the community clubhouse/gym or go to Santa Monica for Kickboxing class and only in the evenings or at night. I also have never seen her go to the community pool during my time there. She always stated she had no body to wear a bathing suit. During my time, Marguerite Lalonde manipulated issues and situations to make herself look good or if she was getting some form of a benefit out of it.

For example: she shared her room with a male roommate to cut her rent room cost. In December 2012 the roommate called the police on Marguerite as she refused to let him sleep in the room or on the property due to "late/lack" of his half payment. She continued to argue with the police that she won't let him in and tried to justify her actions with manipulations and lies. After the police left, telling she is legally bound to let him in, she is an angry vindictive manner she would take the roommate's belongings and put it near or in the trash cans.

54

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Nicole Albrecht
1989 Blake Avenue
Los Angeles,
CA 90039

TELEPHONE NO.:   FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Los Angeles
STREET ADDRESS:   1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE:   Santa Monica,
BRANCH NAME:   CA 90401

PLAINTIFF/PETITIONER: Alexandra Elizabeth Paul

DEFENDANT/RESPONDENT: Nicole Albrecht

**MC-030**

FOR COURT USE ONLY

**DECLARATION**

CASE NUMBER:
SS023906

My name is Melissa Hynes. I have known Nicole and her family for several months.

I was introduced to her by Alexandra Paul who invited me and my family to the community pool.

Alexandra Paul asked Nicole and her family to join us at the pool.

Nicole and Alexandra interacted with my kids together and at no time did I see Nicole or her family harassing or otherwise acting unfriendly to Alexandra.

I have no idea why Alexandra would claim that Nicole is stalking her.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 11/13/13

Melissa Hynes
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Attorney for ☐ Plaintiff ☐ Petitioner ☐ Defendant
☐ Respondent ☒ Other (Specify): witness

55

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Nicole Albrecht<br>1989 Blake Avenue<br>Los Angeles,<br>CA 90039 | |

TELEPHONE NO.:          FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**   Los Angeles

STREET ADDRESS:   1725 Main Street

MAILING ADDRESS:

CITY AND ZIP CODE:   Santa Monica,

BRANCH NAME:   CA 90401

PLAINTIFF/PETITIONER:  Alexandra Elizabeth Paul

DEFENDANT/RESPONDENT:  Nicole Albrecht

| **DECLARATION** | CASE NUMBER:<br>SS023906 |
|---|---|

My Name is Lillie Grossman.

On October 24, 2013 Nicole Albrecht and I entered the gated pool area at the Santa Ynez Recreation Center
at approximately 9:15 A.M.

As soon as we entered Ms. Albrecht was approached by Alexandra Paul.

Ms. Paul called Ms. Albrecht out and told her that she should not be there because of the restraining order
that was in effect. Ms. Albrecht responded by saying that there was no restraining order in effect, only an agreement,
and that she (Ms. Albrecht) had the right to be in the pool area after 9:00 A.M.

A few more words were exchanged and Ms. Paul left the pool area angrily.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  11 - 3 - 13

Lillie Grossman

(TYPE OR PRINT NAME)                              (SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other *(Specify):*  witness

Form Approved for Optional Use
Judicial Council of California
MC-030 [Rev. January 1, 2006]

**DECLARATION**

Page 1 of 1



Case # SS023906

# Attachment 9 – Justification or Excuse

On october 24th, 2013 my friend Lillie Grossman and I met up at the pool at around 9:15 A.M.

I wasn't seeking Alexandra out and had no idea she was there, particularly since it was after 9 o'clock. She called me out and told me I shouldn't be there because of the restraining order that is in effect.

I told her there is no restraining order only an agreement and I wasn't violating it.

I also told her that she was welcome to swim and that she can stay. I overheard her saying to another pool member: "I already gave up my gym for her and I can't even be here at the pool after 9 o'clock".

A short argument followed and she stormed off. I believe that they set me up, because Ian saw me at the pool at around the same time earlier in the week.

I should also mention that her request for a restraining order had my new address and precise information about the vehicle that I drive. Also evidence of the fact that they were setting me up again.

Who is stalking whom?

I should also mention that at the october 28th, 2013 hearing in court Alexandra approached me and said:" Honey...it's all the same except for one page". This was again a violation against the agreement.


I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Date: 11/14/13

*Nicole Albrata*

57

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of

File:  A206-407-728

NICOLE ALBRECHT

)
)
)
)

IN BOND PROCEEDINGS

RESPONDENT

Transcript of Hearing

Before JOHN F. WALSH, Immigration Judge

Date: March 4, 2015

Place: LOS ANGELES, CALIFORNIA

Transcribed by FREE STATE REPORTING, Inc.-2

Official Interpreter:

Language:

Appearances:

For the Respondent: JOSHUA EFFRON

For the DHS: FRANKLIN YU

58

1   JUDGE TO MS. ALBRECHT

2   Where were, where were you when they arrested you?

3   MS. ALBRECHT TO JUDGE   *I GoT arrested by...*

*J got arrested by*

4   I was arrested at the Department of Homeland Security when I was on my way to

5   criminal court as a defendant.

6   JUDGE TO MS. ALBRECHT

7   You were on the way or you were there?

8   MS. ALBRECHT TO JUDGE

9   Yes, I was on my way.

10   JUDGE TO MS. ALBRECHT

11   And why were you on the way to a criminal court? What were the charges?

12   MS. ALBRECHT TO JUDGE   *Turned Down Sexual Advances*

13   It's a longer story. After I -- several fences down from my neighbor and his wife,

14   they branded me as a stalker and on April 29th, 2014 I filed a criminal threat report

15   along with a restraining order against the male, Ian Murray [phonetic sp.]. And on

*May*          *arrested*

16   8/22/2014 I got -- I stood for allegedly violating a restraining order that they in turn got

17   against me and I was held in jail for seven days and as a result I was unable to attend

18   my hearing against Ian Murray in order to prosecute him for criminal threat against my

19   life.                                                          *threats*

20   JUDGE TO MS. ALBRECHT

21   Okay, you were charged --

22   MS. ALBRECHT TO JUDGE

23   Yeah.

24   JUDGE TO MS. ALBRECHT

25   -- in May with violating a restraining order?

A206-407-728                          ~~30~~ 59                          March 4, 2015

1   MS. ALBRECHT TO JUDGE

2      Yes.

3   JUDGE TO MS. ALBRECHT

4      Did you ever go to court on those charges?

5   MS. ALBRECHT TO JUDGE

6      I went to every hearing, yes, I did.

7   JUDGE TO MS. ALBRECHT

8      Was the -- were those the charges you were going to attend in, in September 4th

9   when ICE arrested you?

        *Very Important*

10   MS. ALBRECHT TO JUDGE

11      Yes, yes.

12   JUDGE TO MS. ALBRECHT

13      So you've never had a hearing -- a criminal hearing to decide whether the

14   restraining order was violated or not?

15   MS. ALBRECHT TO JUDGE

16      No, it kept -- I wasn't able to attend the hearing, I was arrested. I attended every

17   pretrial hearing prior, but yeah.

18   JUDGE TO MS. ALBRECHT

19      Other than these charges for violating a restraining order, have any other criminal

20   charges ever been filed against you?

21   MS. ALBRECHT TO JUDGE

22      No.

23   JUDGE TO MS. ALBRECHT

24      I'm sorry?

25   MS. ALBRECHT TO JUDGE



SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

O. 4WA00723
HE PEOPLE OF THE STATE OF CALIFORNIA     VS.
EFENDANT 01: NICOLE ALBRECHT
AW ENFORCEMENT AGENCY EFFECTING ARREST: LAPD-DETECTIVE HEADQUARTER DIV

PAGE NO. 1
CURRENT DATE 03/02/15

AIL: APPEARANCE   AMOUNT      DATE      RECEIPT OR   SURETY COMPANY   REGISTER
     DATE       OF BAIL     POSTED    BOND NO.                      NUMBER
  06/09/14    $40,000.00  06/03/14  T5050468053  THE NO RIVER INS COM 74154001

ASE FILED ON 05/02/14.
COMPLAINT FILED, DECLARED OR SWORN TO CHARGING DEFENDANT WITH HAVING
OMMITTED, ON OR ABOUT 02/23/14 IN THE COUNTY OF LOS ANGELES, THE FOLLOWING
FFENSE(S) OF:
  COUNT 01: 273.6(A) PC MISD
  COUNT 02: 273.6(A) PC MISD
  COUNT 03: 273.6(A) PC MISD
  COUNT 04: 273.6(A) PC MISD
  COUNT 05: 273.6(A) PC MISD
EXT SCHEDULED EVENT:

 ARREST WARRANT TO ISSUE

5/06/14 ARREST WARRANT IN THE AMOUNT OF $15,000.00 BY ORDER OF JUDGE ANTONIO
   BARRETO JR. ISSUED. (05/08/14).


N 05/27/14 AT  800 AM :

 DEFENDANT IS PRESENT AND IN CUSTODY
EXT SCHEDULED EVENT:
 05/27/14   830 AM  BENCH WARRANT HEARING    DIST AIRPORT COURTHOUSE DEPT 141


N 05/27/14 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

ASE CALLED FOR BENCH WARRANT HEARING
ARTIES: DEBORAH BRAZIL (JUDGE)  TERRY E. NEWTON  (CLERK)
              KELLY J CALL  (REP)     NONE  (CA)
EFENDANT DEMANDS COUNSEL.

OURT REFERS DEFENDANT TO THE PUBLIC DEFENDER.
UBLIC DEFENDER APPOINTED.  LARISSA M. CESAREO ~ P.D.
EFENDANT IS PRESENT IN COURT, AND REPRESENTED BY LARISSA M. CESAREO DEPUTY
 PUBLIC DEFENDER
EFENDANT ADVISED OF THE FOLLOWING RIGHTS ORALLY:
 COPY OF THE COMPLAINT AND THE ARREST REPORT GIVEN TO DEFENDANTS COUNSEL.
EFENDANT WAIVES ARRAIGNMENT, READING OF COMPLAINT, AND STATEMENT OF
 CONSTITUTIONAL AND STATUTORY RIGHTS.
EFENDANT WAIVES FURTHER ARRAIGNMENT.
EFENDANT PLEADS NOT GUILTY TO COUNT 01, 273.6(A) PC.
EFENDANT PLEADS NOT GUILTY TO COUNT 02, 273.6(A) PC.
EFENDANT PLEADS NOT GUILTY TO COUNT 03, 273.6(A) PC.
EFENDANT PLEADS NOT GUILTY TO COUNT 04, 273.6(A) PC.
EFENDANT PLEADS NOT GUILTY TO COUNT 05, 273.6(A) PC.
AIL SET AT $40,000.

ASE NO. 4WA00723                          PAGE NO.   2
EF NO.  01                               DATE PRINTED 03/02/15

EXT SCHEDULED EVENT:
6/09/14   830 AM  PRETRIAL HEARING   DIST AIRPORT COURTHOUSE DEPT 141

5/27/14 ARREST WARRANT IN THE AMOUNT OF $15,000.00   RECALLED. (05/27/14).

USTODY STATUS: REMANDED TO CUSTODY


N 06/09/14 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

ASE CALLED FOR PRETRIAL HEARING
ARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
              GUILLERMINA WOODMAN       (REP)  SUSAN S. COUIG  (CA)
EFENDANT IS PRESENT IN COURT, AND REPRESENTED BY ASHLEY M. PRICE DEPUTY PUBLIC
  DEFENDER
 PRETRIAL HEARING CONTINUED TO  07/02/14 IN DEPARTMENT 141.

 JURY TRIAL DATE OF 6/24/14 IS VACATED.

AIVES STATUTORY TIME.
EXT SCHEDULED EVENT:
 07/02/14   830 AM  PRETRIAL HEARING ` DIST AIRPORT COURTHOUSE DEPT 141
AY 00 OF 10
6/09/14 BAIL TO STAND, # T5050468053

USTODY STATUS: BAIL TO STAND


N 07/02/14 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

ASE CALLED FOR PRETRIAL HEARING
ARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
              BARBARA JAMES        (REP)  SUSAN S. COUIG  (CA)
EFENDANT IS PRESENT IN COURT, AND REPRESENTED BY ASHLEY M. PRICE DEPUTY PUBLIC
  DEFENDER
 PRETRIAL HEARING CONTINUED TO  09/04/14 IN DEPARTMENT 141.
AIVES STATUTORY TIME.
EXT SCHEDULED EVENT:
 09/04/14   830 AM  PRETRIAL HEARING   DIST AIRPORT COURTHOUSE DEPT 141
AY 00 OF 10

7/02/14 BAIL TO STAND, # T5050468053

JSTODY STATUS: BAIL TO STAND


N 09/04/14 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

ASE CALLED FOR PRETRIAL HEARING
ARTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
              GUILLERMINA WOODMAN       (REP)  ELIZABETH GERTZ  (CA)
HE DEFENDANT FAILS TO APPEAR, WITHOUT SUFFICIENT EXCUSE AND NOT REPRESENTED BY
  COUNSEL
AIL ORDERED FORFEITED.
 BOND FORFEITURE CARD #AB0013856 ISSUED
EXT SCHEDULED EVENT:
ENCH/WARRANT ISSUED
9/04/14 FORFEITURE, # T5050468053
9/04/14 BAIL FORFEITURE NOTICE PRINTED, # T5050468053

9/04/14 BENCH WARRANT IN THE AMOUNT OF $150,000.00 BY ORDER OF JUDGE COMR.

62

ASE NO. 4WA00723                          PAGE NO.   3
EF NO.  01                                DATE PRINTED 03/02/15

   ALAN I. RUBIN ISSUED. (09/04/14).


N 09/05/14 AT 1000 AM :

 NOTICE OF FORFEITURE MAILED TO SURETY AND AGENCY ON 09/05/14,
 185TH DAY IS 03/09/15.  REG. #74154001; BOND #T50-50468053.
 AA.


N 02/26/15 AT  830 AM  IN AIRPORT COURTHOUSE DEPT 141

4SE CALLED FOR BENCH WARRANT HEARING
4RTIES: COMR. ALAN I. RUBIN (JUDGE)  TERRY E. NEWTON  (CLERK)
          GUILLERMINA WOODMAN      (REP)  NONE  (CA)
EFENDANT IS  NOT PRESENT IN COURT, BUT REPRESENTED BY LARISSA M. CESAREO

 DEPUTY PUBLIC DEFENDER
 BENCH WARRANT ORDERED IN THE AMOUNT OF 40,000.00
EXT SCHEDULED EVENT:
ENCH/WARRANT ISSUED

2/26/15 BENCH WARRANT IN THE AMOUNT OF $150,000.00   RECALLED. (02/26/15).

2/26/15 BENCH WARRANT IN THE AMOUNT OF $40,000.00 BY ORDER OF JUDGE COMR. ALAN
    I. RUBIN ORDERED/ISSUED. (02/26/15).

63

Office of Enforcement and Removal Operations

**U.S. Department of Homeland Security**
34 Civic Center Plaza, Room 3090
Santa Ana, CA 92701



## U.S. Immigration and Customs Enforcement

ALBRECHT, Nicole
c/o Santa Ana City Jail
62 Civic Center Plaza
Santa Ana, CA  92701

FEB 20 2015

Re:  Proof of detention letter

Ms. Albrecht,

Our records indicate the following period(s) of incarceration.

| BOOKING # | BOOKING DATE | RELEASE DATE |
|---|---|---|
| 1400003466 | 9/4/2014 | Presently Detained with ICE at the Santa Ana Jail. |

Sincerely,

D. Leon
Deportation Officer

64

**CH-109**     **Notice of Court Hearing**

Clerk stamps date here when form is filed.

(1) **Person Seeking Protection**

a. Your Full Name:
Nicole Albrecht

Your Lawyer *(if you have one for this case):*
Name: _____ State Bar No.: _____
Firm Name: _____

**FILED**
Superior Court of California
County of Los Angeles

**AUG 25 2014**

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Gerardo Villarreal

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.):*

Address: 17153 Palisades Circle

City: Pacific Palisades     State: CA   Zip: 90272

Telephone: _____ Fax: _____

E-Mail Address: _____

Fill in court name and street address:

**Superior Court of California, County of**
**Los Angeles**
1725 Main Street
Santa Monica, CA 90401

Court fills in case number when form is filed.

**Case Number:** SS024862

(2) **Person From Whom Protection Is Sought**

Full Name: Alexandra Elizabeth Paul

*The court will complete the rest of this form.*

(3) **Notice of Hearing**

A court hearing is scheduled on the request for restraining orders against the person in (2):

| Hearing Date | Date: 09/16/14   Time: 8:30 Am | Name and address of court if different from above: |
|---|---|---|
| | Dept.: C   Room: 115 | |

(4) **Temporary Restraining Orders** *(Any orders granted are on Form CH-110, served with this notice.)*

a. Temporary Restraining Orders for personal conduct and stay-away orders as requested in Form CH-100, *Request for Civil Harassment Restraining Orders,* are *(check only one box below):*

(1) ☐ All **GRANTED** until the court hearing.

(2) ☐ All **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

(3) ☑ Partly **GRANTED** and partly **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2014, Mandatory Form
Code of Civil Procedure, § 527.6
Approved by DOJ

**Notice of Court Hearing**
**(Civil Harassment Prevention)**

CH-109, Page 1 of 3

65

Case Number:
**SS024862**

b. Reasons for denial of some or all of those personal conduct and stay-away orders as requested in Form CH-100, *Request for Civil Harassment Restraining Orders,* are:

(1) ☐ The facts as stated in Form CH-100 do not sufficiently show acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed, or harassed the person in ① and caused substantial emotional distress.

(2) ☑ Other *(specify):* ☐ As set forth on Attachment 4b.

STAY AWAY ORDER
ALREADY IN EFFECT

~~Filing Fee Required - See CCP 527.6 (w)~~

⑤ **Service of Documents by The Person in ①**

**At least** ☑ **five** ☐ _____ **days before the hearing,** someone age 18 or older—**not you or anyone to be protected**—must personally give (serve) a court file-stamped copy of this Form CH-109, to the person in ② along with a copy of all the forms indicated below: *Notice of Court Hearing,*

a. CH-100, *Request for Civil Harassment Restraining Orders* (file-stamped)
b. ☑ CH-110, *Temporary Restraining Order* (file-stamped) **IF GRANTED**
c. CH-120, *Response to Request for Civil Harassment Restraining Orders* (blank form)
d. CH-120-INFO, *How Can I Respond to a Request for Civil Harassment Restraining Orders?*
e. CH-250, *Proof of Service of Response by Mail* (blank form)
f. ☐ Other *(specify):* _____

Date: 8/25/14

*Judicial Officer*

Matthew C. St. George
Commissioner

▐ **To the Person in ①:** ▐

- The court cannot make the restraining orders after the court hearing unless the person in ② has been personally given (served) a copy of your request and any temporary orders. To show that the person in ② has been served, the person who served the forms must fill out a proof of service form. Form CH-200, *Proof of Personal Service,* may be used.
- For information about service, read Form CH-200-INFO, *What Is "Proof of Personal Service"?*
- If you are unable to serve the person in ② in time, you may ask for more time to serve the documents. Use Form CH-115, *Request to Continue Court Hearing and to Reissue Temporary Restraining Order.*

66

Case Number: **SS024862**

---

**To the Person in ❷**

- If you want to respond to the request for orders in writing, file Form CH-120, *Response to Request for Civil Harassment Restraining Orders,* and have someone age 18 or older—**not you or anyone to be protected**—mail it to the person in ①.

- The person who mailed the form must fill out a proof of service form. Form CH-250, *Proof of Service of Response by Mail,* may be used. File the completed form with the court before the hearing and bring a copy with you to the court hearing.

- Whether or not you respond in writing, go to the hearing if you want the judge to hear from you before making an order. You may tell the judge why you agree or disagree with the orders requested.

- You may bring witnesses and other evidence.

- At the hearing, the judge may make restraining orders against you that could last up to five years and may order you to turn in to law enforcement, or sell to or store with a licensed gun dealer, any firearms that you own or possess.



**Request for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons with Disabilities and Response* (Form MC-410). (Civ. Code, § 54.8.)

*(Clerk will fill out this part.)*

**—Clerk's Certificate—**

I certify that this *Notice of Court Hearing* is a true and correct copy of the original on file in the court.

Date: _____ AUG 25 2014 _____

Clerk, by _____ , Deputy

**G. VILLARREAL**

---

**Notice of Court Hearing**
**(Civil Harassment Prevention)**

CH-109, Page 3 of 3



**CH-110**  **Temporary Restraining Order**

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

**AUG 25 2014**

Sherri R. Carter, Executive Officer/Clerk

By _G. Villarreal_ Deputy
   Gerardo Villarreal

*Person in* ① *must complete items* ①, ②, *and* ③ *only.*

① **Protected Person**
   a. Your Full Name: Nicole Albrecht

   Your Lawyer *(if you have one for this case)*:
   Name: _____  State Bar No.: _____

   Firm Name: _____

   b. Your Address *(If you have a lawyer, give your lawyer's information.*
      *If you do not have a lawyer and want to keep your home address*
      *private, you may give a different mailing address instead. You do not*
      *have to give telephone, fax, or e-mail.):*
      Address: 17153 Palisades Circle
      City: Pacific Palisades    State: CA   Zip: 90272
      Telephone: _____  Fax: _____
      E-Mail Address: _____

Fill in court name and street address:
**Superior Court of California, County of**
**Los Angeles**
1725 Main St
Santa Monica, CA 90401

*Court fills in case number when form is filed.*

**Case Number:**  SS024862

② **Restrained Person**
   Full Name: Alexandra Elizabeth Paul
   Description:

| | |
|---|---|
| Sex: ☐ M  ☒ F  Height: 5'10   Weight: 125 | Date of Birth: 07/29/63 |
| Hair Color: brown    Eye Color: hazel    Age: 51   Race: caucasian | |
| Home Address *(if known)*: 1411 Palisades Drive | |
| City: Pacific Palisades | State: CA   Zip: 90272 |
| Relationship to Protected Person: neighbor | |

③ ☒ **Additional Protected Persons**
   In addition to the person named in ①, the following family or household members of that person are protected by the temporary orders indicated below:

| Full Name | Sex | Age | Household Member? | Relation to Protected Person |
|---|---|---|---|---|
| Jaxson Albrecht | M | 11 | ☒ Yes ☐ No | brother |
| Anni Bruhn | F | 78 | ☒ Yes ☐ No | grandmother |
| Petra Albrecht | F | 53 | ☒ Yes ☐ No | mother |

   ☐ *Check here if there are additional persons. List them on an attached sheet of paper and write "Attachment 3—*
   *Additional Protected Persons" as a title. You may use Form MC-025, Attachment.*

   *The court will complete the rest of this form.*

④ **Expiration Date**
   *This Order expires at the end of the hearing scheduled for the date and time below:*

| Date: 09/16/14 | Time: 8:30 | ☒ a.m. ☒ p.m. |
|---|---|---|

   ⬛ This is a Court Order. ⬛

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2014, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9
Approved by DOJ

**Temporary Restraining Order (CLETS-TCH)**
**(Civil Harassment Prevention)**

CH-110, Page 1 of 5


68

Case Number: **SS024862**

## To the Person in ❷ :

**The court has granted the temporary orders checked as granted below. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.**

### ⑤ Personal Conduct Orders

☐ Not Requested    ☐ Denied Until the Hearing    ☑ **Granted as Follows:**

a. You must **not** do the following things to the person named in ① ☐ and to the other protected persons listed in ③ :

(1) ☑ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

(2) ☑ Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.

(3) ☐ Take any action to obtain the person's address or location. If this item (3) is not checked, the court has found good cause not to make this order.

(4) ☐ Other *(specify):*

☐ Other personal conduct orders are attached at the end of this Order on Attachment 5a(4).

_____

_____

b. Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order. However, you may have your papers served by mail on the person in ①.

### ⑥ Stay-Away Order

☐ **Not Requested**    ☑ **Denied Until the Hearing**    ☐ Granted as Follows:

a. You must stay at least _____ yards away from *(check all that apply):*

(1) ☐ The person in ①
(2) ☐ Each person in ③
(3) ☐ The home of the person in ①
(4) ☐ The job or workplace of the person in ①
(5) ☐ The school of the person in ①
(6) ☐ The school of the children of the person in ①

(7) ☐ The place of child care of the children of the person in ①
(8) ☐ The vehicle of the person in ①
(9) ☐ Other *(specify):*

_____

_____

_____

b. This stay-away order does not prevent you from going to or from your home or place of employment.

### ⑦ No Guns or Other Firearms and Ammunition

a. You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get guns, other firearms, or ammunition.

b. You must:

(1) Sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms in your immediate possession or control. This must be done within 24 hours of being served with this Order.

## This is a Court Order.

Revised July 1, 2014    **Temporary Restraining Order (CLETS-TCH)**    CH-110, Page 2 of 5
**(Civil Harassment Prevention)** ➡

69

Case Number: SS024862

(2) File a receipt with the court within 48 hours of receiving this Order that proves that your guns or firearms have been turned in, sold, or stored. *(You may use Form CH-800, Proof of Firearms Turned In, Sold, or Stored for the receipt.)*

c. ☐ The court has received information that you own or possess a firearm.

**⑧ Other Orders**

☒ **Not Requested**    ☒ **Denied Until the Hearing**    ☐ **Granted as Follows** *(specify):*

_____
_____
_____
_____
_____
_____

☐ Additional orders are attached at the end of this Order on Attachment 8.

**To the Person in ① :**

**⑨ Mandatory Entry of Order Into CARPOS Through CLETS**

This Order must be entered into the California Restraining and Protective Order System (CARPOS) through the California Law Enforcement Telecommunications System (CLETS). *(Check one):*

a. ☒ The clerk will enter this Order and its proof-of-service form into CARPOS.

b. ☒ The clerk will transmit this Order and its proof-of-service form to a law enforcement agency to be entered into CARPOS.

c. ☒ By the close of business on the date that this Order is made, the person in ① or his or her lawyer should deliver a copy of the Order and its proof-of-service form to the law enforcement agency listed below to enter into CARPOS:

Name of Law Enforcement Agency          Address *(City, State, Zip)*

SHERIFF'S DEPARTMENT
25 MAIN STREET RM 11Y
NTA MONICA, CA 90401

☐ Additional law enforcement agencies are listed at the end of this Order on Attachment 9.

**⑩ No Fee to Serve (Notify) Restrained Person**    ☐ **Ordered**    ☒ **Not Ordered**

The sheriff or marshal will serve this Order without charge because:

a. ☐ The Order is based on unlawful violence, a credible threat of violence, or stalking.

b. ☐ The person in ① is entitled to a fee waiver.

**⑪** Number of pages attached to this Order, if any: _____

Date: 8/25/14

_____
Judicial Officer

Matthew C. St. George
Commissioner

**This is a Court Order.**

70

Case Number: **SS024862**

## Warnings and Notices to the Restrained Person in ❷

### You Cannot Have Guns or Firearms

You cannot own, have, possess, buy or try to buy, receive or try to receive, or otherwise get guns, other firearms, or ammunition while this Order is in effect. If you do, you can go to jail and pay a $1,000 fine. You must sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms that you have or control as stated in item ⑦ above. The court will require you to prove that you did so.

### Notice Regarding Nonappearance at Hearing and Service of Order

If you have been personally served with this Temporary Restraining Order and Form CH-109, *Notice of Court Hearing*, but you do not appear at the hearing either in person or by a lawyer, and a restraining order that is the same as this Temporary Restraining Order except for the expiration date is issued at the hearing, a copy of the order will be served on you by mail at the address in item ②.

If this address is not correct or you wish to verify that the Temporary Restraining Order was converted into a restraining order at the hearing without substantive change, or to find out the duration of the order, contact the clerk of the court.

### After You Have Been Served With a Restraining Order

- Obey all the orders.
- Read Form CH-120-INFO, *How Can I Respond to a Request for Civil Harassment Restraining Orders?*, to learn how to respond to this Order.
- If you want to respond, fill out Form CH-120, *Response to Request for Civil Harassment Restraining Orders*, and file it with the court clerk. You do not have to pay any fee to file your response if the Request claims that you inflicted or threatened violence against or stalked the person in ①.
- You must have Form CH-120 served by mail on the person in ① or that person's attorney. You cannot do this yourself. The person who does the mailing should complete and sign Form CH-250, *Proof of Service of Response by Mail*. File the completed proof of service with the court clerk before the hearing date or bring it with you to the hearing.
- In addition to the response, you may file and have declarations served, signed by you and other persons who have personal knowledge of the facts. You may use Form MC-030, *Declaration*, for this purpose. It is available from the clerk's office at the court shown on page 1 of this form or at *www.courts.ca.gov/forms*. If you do not know how to prepare a declaration, you should see a lawyer.
- Whether or not you file a response, you should attend the hearing. If you have any witnesses, they must also go to the hearing.
- At the hearing, the judge can make restraining orders against you that last for up to five years. Tell the judge why you disagree with the orders requested.

## Instructions for Law Enforcement

### Enforcing the Restraining Order

This order is enforceable by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Restraining and Protective Orders System (CARPOS). If the law enforcement agency has not received proof of service on the restrained person, the agency must advise the restrained person of the terms of the order and then must enforce it. Violations of this order are subject to criminal penalties.

## This is a Court Order.

Case Number: **SS024862**

## Start Date and End Date of Orders
This order *starts* on the date next to the judge's signature on page 3. The order *ends* on the expiration date in item ④ on page 1.

## Arrest Required if Order is Violated
If an officer has probable cause to believe that the restrained person had notice of the order and has disobeyed the order, the officer must arrest the restrained person. (Pen. Code, §§ 836(c)(1), 13701(b).) A violation of the order may be a violation of Penal Code section 166 or 273.6. Agencies are encouraged to enter violation messages into CARPOS.

## Notice/Proof of Service
The law enforcement agency must first determine if the restrained person had notice of the order. Consider the restrained person "served" (given notice) if (Pen. Code, § 836(c)(2)):
- The officer sees a copy of the Proof of Service or confirms that the Proof of Service is on file; or
- The restrained person was informed of the order by an officer.

An officer can obtain information about the contents of the order and proof of service in CARPOS. If proof of service on the restrained person cannot be verified, the agency must advise the restrained person of the terms of the order and then enforce it.

## If the Protected Person Contacts the Restrained Person
Even if the protected person invites or consents to contact with the restrained person, this order remains in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The order can be changed only by another court order. (Pen. Code, § 13710(b).)

## Conflicting Orders—Priorities for Enforcement
**If more than one restraining order has been issued, the orders must be enforced according to the following priorities** (see Pen. Code, § 136.2, Fam. Code, §§ 6383(h)(2), 6405(b)):
1. *EPO:* If one of the orders is an *Emergency Protective Order* (form EPO-001) and is more restrictive than other restraining or protective orders, it has precedence in enforcement over all other orders.
2. *No Contact Order:* If there is no EPO, a no-contact order that is included in a restraining or protective order has precedence over any other restraining or protective order.
3. *Criminal Order:* If none of the orders includes a no contact order, a domestic violence protective order issued in a criminal case takes precedence in enforcement over any conflicting civil court order. Any nonconflicting terms of the civil restraining order remain in effect and enforceable.
4. *Family, Juvenile, or Civil Order:* If more than one family, juvenile, or other civil restraining or protective order has been issued, the one that was issued last must be enforced.

*(Clerk will fill out this part.)*
**—Clerk's Certificate—**
I certify that this *Temporary Restraining Order* is a true and correct copy of the original on file in the court.

Date: AUG 25 2014    Clerk, by _____ , Deputy

**G. VILLARREAL**

This is a Court Order.

72

**CH-100**

## Request for Civil Harassment Restraining Orders

Read *Can a Civil Harassment Restraining Order Help Me? (Form CH-100-INFO)* before completing this form. Also fill out *Confidential CLETS Information (Form CLETS-001)* with as much information as you know.

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

**AUG 25 2014**

Sherri R. Carter, Executive Officer/Clerk

By _Gerardo Villarreal_ Deputy
Gerardo Villarreal

(1) **Person Seeking Protection**

a. Your Full Name:
Nicole Albrecht                    Age: 31

Your Lawyer *(if you have one for this case)*:
Name:                              State Bar No.:
Firm Name:

Fill in court name and street address:

**Superior Court of California, County of**
Los Angeles
1725 Main Street
Santa Monica, CA 90401

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.):*

Address: 17153 Palisades Circle

City: Pacific Palisades      State: CA   Zip: 90272

Telephone:                   Fax:

E-Mail Address:

Court fills in case number when form is filed.

Case Number: **SS024862**

(2) **Person From Whom Protection is Sought**

Full Name: Alexandra Elizabeth Paul                Age: 51

Address *(if known):* 1411 Palisades Drive

City: Pacific Palisades                State: CA   Zip: 90272

(3) **Additional Protected Persons**

a. Are you asking for protection for any other family or household members? ☒ Yes ☐ No  *If yes, list them:*

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| Jayson Albrecht | M | 11 | ☒ Yes ☐ No | brother |
| Anni Bruhn | F | 78 | ☒ Yes ☐ No | grandmother |
| Petra Albrecht | F | 53 | ☒ Yes ☐ No | mother |
|  |  |  | ☐ Yes ☐ No |  |

☐ Check here if there are more persons. Attach a sheet of paper and write "Attachment 3a—Additional Protected Persons" for a title. You may use Form MC-025, Attachment.

b. Why do these people need protection? *(Explain below):*
☐ Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 3b—Why Others Need Protection" for a title.

Alexandra Paul's actions are erratic, unpredictable and dangerous, and we fear for our lives.

**This is not a Court Order.**

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2014, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

CH-100, Page 1 of 6

73

Case Number:

**(4) Relationship of Parties**

How do you know the person in **(2)**? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 4—Relationship of Parties" for a title.*

neighbor

**(5) Venue**

Why are you filing in this county? *(Check all that apply):*

a. ☑ The person in **(2)** lives in this county.
b. ☑ I was harassed by the person in **(2)** in this county.
c. ☐ Other *(specify):* _____

**(6) Other Court Cases**

a. Have you or any of the persons named in **(3)** been involved in another court case with the person in **(2)**?

☑ Yes   ☐ No   *If yes, check each kind of case and indicate where and when each was filed:*

| | Kind of Case | Filed in *(County/State)* | Year Filed | Case Number *(if known)* |
|---|---|---|---|---|
| (1) | ☑ Civil Harassment | LOS ANGELES | 2013 | SS 023 906 4WA00723 |
| (2) | ☐ Domestic Violence | | | |
| (3) | ☐ Divorce, Nullity, Legal Separation | | | |
| (4) | ☐ Paternity, Parentage, Child Custody | | | |
| (5) | ☐ Elder or Dependent Adult Abuse | | | |
| (6) | ☐ Eviction | | | |
| (7) | ☐ Guardianship | | | |
| (8) | ☐ Workplace Violence | | | |
| (9) | ☐ Small Claims | | | |
| (10) | ☐ Criminal | | | |
| (11) | ☐ Other *(specify):* | | | |

b. Are there now any protective or restraining orders in effect relating to you or any of the persons in **(3)** and the person in **(2)**? ☐ No   ☐ Yes   *If yes, attach a copy if you have one.*

**(7) Description of Harassment**

Harassment means violence or threats of violence against you, or a course of conduct that seriously alarmed, annoyed, or harassed you and caused you substantial emotional distress. A course of conduct is more than one act.

a. Tell the court about the last time the person in **(2)** harassed you.

(1) When did it happen? *(provide date or estimated date):* 08/23/2014

(2) Who else was there?
Richard Wheeler, Anni Bruhn, Jayson Albrecht

_____

_____

**This is not a Court Order.**

Revised July 1, 2014

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

CH-100, Page 2 of 6

74

| Case Number: |
| --- |

(3) How did the person in ② harass you? *(Explain below):*

☒ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7a(3)—Describe Harassment" for a title.*

please see attachment

(4) Did the person in ② use or threaten to use a gun or any other weapon?

☐ Yes  ☒ No  *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7a(4)—Use of Weapons" for a title.*

(5) Were you harmed or injured because of the harassment?

☒ Yes  ☐ No  *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7a(5)—Harm or Injury" for a title.*

Me and my passengers were mentally distraught and terrified

(6) Did the police come? ☐ Yes ☒ No

If yes, did they give you or the person in ② an Emergency Protective Order? ☐ Yes ☐ No

If yes, the order protects *(check all that apply):*

a. ☐ Me  b. ☐ The person in ②  c. ☐ The persons in ③

*Attach a copy of the order if you have one.*

b. Has the person in ② harassed you at other times?

☒ Yes  ☐ No  *(If yes, describe prior incidents and provide dates of harassment below):*

☒ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7b—Previous Harassment" for a title.*

please see attachment

**This is not a Court Order.**

75

Case Number:

## Check the orders you want.

(8) ☑ **Personal Conduct Orders**

I ask the court to order the person in ② **not** to do any of the following things to me or to any person to be protected listed in ③:

a. ☑ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

b. ☑ Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.

c. ☐ Other *specify):*

    ☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 8c---Other Personal Conduct Orders," for a title.*

_____

_____

_____

*The person in ② will be ordered not to take any action to get the addresses or locations of any protected person unless the court finds good cause not to make the order.*

(9) ☑ **Stay-Away Orders**

a. I ask the court to order the person in ② to stay at least _100_ yards away from *(check all that apply):*

  (1) ☑ Me               (8) ☑ My vehicle

  (2) ☑ The other persons listed in ③   (9) ☐ Other *(specify):*

  (3) ☑ My home                     _____

  (4) ☑ My job or workplace           _____

  (5) ☑ My school                 _____

  (6) ☑ My children's school          _____

  (7) ☐ My children's place of child care   _____

b. If the court orders the person in ② to stay away from all the places listed above, will he or she still be able to get to his or her home, school, or job? ☑ Yes ☐ No *(If no, explain below):*

    ☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 9b---Stay-Away Orders," for a title.*

_____

_____

(10) **Guns or Other Firearms and Ammunition**

Does the person in ② own or possess any guns or other firearms? ☐ Yes ☐ No ☑ I don't know

*If the judge grants a protective order, the person in ② will be prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a gun, other firearm, and ammunition while the protective order is in effect. The person in ② will also be ordered to turn in to law enforcement, or sell to or store with a licensed gun dealer, any guns or firearms within his or her immediate possession or control.*

This is not a Court Order.

76

Case Number: [_____]

## (11) Immediate Orders

Do you want the court to make any of these orders now that will last until the hearing without notice to the person in ② ? ☒ Yes ☐ No   *(If you answered yes, explain why below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 11—Immediate Orders" for a title.*

*Her behavior is erratic, unpredictable and dangerous and me and my family fear for our lives.*

## (12) ☐ Request to Give Less Than Five Days' Notice

*You must have your papers personally served on the person in ② at least five days before the hearing, unless the court orders a shorter time for service. (Form CH-200-INFO explains What Is "Proof of Personal Service"? Form CH-200, Proof of Personal Service, may be used to show the court that the papers have been served.)*

If you want there to be fewer than five days between service and the hearing, explain why below:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 12—Request to Give Less Than Five-Days Notice" for a title.*

## (13) ☒ No Fee for Filing or Service

a. ☒ There should be no filing fee because the person in ② has used or threatened to use violence against me, has stalked me, or has acted or spoken in some other way that makes me reasonably fear violence.

b. ☒ The sheriff or marshal should serve (notify) the person in ② about the orders for free because my request for orders is based on unlawful violence, a credible threat of violence, or stalking.

c. ☐ There should be no filing fee and the sheriff or marshal should serve the person in ② for free because I am entitled to a fee waiver. *(You must complete and file Form FW-001, Application for Waiver of Court Fees and Costs .)*

## (14) ☐ Lawyer's Fees and Costs

I ask the court to order payment of my:   a. ☐ Lawyer's fees   b. ☐ Court costs

The amounts requested are:

| Item | Amount | Item | Amount |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper or Form MC-025 and write "Attachment 14—Lawyer's Fees and Costs" for a title.*

**This is not a Court Order.**

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

CH-100, Page 5 of 6



77

Case Number: SS024862

(15) ☐ **Additional Orders Requested**

I ask the court to make the following additional orders *(specify):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 15—Additional Orders Requested," for a title.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

(16) Number of pages attached to this form, if any: __5__

Date: _____

_____
*Lawyer's name (if any)*

▶ _____
*Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: 08/23/2014

Nicole Albrecht
*Type or print your name*

▶ _____
*Sign your name*

**This is not a Court Order.**





78

## Attachment to CH -100

SS024862

### Attachment 7a- Describe Harassment:

Alexandra Paul baited me, trying to get me to run into the back of her car, in order to prosecute me further, or simply trying to run me off the road.

At 3:15 pm me and three other passengers were on our way home driving up Palisades Drive in the left lane, Alexandra Paul driving in her white EV Toyota in the right lane slowed down all of a sudden and for no reason abruptly changed lanes in front of us and came over in our left lane, and there were no other cars around us. Frightened, I moved into the right hand lane and tried to pass her, she then came purposefully half way into our right lane and tried to aggressively force us off the road!
As she was ahead of us, I then hit the breaks and maneuvered my car into the left lane again and was finally able to pass her. Then she switched lanes again and got behind us in the left lane again. I then switched into the right lane and turned right onto Palisades Circle and went straight home. Everyone in my vehicle, including my 78-year-old grandmother was scared to death that we would go off the road and wreck the car.
I immediately contacted LAPD, Officer Brenna and Sgt. Rabbett, and they informed me that they no longer handle Road Rage cases and I would need to file a Restraining Order at Court.

### Attachment 7b previous Harassment:

Because Alexandra Paul is a protected person, having a restraining order against, me she has been able taunt, harass and terrorize me without fear of prosecution. I have filed numerous complaints within the last few weeks with my public defender Ashley Price, and it's getting out of hand as I fear for my safety and those around me. Here is a list of the latest incidents where she is baiting and forcing me to have unwanted contact with her.

She is constantly stalking me, showing up in the neighborhood and matching my schedule at times when I walk and exercise throughout the neighborhood, and continuously staring me down in a creepy manner.

### August 14,2014 11:20 am
Ms. Paul followed me to Palisades Village from the neighborhood and then purposefully walked by the garden café where my friend and I were sitting and came close to me within 2ft.

### August 19,2014:
After passing me with her car on the street Ms. Paul pulled over with her car and tried to have me come closer to her car, I kept walking.

### August 20,2014 7:20 pm
Ms. Paul stopped again in her vehicle on Palisades Dr. while a friend and I were on our hike, stared me down and finally made gestures and winked and motioned me over to her car, we ignored this and continued our hike.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, Bar number, and address):

Nicole Albrecht
17153 Palisades Circle
Pacific Palisades, CA 90272

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FOR COURT USE ONLY

FILED
Superior Court of California
County of Los Angeles

AUG 25 2014

Sherri R. Carter, Executive Officer/Clerk
By _G. Villarreal_ Deputy
    Gerardo Villarreal

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME:

PLAINTIFF/PETITIONER: Nicole Albrecht

DEFENDANT/RESPONDENT: Alexandra Elizabeth Paul

| DECLARATION | CASE NUMBER: SS024862 |
|---|---|

On August 23, 2014,

I was a passenger along with Nicole Albrecht, Jayson Albrecht, and their grandmother Anni Bruhn driving up Palisades Drive heading toward their residence. As we were in the left lane and tried to pass a white Toyota SUV that happened to be Alexandra Paul's, she slowed down abruptly and for no reason changed lanes in front of us and jerked her car over into our left lane, and there were no other cars around us. Frightened, Nicole moved into the right hand lane and tried to pass her, and then Ms. Paul quickly came half way into our right hand lane and tried to run us off the road!

As she was slightly ahead of us, Nicole then hit the breaks and moved our car into the left lane again and we were finally able to pass her. Then Ms. Paul switched lanes again and got behind us in the left lane again. Nicole then switched into the right lane and was able to turn right onto Palisades Circle and we went directly to their residence. Everyone in the the vehicle was scared to death, and we felt like we just narrowly escaped wrecking off the side of the road.

Richard Wheeler

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/23/2014

Richard Wheeler
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other (Specify):

Form Approved for Optional Use
Judicial Council of California
MC-030 [Rev. January 1, 2006]

DECLARATION

Page 1 of 1

80

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Nicole Albrecht
17153 Palisades Circle
Pacific Palisades, CA 90272

TELEPHONE NO.:          FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME:

**FILED**
Superior Court of California
County of Los Angeles

AUG 25 2014

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Gerardo Villarreal

PLAINTIFF/PETITIONER: Nicole Albrecht

DEFENDANT/RESPONDENT: Alexandra Elizabeth Paul

| DECLARATION | CASE NUMBER: SS024862 |
|---|---|

My grandkids Nicole Albrecht, Jayson Albrecht and friend Richard Wheeler were driving home on Palisades Drive on August 23, 2014.

When we were about to pass a car that was driven by Alexandra Paul, she pulled into our left lane ahead of us. My granddaughter then pulled into the right lane, Alexandra Paul immediately came into our lane and tried to drive us off the road. Nicole slowed and drove back over to the left lane again and we were able to pass. Ms. Paul followed us up until we turned into Palisades Circle to our residence.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/23/2014

Anni Bruhn
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☑ Other *(Specify):*

SS03486

**CH-130** | **Civil Harassment Restraining Order After Hearing**

*Person in* ① *must complete items* ①, ②, *and* ③ *only.*

① **Protected Person**

a. Your Full Name: Alexandra Paul
   Your Lawyer (if you have one for this case):
   Name: Sam Israels   State Bar No.: 236985
   Firm Name: Cron Israels & Stark

b. Your Address (if you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.):
   Address: 1541 Ocean Ave   #200
   City: Santa Monica   State: CA   Zip: 90401
   Telephone: 310-451-9888   Fax: 310-451-2473
   E-Mail Address: sam@cronisraelslaw.com

② **Restrained Person**

Full Name: Nicole Albrecht
Description:

Sex: ☐ M ☒ F  Height: 5'1"  Weight: 150  Date of Birth: 8/25/82
Hair Color: Brown  Eye Color: Brown  Age: 31  Race: W
Home Address (if known): _____
City: _____  State: _____  Zip: _____
Relationship to Protected Person: None

③ ☑ **Additional Protected Persons**

In addition to the person named in ①, the following family or household members of that person are protected by the orders indicated below:

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| Ian Murray | M | | ☒ Yes ☐ No | Spouse |
| | | | ☐ Yes ☐ No | |

☐ Check here if there are additional protected persons. List them on an attached sheet of paper and write, "Attachment 3—Additional Protected Persons" as a title. You may use Form MC-025, Attachment.

④ **Expiration Date**

This Order, except for any award of lawyer's fees, expires at:

Time: 11/18/2016 ☐ a.m. ☐ p.m. or ☑ midnight on (date): _____

If no expiration date is written here, this Order expires three years from the date of issuance.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2012, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9
Approved by DOJ

**Civil Harassment Restraining Order After Hearing (CLETS-CHO)**
(Civil Harassment Prevention)

CH-130, Page 1 of 5
→

*Clerk stamps date here when form is filed.*

**FILED**
Superior Court of California
County of Los Angeles

**NOV 18 2013**

Sheri R. Carter, Executive Officer/Clerk
By: E. Goldstein, Deputy
    Ellen Goldstein

Fill in court name and street address:
Superior Court of California, County of
**SUPERIOR COURT OF CALIFORNIA
WEST DISTRICT
1725 MAIN STREET
SANTA MONICA, CA 90401**

Fill in case number:
Case Number:
SS023906

82

**Case Number:** JS07390c

**(5) Hearing**

a. There was a hearing on *(date):* 11/18/12 at *(time):* 1:30 AM in Dept.: F Room: 115
   *(Name of judicial officer):* Laura Cowan _____ made the orders at the hearing.

b. These people were at the hearing:
   (1) ☒ The person in ① (3) ☒ The lawyer for the person in ① *(name):* Sam Israels
   (2) ☒ The person in ② (4) ☐ The lawyer for the person in ② *(name):* _____
   ☐ Additional persons present are listed at the end of this Order on Attachment 5.

c. ☐ The hearing is continued. The parties must return to court on *(date):* _____ at *(time):* _____

### To the Person in ② :

**The court has granted the orders checked below. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.**

**(6) ☒ Personal Conduct Orders**

a. You must not do the following things to the person named in ①
   ☒ and to the other protected persons listed in ③ :

   (1) ☒ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

   (2) ☒ Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.

   (3) ☒ Take any action to obtain the person's address or location. If this item is not checked, the court has found good cause not to make this order.

   (4) ☐ Other *(specify):*
        ☐ Other personal conduct orders are attached at the end of this Order on Attachment 6a(4).

b. Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order.

**(7) ☒ Stay-Away Orders**

a. You must stay at least ___100___ yards away from *(check all that apply):*

   (1) ☒ The person in ①
   (2) ☒ Each person in ③
   (3) ☒ The home of the person in ①
   (4) ☒ The job or workplace of the person in ①
   (5) ☐ The school of the children of the person in ①

   (6) ☐ The place of child care of the children of the person in ①
   (7) ☒ The vehicle of the person in ①
   (8) ☐ Other *(specify):* _____
        _____
        _____
        _____

b. This stay-away order does not prevent you from going to or from your home or place of employment.

### This is a Court Order.

83

**CASE SCREENING FAC___(S)** | REASON FOR

ADW W/VEH

☐ SUSPECT/VEHICLE NOT SEEN
☒ PRINTS OR OTHER EVIDENCE NOT PRESENT
☒ MO NOT DISTINCT
☒ PROPERTY LOSS LESS THAN $5,000
☒ NO SERIOUS INJURY TO VICTIM
☒ ONLY ONE VICTIM INVOLVED

**VICTIM** — LAST NAME, FIRST, MIDDLE (FIRM IF BUS.)
ALBRECHT, NICOLE F W 5'9 125 32-8-25?
ADDRESS: 17153 PALISADE CIR, LA, CA 7027L (310) 359-3042

E-MAIL ADDRESS

**PREMISES** (SPECIFIC TYPE) ☐ ATM
STREET

DR. LIC. NO. (IF NONE, OTHER ID #) | FOREIGN LANGUAGE SPOKEN | OCCUPATION: EVENT PROMO MGR

**ENTRY** — 459/BFV POINT OF ENTRY | POINT OF EXIT | LOCATION OF OCCURRENCE: PALISADE DR - N/O SUNSET BL | RES. | BUS. | R.D. 822 | PRINTS BY PREL. INV.
☐ FRONT
☐ REAR | METHOD
☐ SIDE
☐ ROOF
☐ FLOOR | INSTRUMENT/TOOL USED
☐ OTHER

DATE & TIME OF OCCURRENCE: 8-23-14 1515 HRS | DATE & TIME REPORTED TO PD: 8-25-14, 1210

TYPE PROPERTY STOLEN/LOST/DAMAGED: NO PROP DAMAGE | STOLEN/LOST $ | RECOVERED $ | EST. DAMAGE ARSON / VAND.

VICT'S VEH (INVOLVED) YEAR, MAKE, MODEL, TYPE, SERIAL NO.: 2009 DODGE CALIBER (RED), LIC# 7BDX 211, W/A DETS

**MO** IF LONG FORM / LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECTS ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY REPORT AS NECESSARY. IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.

SUSP INTENTIONALLY MADE AN UNSAFE LANE CHANGE INTO VICT'S LANE WHILE DRIVING AND FORCED VICT TO TAKE EVASIVE MANEUVER TO AVOID T/C.

MANDATORY MARSY'S RIGHTS CARD PROVIDED TO THE VICTIM ☐ | HATE CRIME/INCIDENT ☐ | DOMESTIC VIOLENCE ☐

**REPORTING EMPLOYEE(S)** | INITIAL'S, LAST NAME R. KIM #31000 | SERIAL NO. | DIV/DETAIL: WTD/DESK | PERSON REPORTING | SIGNATURE | OR RECEIVED BY PHONE ☐

NOTE: IF SHORT FORM AND VICTIM/PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION.

---

## THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION

SS024862

KEEP THIS REPORT FOR REFERENCE. INSTRUCCIONES EN ESPANOL AL REVERSO.

*Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property, in a manner that is cost-effective to you, the taxpayer. Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims. A detective will not routinely contact you, unless the detective requires additional information.*

**TO REPORT ADDITIONAL INFORMATION:** If you have specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number _____. If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

**COPY OF REPORT:** If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price. Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030. Include a copy of this report or the following information with your request: 1) Name and address of victims; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

**DR NUMBER:** If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay. There is no charge for this service.

**CREDIT CARDS/CHECKS:** Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

**HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:**
* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

**VICTIM-WITNESS ASSISTANCE PROGRAM:** The Los Angeles City and County Victim-Witness Assistance Program (VWAP) can help to determine if you qualify for Victim of Violent Crime compensation. If you qualify, they will assist with filling your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you. Their staff may also assist you with other problems created by the crime.

To find the program location nearest to you, call the Victim-Witness Assistance Program at the Los Angeles City Attorney's Office (213) 485-6976, or the Los Angeles County District Attorney's Office (213) 974-7499.

**VICTIMS OF VIOLENT CRIME COMPENSATION:** Refer to paragraph at bottom of reverse side.

DEPARTAMENTO DE POLICIA
Case 8:15-cv-00451-GW-SS   Document OR LOS ANGELES/15   Page 98 of 151   Page ID #:1907
MEMORANDUM DE REPORTE PARA VICTIMAS

WEST TRAFFIC DIVI!

*Su caso será asignado a un detective para continuar la investigacion basandose en factores especificos obtenidos durante la investigacion inicial. Estudios han demonstrado que la presencia de estos factores pueden predecir si una investigación datallada podria resular en el arresto y prosecución del responsable o la recuperación de la propiedad, de una manera que es menos costosa para ud, el contribuyente. Disminuciones significantes de personal han hecho imposible a los detectives discutir personalmente cada caso con todas las victimas de crimenes. El detective no lo contactara rutinariamente a menos que requiera información adicional.*

**PARA REPORTAR INFORMACIÓN ADICIONAL:** Si tiene datos especificos que proveer que puedieran asistir en la investigacion de su caso, favor de comunicárse con el detective de Lunes a Viernes, entre las 8:00 y 9:30 de la mañana o entre las 2:30 y 4:00 de la tarde al teléfono _____ . Si el detective no se encuenta disponible cuando usted llame, favor de dejar un mensaje incluyendo un número de teléfono dónde se pueda comunicar con ud.

**COPIA DE REPORTE:** Si deséa comprar una copia del reporte completo, llame al (213) 486-8133 para obtener el precio actual. Remita un cheque o giro postal a Los Angeles Police Department Records and Identification Division, Box 30158, Los Angeles, California 90030. Incluya con su petición una copia de este reporte o la siguiente información: 1) Nombre y domicilio de la victima(s); 2) Tipo de reporte, y numero de DR, (si está listado en esta forma); 3) Fecha y lugar de los hechos. NOTA: Peticiones no adjuntas al pago apropiado no serán procesadas.

**Número DR:** Si no aparece en esta forma, el número DR se puede obtener escribiendo a Records and Identification Division dandoles la información necesaria para obtener una copia del reporte (véa el parrafo superior). Especifique que usted quiere el número DR. Será mandado sín tardanzas. No hay cargos por este servicio.

**TARJETA DE CREDITO/CHEQUES:** Notifique ímediatamente a su compañia de crédito o banco para evitar la posibilidad de hacerse sujeto a que álguien use sus cheques o tarjeta perdida o robada.

**COMO PUEDE AYUDAR EN LA INVESTIGACION DE SU CASO**

* Mantenga este memorándum como referencia.
* Si los bienes robados tienen número de serie, y no los tenía al llenar el reporte trate de localizarlos y llame al detective al número listado.
* Si describe perdidas adicionales, llene y mande la forma Supplemental Property Loss proveida por el empleado tomando el reporte.
* Reporte la recuperación de bienes de imediato.
* Reporte detalles addicional de imediato tal como un vecino informandole de actividad sospechosa en el tiempo en que ocurrió el delito.

**PROGRAMA DE ASISTENCIA A VICTIMAS Y TESTIGOS:** El programa de asistencia a víctimas y testigos de la ciudad y del condado de Los Angeles (VWAP) puede ayudar a determinar si usted califica para una compensación como víctima de un crimen violento. Si usted califica, le ayudarán a llenar su reclamo. Si usted es víctima o testigo de un crimen y estará asistiendo a la corte, ellos le explicarán el procedimiento de la corte. El personal del programa tembién le puede ayudar con otros problemas causados por el crimen.

Para encontrar el sitio del programa mas cercano a usted, llame al Programa de Asistencia a Víctimas y Testigos en la oficina del abogado de la Ciudad de Los Angeles (213) 485-6976 o a la oficina del Fiscal del Condado de Los Angeles (213) 974-7499.

**COMPENSACION PARA VICTIMAS DE CRIMENES VIOLENTOS:** Si usted ha sido víctima de un crimen violento y está herido a causa de ese crimen, usted puede calificar para un reembolso de parte del Estado por gastos médicos: pérdidas de sueldo o de mantenimiento, rehabilitación o reentrenamiento vocacional. Si la herida o la muerte resultó a causa de un accidente automovilístico, usted o su afectado también puede calificar si el chófer culpable fué somtido a uno de los siguientes cargos: conducir bajo la influencia del alcohol o de drogas; chocar y huir; usar el vehículo como arma, o huyendo del sitio de un delito violento.

Si usted pagó los gastos fúnebres de una víctima de un delito violento, puede ser reembolsado hasta $2,275 por los gastos. El Estado no reembolsará por daños ni pérdidas de propiedad. La ley (Sección 13959 y las subsiguientes secciones del Código Gubernamental) requiere que la víctima sea residente de California, que reporte el crimen y que coopere con la ley para recibir el reembolso. Usted tiene un año, a partir de la fecha del delito, para hacer su reclamo (este límite se puede extender si hay una causa que lo justifique).

Obtenga una solicitud como víctima de crimen violento llamando al Programa de Asistencia a Víctimas y Testigos: Abogado de la Ciudad (213) 485-6976, Abogado de Distrito (213) 974-7499. Tambien puede encontrar aplicaciones en las estaciones de la policía de Los Angeles.

**VICTIMS OF VIOLENT CRIME COMPENSATION:** If you are a victim of a violent crime and are injured as a result of the crime, you may be able to be repaid by the State for medical expenses, loss of wages or support, rehabilitation or job retraining. If injury or death was the result of an auto accident, you or your survivor may also qualify if the driver at fault was charged with one of the following: driving under the influence of alcohol or drugs; hit and run; using the vehicle as a weapon; or fleeing the scene of a violent crime.

If you paid the funeral/burial expenses for someone who was a victim of a violent crime, you may be repaid up to $2,275 for these expenses. Property loss or damage will not be repaid by the State. The law (California Government Code Section 13959 et seq.) requires that a victim must be a California resident, must report the crime, and must cooperate with law enforcement in order to receive repayment. You have one year from the date of the crime to file a claim (may be extended for good cause).

To Obtain a victim of violent crime application, you may call one of these Victim-Witness Assistance Programs: City Attorney - (213) 485-6976, District Attorney - (213) 974-7499. Copies of the application may also be obtained at any Los Angeles police station.

**GUARDE ESTE MEMORANDUM PARA REFERENCIA**

www.LAPDOnline.org

85

| CH-200 | Proof of Personal Service |
|---|---|

**Clerk stamps date here when form is filed.**

**(1) Person Seeking Protection**
Name: Nicole Albrecht

**(2) Person From Whom Protection Is Sought**
Name: Alexandra Elizabeth Paul

**(3) Notice to Server**
The server must:
- Be 18 years of age or older.
- Not be listed in items (1) or (3) of Form CH-100.
- Give a copy of all documents checked in (4) to the person in (2). (You cannot send them by mail.) Then complete and sign this form and give or mail it to the person in (1).

*Fill in court name and street address:*
**Superior Court of California, County of**
Los Angeles
1725 Main Street
Santa Monica, CA 90401

*Court fills in case number when form is filed.*
**Case Number:**
SS024862

## PROOF OF PERSONAL SERVICE

**(4)** I gave the person in (2) a copy of the forms checked below:

a. ☑ CH-109, *Notice of Court Hearing*
b. ☑ CH-110, *Temporary Restraining Order*
c. ☑ CH-100, *Request for Civil Harassment Restraining Orders*
d. ☑ CH-120, *Response to Request for Civil Harassment Restraining Orders* (blank form)
e. ☐ CH-120-INFO, *How Can I Respond to a Request for Civil Harassment Restraining Orders?*
f. ☐ CH-130, *Civil Harassment Restraining Order After Hearing*
g. ☒ CH-800, *Proof of Firearms Turned In, Sold, or Stored* (blank form)
h. ☐ Other *(specify):* _____

**(5)** I personally gave copies of the documents checked above to the person in (2):
a. On *(date):* 8/26/14    b. At *(time):* 7:45 ☑ a.m. ☐ p.m.
c. At this address: 1411 Palisades Dr.
City: Pacific Palisades    State: CA    Zip: 90272

**(6) Server's Information**
Name: Ashley Harrison
Address: 15516 Sunset Blvd. #301
City: Pacific Palisades    State: CA    Zip: 90272
Telephone: ~~310~~ N/A

*(If you are a registered process server):*
County of registration: _____    Registration number: _____

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: 8/26/14

▶ _(signature)_
*Server to sign here*

*Type or print server's name*

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2014, Optional Form
Code of Civil Procedure, § 527.6

**Proof of Personal Service**
**(Civil Harassment Prevention)**

CH-200, Page 1 of 1

For your protection and privacy, please press the Clear This Form button after you have printed the form.



**CH-109**    **Notice of Court Hearing**

*Clerk stamps date here when form is filed.*

**FILED**
Superior Court of California
County of Los Angeles

**MAY 01 2014**

Sherri R. Carter, Executive Officer/Clerk

By _____ Deputy
Gerardo Villarreal

**①  Person Seeking Protection**

  a.  Your Full Name:

   **NICOLE ALBRECHT**

   Your Lawyer *(if you have one for this case):*
   Name: _____ State Bar No.: _____
   Firm Name: _____

  b.  Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.)*
   Address: **17153 PALISADES CIRCLE**
   City: **PACIFIC PALISADES**  State: **CA**  Zip: **90272**
   Telephone: _____ Fax: _____
   E-Mail Address: _____

*Fill in court name and street address:*
**Superior Court of California, County of**
**LOS ANGELES**
**SANTA MONICA COURT**
**1725 MAIN STREET**
**SANTA MONICA, CA 90401**

*Court fills in case number when form is filed:*
**Case Number:**
**SS024429**

**②  Person From Whom Protection Is Sought**
  Full Name:  **IAN DOUGLAS MURRAY**

*The court will complete the rest of this form.*

**③  Notice of Hearing**

  A court hearing is scheduled on the request for restraining orders against the person in ② :

| Hearing Date | Date: 05/28/14  Time: 8:30 Am<br>Dept.: F  Room: 115 | Name and address of court if different from above:<br>_____<br>_____<br>_____ |
| --- | --- | --- |

**④  Temporary Restraining Orders** *(Any orders granted are on Form CH-110, served with this notice.)*

  a.  Temporary Restraining Orders for personal conduct and stay-away orders as requested in Form CH-100, *Request for Civil Harassment Restraining Orders,* are *(check only one box below):*

   (1) ☐ All **GRANTED** until the court hearing.

   (2) ☑ All **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

   (3) ☐ Partly **GRANTED** and partly **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

Judicial Council of California, www.courts.ca.gov
New January 1, 2012, Mandatory Form
Code of Civil Procedure, § 627.6
Approved by DOJ

**Notice of Court Hearing**
**(Civil Harassment Prevention)**

CH-109, Page 1 of 3
➡



Case Number:

SS024429

b. Reasons for denial of some or all of those personal conduct and stay-away orders as requested in Form CH-100, *Request for Civil Harassment Restraining Orders*, are:

(1) ☐ The facts as stated in Form CH-100 do not sufficiently show acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed, or harassed the person in ①
and caused substantial emotional distress.

(2) ☑ Other *(specify):* ☐ As set forth on Attachment 4b.

APPLICANT IS THE
RESTRAINED PERSON

Filing Fee Required - See CCP 527.6 (w)

⑤ **Service of Documents by The Person in ①**

**At least** ☑ **five** ☐ _____ **days before the hearing,** someone age 18 or older—**not you or anyone to be protected**—must personally give (serve) a court file-stamped copy of this Form CH-109, *Notice of Court Hearing,* to the person in ② along with a copy of all the forms indicated below:

a. CH-100, *Request for Civil Harassment Restraining Orders* (file-stamped)

b. ☐ CH-110, *Temporary Restraining Order* (file-stamped) **IF GRANTED**

c. CH-120, *Response to Request for Civil Harassment Restraining Orders* (blank form)

d. CH-120-INFO, *How Can I Respond to a Request for Civil Harassment Restraining Orders?*

e. CH-250, *Proof of Service of Response by Mail* (blank form)

f. ☐ Other *(specify):* _____

Date: 5/1/14 _____   *(signature)*

*Judicial Officer*

**To the Person in ①:**

- The court cannot make the restraining orders after the court hearing unless the person in ② has been personally given (served) a copy of your request and any temporary orders. To show that the person in ② has been served, the person who served the forms must fill out a proof of service form. Form CH-200, *Proof of Personal Service,* may be used.

- For information about service, read Form CH-200-INFO, *What Is "Proof of Personal Service"?*

- If you are unable to serve the person in ② in time, you may ask for more time to serve the documents. Use Form CH-115, *Request to Continue Court Hearing and to Reissue Temporary Restraining Order.*

88

Case Number:
**SS024429**

| To the Person in ❷ : |

- If you want to respond to the request for orders in writing, file Form CH-120, *Response to Request for Civil Harassment Restraining Orders,* and have someone age 18 or older—**not you or anyone to be protected**—mail it to the person in ① .

- The person who mailed the form must fill out a proof of service form. Form CH-250, *Proof of Service of Response by Mail,* may be used. File the completed form with the court before the hearing and bring a copy with you to the court hearing.

- Whether or not you respond in writing, go to the hearing if you want the judge to hear from you before making an order. You may tell the judge why you agree or disagree with the orders requested.

- You may bring witnesses and other evidence.

- **At the hearing, the judge may make restraining orders against you that could last up to three years and may order you to sell or turn in any firearms that you own or possess.**



### Request for Accommodations

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons with Disabilities and Response* (Form MC-410). (Civ. Code, § 54.8.)

*(Clerk will fill out this part.)*

### —Clerk's Certificate—

I certify that this *Notice of Court Hearing* is a true and correct copy of the original on file in the court.

Date: **MAY 0 1 2014**

Clerk, by _____ , Deputy

**G. VILLARREAL**

89

**CH-100** | **Request for Civil Harassment Restraining Orders**

Read *Can a Civil Harassment Restraining Order Help Me?* (Form *CH-100-INFO*) before completing this form. Also fill out Confidential CLETS Information (*Form CLETS-001*), with as much information as you know.

*Clerk stamps date here when form is filed.*

**FILED**
Superior Court of California
County of Los Angeles

**MAY 01 2014**

Sherri R. Carter, Executive Officer/Clerk
By _G. Villarreal_ Deputy
Gerardo Villarreal

**①  Person Seeking Protection**

a.  Your Full Name: **NICOLE ALBRECHT** _____ Age: **31**

Your Lawyer (*if you have one for this case*):
Name: _____ State Bar No.: _____
Firm Name: _____

b.  Your Address (*If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.*):

Address: **17153 PALISADES CIRCLE**
City: **PACIFIC PALISADES**   State: **CA**   Zip: **90272**
Telephone: _____ Fax: _____
E-Mail Address: _____

*Fill in court name and street address:*

Superior Court of California, County of

**SANTA MONICA COURT
LOS ANGELES
1725 MAIN STREET
SANTA MONICA, CA 90401**

*Court fills in case number when form is filed.*

Case Number:
**SS024429**

**②  Person From Whom Protection Is Sought**

Full Name: **IAN DOUGLAS MURRAY**   Age: **46**
Address (*if known*): **1411 PALISADES DRIVE**
City: **PACIFIC PALISADES**   State: **CA**   Zip: **90272**

**③  Additional Protected Persons**

a.  Are you asking for protection for any other family or household members? ☐ Yes ☐ No  *If yes, list them:*

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| JAYSON ALBRECHT | M | 11 | ☑ Yes ☐ No | BROTHER |
|  |  |  | ☐ Yes ☐ No |  |
|  |  |  | ☐ Yes ☐ No |  |
|  |  |  | ☐ Yes ☐ No |  |

☐ Check here if there are more persons. Attach a sheet of paper and write "*Attachment 3a—Additional Protected Persons*" for a title. You may use Form MC-025, Attachment.

b.  Why do these people need protection? (*Explain below:*)
☐ Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "*Attachment 3b—Why Others Need Protection*" for a title.

**PREVIOUS HARASSMENT FROM MR. MURRAY**
_____
_____
_____
_____

**This is not a Court Order.**

Case Number: _____

**(4) Relationship of Parties**

How do you know the person in ②? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 4—Relationship of Parties" for a title.*

NEIGHBOR

**(5) Venue**

Why are you filing in this county? *(Check all that apply):*

a. ☑ The person in ② lives in this county.

b. ☑ I was harassed by the person in ② in this county.

c. ☐ Other *(specify):* _____

**(6) Other Court Cases**

a. Have you or any of the persons named in ③ been involved in another court case with the person in ②?

☐ No ☑ Yes *If yes, check each kind of case and indicate where and when each was filed:*

| | Kind of Case | Filed in *(County/State)* | Year Filed | Case Number *(if known)* |
|---|---|---|---|---|
| (1) ☑ | Civil Harassment | LOS ANGELES | 2014 | BS 146874 |
| (2) ☐ | Domestic Violence | LOS ANGELES | 2013 | SS 023906 |
| (3) ☐ | Divorce, Nullity, Legal Separation | | | |
| (4) ☐ | Paternity, Parentage, Child Custody | | | |
| (5) ☐ | Elder or Dependent Adult Abuse | | | |
| (6) ☐ | Eviction | | | |
| (7) ☐ | Guardianship | | | |
| (8) ☐ | Workplace Violence | | | |
| (9) ☐ | Small Claims | | | |
| (10) ☐ | Criminal | | | |
| (11) ☐ | Other *(specify):* | | | |

b. Are there now any protective or restraining orders in effect relating to you or any of the persons in ③ and the person in ②? ☐ No ☑ Yes *If yes, attach a copy if you have one.*

**(7) Description of Harassment**

Harassment means violence or threats of violence against you, or a course of conduct that seriously alarmed, annoyed, or harassed you and caused you substantial emotional distress. A course of conduct is more than one act.

a. Tell the court about the last time the person in ② harassed you.

(1) When did it happen? *(provide date or estimated date):* 04/29/2014

(2) Who else was there? BRECK ALVIS, JAYSON ALBRECHT

_____

_____

_____

**This is not a Court Order.**

91

Case Number:

(3) How did the person in ② harass you? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7a(3)—Describe Harassment" for a title.*

~~ON APRIL 29, 2014 AT 9:05 A.M. I WAS WALKING DOWN ON PALISADES DRIVE WHEN MR. MURRAY PASSED ME WITH HIS BIKE, HE JUMPED OFF HIS BIKE AND THREW IT DOWN RIGHT IN FRONT OF ME AND HEADED TOWARDS ME, IN RAGE, HOLLERING AND SCREAMING "I'M GONNA KILL YOU" HE THEN REACHED INTO HIS POCKETS I FELT THREATENED AND FEARED FOR MY LIFE AND STARTED RUNNING AWAY. I FILED A REPORT WITH PALISADES PATROL OFFICER TONY LUNA AND L.A.P.D. (PLEASE SEE ATTACHED).~~

(4) Did the person in ② use or threaten to use a gun or any other weapon?

☐ Yes ☒ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7a(4)—Use of Weapons" for a title.*

~~I DIDN'T KNOW WHAT HE WAS REACHING FOR WHEN HE REACHED INTO HIS POCKETS IT COULD HAVE BEEN A KNIFE OR ANYTHING~~

(5) Were you harmed or injured because of the harassment?

☒ Yes ☐ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7a(5)—Harm or Injury" for a title.*

I FELT VERY THREATENED, ANNOYED AND FEARED FOR MY LIFE

(6) Did the police come? ☐ Yes ☒ No

If yes, did they give you or the person in ② an Emergency Protective Order? ☐ Yes ☐ No

If yes, the order protects *(check all that apply):*

a. ☐ Me  b. ☐ The person in ②  c. ☐ The persons in ③

*Attach a copy of the order if you have one.*

b. Has the person in ② harassed you at other times?

☒ Yes ☐ No *(If yes, describe prior incidents and provide dates of harassment below):*

☒ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 7b—Previous Harassment" for a title.*

This is not a Court Order.

92

Case Number: _____

**Check the orders you want.** ☑

**⑧** ☑ **Personal Conduct Orders**

I ask the court to order the person in ② **not** to do any of the following things to me or to any person to be protected listed in ③:

a. ☑ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

b. ☑ Contact the person, either directly or indirectly, in **any** way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.

c. ☐ Other *specify):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 8c—Other Personal Conduct Orders," for a title.*

_____
_____
_____

*The person in ② will be ordered not to take any action to get the addresses or locations of any protected person unless the court finds good cause not to make the order.*

**⑨** ☑ **Stay-Away Orders**

a. I ask the court to order the person in ② to stay at least __100__ yards away from *(check all that apply):*

| | |
|---|---|
| (1) ☑ Me | (8) ☑ My vehicle |
| (2) ☑ The other persons listed in ③ | (9) ☐ Other *(specify):* _____ |
| (3) ☑ My home | |
| (4) ☑ My job or workplace | |
| (5) ☐ My school | |
| (6) ☐ My children's school | |
| (7) ☐ My children's place of child care | |

b. If the court orders the person in ② to stay away from all the places listed above, will he or she still be able to get to his or her home, school, or job?   ☑ Yes   ☐ No   *(If no, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 9b—Stay-Away Orders," for a title.*

_____
_____

**⑩** **Guns or Other Firearms and Ammunition**

Does the person in ② own or possess any guns or other firearms?   ☐ Yes   ☐ No   ☑ I don't know

*If the judge grants a protective order, the person in ② will be prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a gun, other firearm, and ammunition while the protective order is in effect. The person in ② will also be ordered to turn in to law enforcement or sell to a gun dealer any guns or firearms within his or her immediate possession or control.*

**This is not a Court Order.**

93

Case Number:

**(11)  Immediate Orders**

Do you want the court to make any of these orders now that will last until the hearing without notice to the person in ② ?  ☑ Yes  ☐ No    *(If you answered yes, explain why below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 11—Immediate Orders" for a title.*

~~I FEAR FOR MY LIFE, HIS BEHAVIOR IS VERY THREATENING.~~

**(12)  ☐ Request to Give Less Than Five Days' Notice**

*You must have your papers personally served on the person in ② at least five days before the hearing, unless the court orders a shorter time for service. (Form CH-200-INFO explains* What Is "Proof of Personal Service"? *Form CH-200,* Proof of Personal Service, *may be used to show the court that the papers have been served.)*

If you want there to be fewer than five days between service and the hearing, explain why below:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 12—Request to Give Less Than Five-Days Notice" for a title.*

**(13)  ☑ No Fee for Filing or Service**

a.  ☑   There should be no filing fee because the person in ② has used or threatened to use violence against me, has stalked me, or has acted or spoken in some other way that makes me reasonably fear violence.

b.  ☑   The sheriff or marshal should serve (notify) the person in ② about the orders for free because my request for orders is based on unlawful violence, a credible threat of violence, or stalking.

c.  ☐   There should be no filing fee and the sheriff or marshal should serve the person in ② for free because I am entitled to a fee waiver. *(You must complete and file Form FW-001,* Application for Waiver of Court Fees and Costs.*)*

**(14)  ☐ Lawyer's Fees and Costs**

I ask the court to order payment of my:  a. ☐ Lawyer's fees  b. ☐ Court costs
The amounts requested are:

| Item | Amount | Item | Amount |
|---|---|---|---|
|  | $ |  | $ |
|  | $ |  | $ |
|  | $ |  | $ |

☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper or Form MC-025 and write "Attachment 14—Lawyer's Fees and Costs" for a title.*

**This is not a Court Order.**

94

Case Number: **SS024429**

(15) ☐ **Additional Orders Requested**

I ask the court to make the following additional orders *(specify)*:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or Form MC-025 and write "Attachment 15—Additional Orders Requested," for a title.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

(16) Number of pages attached to this form, if any: **5**

Date: _____

_____        ▶ _____
Lawyer's name (if any)            *Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: **04/30/2014** _____        ▶ *[signature]*

**NICOLE ALBRECHT**
*Type or print your name*                              *Sign your name*

This is not a Court Order.

95

Los Angeles Police Department
**INVESTIGATIVE REPORT**

| Page ___ of __2__ | 03.01.00 (07/13) | | COMBINED EVID. REPORT |
| --- | --- | --- | --- |

☐ COMBINED EVID. REPORT
☐ MULTIPLE DRS ON THIS REPORT

| CASE SCREENING FACTOR(S) | REPORT OF: CRIMINAL THREATS | | | | | INVEST DIV. WLA | INC # | | DR # 14-08 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| CASE SCREENING FACTOR(S) |
| --- |
| ☐ SUSPECT/VEHICLE NOT SEEN |
| ☑ PRINTS OR OTHER EVIDENCE NOT PRESENT |
| ☑ MO NOT DISTINCT |
| ☑ PROPERTY LOSS LESS THAN $5,000 |
| ☑ NO SERIOUS INJURY TO VICTIM |
| ☑ ONLY ONE VICTIM INVOLVED |

| | LAST NAME, FIRST, MIDDLE (OR NAME OF BUSINESS) Albrecht, Nicole | SEX F | DESC WHT | HT 508 | WT 115 | AGE 31 | DOB 03/25/1982 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **VICTIM** | ADDRESS R- 17153 Palisades Cir | | ZIP 90272 | PHONE (310) 359-3042 | | | X ☑ |
| | B- | | | | | | |
| | E-MAIL ADDRESS | | | CELL PHONE | | | |

| PREMISES (SPECIFIC TYPE) ☐ ATM Sidewalk | DR. LIC. NO. (IF NONE, OTHER ID & NO.) unk | FOREIGN LANGUAGE SPOKEN | OCCUPATION Promotion Mgmt |
| --- | --- | --- | --- |

| ENTRY 459/BFV POINT OF ENTRY | POINT OF EXIT | LOCATION OF OCCURRENCE Palisades Dr / Palisades Cir | SAME AS VS ☐ | RES. ☐ | BUS. ☐ | R.D. 801 | PRINTS BY PREL. INV. ATTEMPT ☐Y ☐N OBTAINED ☐Y ☐N |
| --- | --- | --- | --- | --- | --- | --- | --- |

| ☐ FRONT | | | | | |
| --- | --- | --- | --- | --- | --- |
| ☐ REAR | METHOD | DATE & TIME OF OCCURRENCE 04/29/2014  9:05 | | DATE & TIME REPORTED TO PD 04/29/2014  15:10 | |
| ☐ SIDE | | | | | |
| ☐ ROOF | INSTRUMENT/TOOL USED | TYPE PROPERTY STOLEN/LOST/DAMAGED ☐03.04.00 GIVEN | STOLEN/LOST $ | RECOVERED $ | EST. DAMAGED ARSON / VAND. |
| ☐ FLOOR | | | | | |
| ☐ OTHER | | | | | |

| VICT'S VEH. (IF INVOLVED) YEAR, MAKE, TYPE, COLOR, LIC. NO. | NOTIFICATION(S) (PERSON & DIVISION) | CONNECTED REPORT(S) (TYPE & DR #) |
| --- | --- | --- |

**MO** IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECT'S ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY REPORT AS NECESSARY. IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.

Vict stated susp is a neighbor in the neighborhood. Vict stated susp came from behind on his bike, jumped off his bike, approached vict and stated "I'm going to kill you". Susp then reached in his pocket, vict in fear for her life, ran towards her residence.

| | MANDATORY MARSY'S RIGHTS CARD PROVIDED TO THE VICTIM ☑ | HATE CRIME/INCIDENT ☐ | DOMESTIC VIOLENCE ☐ |
| --- | --- | --- | --- |

| REPORTING EMPLOYEE(S) | INITIALS, LAST NAME R.D. Sudduth | SERIAL NO. 31612 | DIV./DETAIL WLA/Desk | PERSON REPORTING | SIGNATURE | OR RECEIVED BY PHONE ☐ |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | NOTE: IF SHORT FORM AND VICTIM/PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION. | | |

## THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION

**KEEP THIS REPORT FOR REFERENCE. INSTRUCCIONES EN ESPANOL AL REVERSO.**

*Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property, in a manner that is cost-effective to you, the taxpayer. Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims. A detective will not routinely contact you, unless the detective requires additional information.*

**TO REPORT ADDITIONAL INFORMATION:** If you have specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number _____. If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

**COPY OF REPORT:** If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price. Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030. Include a copy of this report or the following information with your request: 1) Name and address of victims; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

**DR NUMBER:** If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay. There is no charge for this service.

**CREDIT CARDS/CHECKS:** Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

**HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:**
* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

**VICTIM-WITNESS ASSISTANCE PROGRAM:** The Los Angeles City and County Victim-Witness Assistance Program (VWAP) can help to determine if you qualify for Victim of Violent Crime compensation. If you qualify, they will assist with filling your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you. Their staff may also assist you with other problems created by the crime.

To find the program location nearest to you, call the Victim-Witness Assistance Program at the Los Angeles City Attorney's Office (213) 485-6976, or the Los Angeles County District Attorney's Office 1-800-380-3811.

**VICTIMS OF VIOLENT CRIME COMPENSATION: Refer to paragraph at bottom of reverse side.**

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Nicole Albrecht
17153 Palisades Circle,
CA  Pacific Palisades 90272

TELEPHONE NO.:                          FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica CA 90401
BRANCH NAME:

PLAINTIFF/PETITIONER: Nicole Albrecht

DEFENDANT/RESPONDENT: Ian Douglas Murray

**DECLARATION**

**FILED**
Superior Court of California
County of Los Angeles

**MAY 01 2014**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Gerardo Villarreal

CASE NUMBER: **SS024429**

Shortly after 9 a.m. on April 29, 2014 me and Jayson were walking down Palisades Circle towards Palisades Drive where we wanted to meet up to walk towards the Canyon Trail. From the distance I could see that Mr. Murray threw the bicycle down in front of Nicole and started towards her. Then she took of running towards me and Mr. Murray disappeared.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 04/30/14

_____
**Breck Alvis**
(TYPE OR PRINT NAME)

_____
*(SIGNATURE OF DECLARANT)*

☐ Attorney for   ☐ Plaintiff   ☐ Petitioner   ☐ Defendant
☐ Respondent   ☒ Other *(Specify):*   witness

97

## Attachment 7b Previous Harassment:

**On February 6, 2014** at approximately 7 a.m. right after the Sheriff served Mr. Murray with the request for the Civil Harassment Order, he followed me closely and chased me down on Palisades Drive in his car after I left my residence to drive to my gym. After numerous stalking attempts of Mr. Murray where he chased me in his car I was alarmed and frightened. I turned onto Sunset Boulevard heading down Spectrum Gym and entered the parking garage. On my way to the gym entrance Mr. Murray all of a sudden popped up walking towards me, to head me off. I was so scared and shocked that I run upstairs to the first level of the building, to make sure he wouldn't approach me like he did in May 2013.

**On April 7, 2014** at 1:35 p.m. I was walking down towards the Canyon Trail when I saw Mr. Murray driving up Palisades Drive. When he saw me he slowed down and stopped the car, met me with a confronting look and waved his hand up and down and made a verbal attempt towards me.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE : 04/30/14

98

# Attachment 7b Previous Harassment:

1. **On January 2012** I received a disturbing phone call from Mr. Murray, during which he insulted and threatened me.

2. **On January 2013** Mr. Murray was following me on my trip to my brother's karate studio. He chased me with his car, which almost caused me an accident.

3. **During the months of February and May of 2013** Mr. Murray would come by at the gym where I work out, follow me around and observe me closely while I was working out.

4. **May 2013** Mr. Murray winked my 10-year-old brother over the street. He then all of a sudden started to drive in front of him with his car, before he had reached the other side of the sidewalk and almost hit him.

5. **During mid May of 2013** he approached me in front of my gym and blocked the entrance as I was trying to get inside. He insulted and threatened me by telling that I was not allowed to use the gym and pool anymore, even though I am a member. After that incident he kept stalking me at the gym and was randomly appearing at my house, driving around on my street.

6. **On July 2013** Mr. Murray randomly popped out at the pool where I was exercising, took a sit right next to me and was watching me.

7. **On July 24,2013** again he took a sit right next to me at the pool.

8. **On August 9,2013** while I was spending time at the pool with friends, Mr. Murray came in and positioned himself very close to me.

9. **On August 22, 2013** after seeing me and my family at the pool, he got in the pool, positioned himself again right next to me and my brother's swim lane.

10. **On September 13, 2013** I turned into Palisades Circle with my car, Mr. Murray was walking down the same street. When I had to slow down to turn into another street he then stopped walking and met me with a confronting look and kept observing me intently where I went.

11. **On September 24, 2013** at 8:20 p.m. Mr. Murray popped up with his car behind me while I was driving home. He then positioned his car right next to mine and adjusted his driving behavior towards mine.

12. **On October 24,2013** at 3:40 p.m. Mr. Murray rode his bike on Palisades Drive, when he saw me passing him by driving in my car, he followed

99

13. **During November 2013 and now** he parks his car on my street or in immediate distance.

14. **On December 21, 2013** at 9:49 a.m. and on other occasions Mr. Murray was following me in his car when my 10-year-old brother and I were on our way back home. He would slow down at the time I would and made no attempt to keep distance to my car, instead he was very close behind me and turned in my street on Palisades Circle

100

**CH-130** | **Civil Harassment Restraining Order After Hearing**

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

**NOV 18 2013**

Sherri R. Carter, Executive Officer/Clerk
By _E. Goldstein_ Deputy
Ellen Goldstein

*Person in ① must complete items ①, ②, and ③ only.*

**① Protected Person**

a. Your Full Name: Alexandra Rul

Your Lawyer *(if you have one for this case):*

Name: Sam Israels State Bar No.: 236985

Firm Name: Cron Israels i Stork

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.):*

Address: 1541 Ocean Ave #200

City: Santa Monica State: CA Zip: 90401

Telephone: 310-451-9888 Fax: 310-451-2473

E-Mail Address: sm@cronisraelslaw.com

Fill in court name and street address:

Superior Court of California, County of
SUPERIOR COURT OF CALIFORNIA
WEST DISTRICT
1725 MAIN STREET
SANTA MONICA, CA 90401

Fill in case number:

Case Number: SS023906

**② Restrained Person**

Full Name: Nicole Albrecht

Description:

Sex: ☐ M ☒ F Height: 5'7" Weight: 130 Date of Birth: 8/25/82

Hair Color: Brown Eye Color: Brown Age: 31 Race: W

Home Address *(if known):* _____

City: _____ State: _____ Zip: _____

Relationship to Protected Person: None

**③ ☒ Additional Protected Persons**

In addition to the person named in ①, the following family or household members of that person are protected by the orders indicated below:

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| Ian Murray | M | | ☒ Yes ☐ No | Spouse |
| | | | ☐ Yes ☐ No | |

☐ *Check here if there are additional protected persons. List them on an attached sheet of paper and write, "Attachment 3—Additional Protected Persons" as a title. You may use Form MC-025, Attachment.*

**④ Expiration Date**

*This Order, except for any award of lawyer's fees, expires at:*

Time: 11/18/2016 ☐ a.m. ☐ p.m. or ☒ midnight on *(date):* _____

If no expiration date is written here, this Order expires three years from the date of issuance.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2012, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9
Approved by DOJ

**Civil Harassment Restraining Order After Hearing (CLETS-CHO)**
**(Civil Harassment Prevention)**

CH-130, Page 1 of 5 →

101

Case Number:

JS073706

## ⑤ Hearing

a. There was a hearing on *(date):* 11/18/13 ___ at *(time):* 8:30 AM in Dept.: F Room: 115
   *(Name of judicial officer):* Glenn Cowan ___ made the orders at the hearing.

b. These people were at the hearing:
   (1) ☒ The person in ①   (3) ☒ The lawyer for the person in ① *(name):* Sam Israels
   (2) ☒ The person in ②   (4) ☐ The lawyer for the person in ② *(name):* ___
   ☐ Additional persons present are listed at the end of this Order on Attachment 5.

c. ☐ The hearing is continued. The parties must return to court on *(date):* ___ at *(time):* ___

### To the Person in ② :

**The court has granted the orders checked below. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.**

## ⑥ ☒ Personal Conduct Orders

a. You must not do the following things to the person named in ①
   ☒ and to the other protected persons listed in ③:

   (1) ☒ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.
   (2) ☒ Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.
   (3) ☒ Take any action to obtain the person's address or location. If this item is not checked, the court has found good cause not to make this order.
   (4) ☐ Other *(specify):*
         ☐ Other personal conduct orders are attached at the end of this Order on Attachment 6a(4).

b. Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order.

## ⑦ ☒ Stay-Away Orders

a. You must stay at least 100 yards away from *(check all that apply):*

   (1) ☒ The person in ①
   (2) ☒ Each person in ③
   (3) ☒ The home of the person in ①
   (4) ☒ The job or workplace of the person in ①
   (5) ☐ The school of the children of the person in ①

   (6) ☐ The place of child care of the children of the person in ①
   (7) ☒ The vehicle of the person in ①
   (8) ☐ Other *(specify):*
   ___
   ___
   ___

b. This stay-away order does not prevent you from going to or from your home or place of employment.

### This is a Court Order.

**Civil Harassment Restraining Order After Hearing
(CLETS-CHO)**
*(Civil Harassment Prevention)*

102



# Los Angeles Superior Court

Appellate | **Civil** | Criminal | Family Court | Juvenile | Mental Health | Probate | Small Claims | Traffic

Home     Juror Services     About the Court     Locations     Search

You Are In: Home > Civil > Online Services > Case Summary > Search Results

▸ General Information

▸ Online Services

▸ Tools for Litigators

▸ Complex Court

▸ Collections Court

▸ Limited Civil Court

▸ Personal Injury Court

▸ Unlawful Detainer Court

▸ Get Help

▸ Civil Forms

▸ Civil Fees

▸ Civil Locations

▸ Court Rules

## Case Summary

`PRINT`

**Case Number:** BS146874
NICOLE ALBRECHT VS. IAN DOUGLAS MURRAY

**Filing Date:** 02/04/2014
**Case Type:** Civil Harassment (General Jurisdiction)
**Status:** Judgment by Court-Petition Denied 02/26/2014

Future Hearings

None

Documents Filed | Proceeding Information

Parties

ALBRECHT NICOLE - Petitioner

CLAERY LANCE R. ESQ. - Attorney for Petitioner

MURRAY IAN DOUGLAS - Respondent

SAM ISRAELS - Attorney for Respondent

Case Information | Party Information | Proceeding Information
Documents Filed (Filing dates listed in descending order)

**02/28/2014** Notice (NOTICE OF WITHDRAWAL OF ATTORNEY OF RECORD )
Filed by Attorney for Plaintiff/Petitioner

**02/26/2014** Substitution of Attorney
Filed by Attorney for Respondent

**02/19/2014** List of Exhibits (OF PETITIONER NICOLE ALBRECHT )
Filed by Attorney for Petitioner

**02/19/2014** Proof of Service
Filed by Petitioner

**02/19/2014** List of Witnesses (OF PETITIONER NICOLE ALBRECHT )
Filed by Attorney for Petitioner

**02/07/2014** Proof of Service (ch109 )
Filed by Petitioner

**02/06/2014** Declaration
Filed by Attorney for Plaintiff/Petitioner

**02/04/2014** Order to Show Cause
Filed by Petitioner

**02/04/2014** Application for TRO
Filed by Petitioner

(O3

Case Information | Party Information | Documents Filed

Proceedings Held (Proceeding dates listed in descending order)

**02/26/2014 at 08:30 am in Department 75, Carol Boas Goodson, Presiding**
Hrng on Petn Prohibit Harassment (NO TRO ISSUED) - **TRO is denied.**

Case Information | Party Information | Documents Filed | Proceeding Information

Community Outreach     Volunteers  Interns & Externs     Employment

©2009 Information Systems and Technology Bureau

(104



# Santa Ana Police Department
60 Civic Center Plaza -- Santa Ana, CA 92701

### Information Report

**Case No.**
## 2015-01359




| | |
|---|---|
| **Case Type:** | INFORMATION REPORT |
| **Prepared by:** | Ofc. A. Aparicio #3322 |
| | Section: Patrol Watch 2/WE |
| **Date prepared:** | 01/17/2015   19:58 hours |

---

**Reviewed by:** _ovL ✓ 2ull_       **Date/Time:** _1-18-15 / 0220_        (Rev. 0.60)

**Records Distribution:**   **Review:** _2439_   **Total Copies:** _1_   **By:** _3274_   **Date:** _____

| | | | | |
|---|---|---|---|---|
| ☐ Animal Control | ☐ Court Liaison | ☐ Orangewood | ☐ Traffic | ☐ Trackers |
| ☐ District Inv. | ☐ CAP | ☐ Evidence | ☐ Vice | ☐ Sex Crimes |
| ☐ Domestic Violence | ☐ Crime Prevention | ☐ Narcotics | ☐ Juvenile Inv. | ☐ Graffiti |
| ☐ Career Criminal Unit | ☐ Crime Analysis | ☐ Gangs | ☐ Fax/Name _____ | |
| ☐ Juvenile Hall | ☐ Stats | ☐ Rap | ☐ Other _____ | |
| #550000000000252328 | ☐ Other _____ | | ☐ Other _____ | |

---

## Incident Activity Summary:

**Special Attention:**

**Incident Date/Time:**     Occurred:   01/16/2015 10:10 to 01/16/2015 10:20
                           Reported:   01/17/2015 14:38

**Location Occurred:**     SANTA ANA CITY JAIL :@SACJ
Grid: 145  Dist.: 1        62 Civic Center Plaza, Santa Ana, CA 92703-0000

---

**Factual Synopsis:**      A Santa Ana Jail female immigration inmated reported another female
                           inmate threatened to batter her.

---

**Person:**                **Nicole Albrecht**
**Involvement:**           **Contact**
**Gender/Race:**           Female / White
**DOBs:**                  ▮▮▮▮▮▮
**Address:**               Location association: Resides
Grid: 145  Dist.: 1        SANTA ANA CITY JAIL :@SACJ
                           62 Civic Center Plaza, Santa Ana, CA 92703-0000
**Description:**           Physical: 5'09" tall, 130 lbs., brown hair, brown eyes,

---

**Person:**                **Maria Avila-Baca**
**Involvement:**           **Mentioned**
**Gender/Race:**           Female / Hispanic
**DOBs:**                  ▮▮▮▮▮▮         105

---

| Address:<br>Grid: 145  Dist.: 1 | Location association: Resides<br>SANTA ANA CITY JAIL :@SACJ<br>62 Civic Center Plaza, Santa Ana, CA 92703-0000 |

| **Officer:** | **Detention Supervisor K. Willard #2106** |
|---|---|
| **Involvement:** | **Other** |
| **Agency:** | SAPD |

## Narrative:

On 1/17/15, at 1444 hours, I was dispatched to the Santa Ana Jail, located at 62 Civic Center Plaza regarding a threat report. Upon arrival I spoke to immigration contract inmate Nicole Albrecht who told me another immigration contract inmate, Maria Avila-Baca, threatened to beat up and cut her. Albrecht told me the following about this incident.

Yesterday, at about 1010 hours, Albrecht and the other immigration inmates were conducting a fire drill and were required to sit in seats in a common area. Albrecht sat down on a seat and Avila-Baca told her she was sitting in her seat. Albrecht sat down got up and sat down on another seat. Again Avila-Baca told Albrecht she was in her seat. Albrecht stood up and sat down on another seat and stated she didn't realize that seats belonged to anyone in specific. Avila-Baca heard Albrecht and told her they could go into Avila-Baca's cell where Avila-Baca would beat her up and cut her. Albrecht felt that she was in danger of being physically abused by the heavier and aggressive Avila-Baca.

Detention Sergeant Willard #2106 told me Avila-Baca has a history of behavior issues in the facility. Detention Sgt. Willard told me each of the immigration inmate cells are randomly searched at least once a week, and Albrecht and Avila-Baca do not share the same cell.

Aparicio #3322 WE Watch 2



In the matter of Nicole Albrecht A# 206-407-728

To whom it may concern,

My name is Araksi Tokramdzhyan  A# 028-137-853, I am 66 years old and I am a fellow detainee of Nicole Albrecht at the Santa Ana City Jail. I would like to give testimony about Nicole's status in protective custody for 2 weeks.

Nicole was put in protective custody on January 17, 2015 after another detainee threatened her life during our dayroom time. She was unjustly put on a 23h lockdown for 2 weeks, while the person who threatened her was out after 6 days and was able to use the dayroom, even receiving pizza and coke. Nicole did not deserve to be put in a such a situation, she was always respectful to other detainees.

When I saw her coming out of lockdown, Nicole was all stressed out, sick and lost so much weight due to the mistreatment, that is unbelievable  and I felt sorry that she had to go through so much pain for nothing.


Araksi Tokramdhzyan



(310) 427-7705
Immigrant Rep, Inc.          ☎: (310) 988-2886
PO Box 4736          ✆: info@immigrantrep.com
Rolling Hills Estates, CA 90274          ✳: www.immigrantrep.com

**IMMIGRANT REP**

January 19, 2015

Santa Ana City Jail
**BY FAX: (714) 245-8100**

### Re: Request for Return to General Population Section for
### Nicole Albrecht Wheeler, AKA Nicole Albrecht
### A# 206-407-728 , Booking Number 284-5207

To Whom It May Concern:

Our office represents the above-named Immigration detainee ("Detainee"), who is currently
housed in your facility. (Although my G-28 is already in the file, for convenience I am attaching
another copy of it.) Since January 17, 2015, she has been in a lockdown area of your facility; we
are requesting her immediate transfer back to the general population section.

**Background**

On January 15, 2015, the facility was in between fire drills, and Detainee was sitting in a chair. A
large girl came up to her and said, "That's my seat," so Detainee got up and sat in another chair.
Then the large girl in question said the same thing: "Hey, that's my chair," to which Detainee
responded, "Wait a minute, this isn't your chair."

The large girl tried for a while to get Detainee aggravated, but Detainee simply said, "I don't
really want to argue, we're all in here, and I don't have a problem." After a few more words to
Detainee, the large girl said, "Why don't you come into my cell, and I'm gonna beat you up, then
I'm gonna cut you up into pieces."

The next day Detainee told her husband about this, during the husband's 11:00 AM visit, and
they decided that the husband would go downstairs to report it. Supervisor Willard came to the
lobby to meet the husband, and the husband described the incident to him. Supervisor Willard
said that he would review the audio and video tape and then, if there was merit the claim,
Supervisor Willard would contact the police from next door to file a police report against the
large girl and have her taken to county jail.

Supervisor Willard contacted the police, and the report was filed. Santa Ana Police officer
Aparicio, Badge #3322, came and interviewed Detainee and filed the report, Case # 15-01359.
After the police report was filed, Detainee sat in the freezing cold holding cell for a total of six
hours before going back to her cell.

Supervisor Willard telephoned back Detainee's husband and explained that, inexplicably, Detainee was now going to have some of her time restricted. The husband argued with Supervisor Willard for some 30 minutes explaining that his wife (Detainee) had filed a police report, which would prevent more problems for the facility in the future, and it therefore made no sense to punish Detainee, when Detainee was not only the victim but was also bravely coming forward, to the benefit of the facility everyone else in it.

The husband further explained that Detainee is currently dealing with her asylum case, her mother's asylum case, and the extradition and loss of her brother, all of which are made significantly more difficult by the fact that Detainee is in Immigration Detention; these difficulties are exacerbated still further by Detainee's current placement in a lockdown area, which prevents her from being able to work on these three matters.

After 6:00 PM on January 17, 2015, the husband telephoned and complained to Supervisor Guillan, who reiterated that Detainee's current placement in the lockdown is "for her protection," to which the husband replied that it is not Detainee's burden to be punished for the large girl threatening her. Supervisor Guillan said that she would try to go see Detainee that night, but this did not end up occurring. Officer Cardona, the officer who did speak with Detainee that night, said that Detainee would be able to use the day room half the day, but nothing more restrictive than that.

However, on January 18, 2015, Detainee informed her husband that she was, instead, being locked down for 23 hours a day! Why Detainee should have the few liberties that she enjoys inside your facility curtailed to such an extent when Detainee is an innocent victim who came forward to report an incident is unfathomable.

**There are two possible options that we would request in order to end this continuing violation of Detainee's civil rights:**

1. Allow Detainee to continue her normal schedule as before the incident; specifically, allow her to participate in urgent telephone calls throughout the day with her lawyer and family regarding her cases.
2. Alternatively, return Detainee to DH2, or DH1; there are different girls down there now, and there was never any issue down there anyway (no fights, arguments, etc.). In fact, each time Detainee is in holding area down there for court, all of the girls waive to her and say they miss her.

Should you have any questions regarding this, please do not hesitate to telephone or e-mail me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

109

## Successful transmission to 17142458100. Re: Nicole Albrecht

**NoReply@myfax.com** <NoReply@myfax.com>                    Mon, Jan 19, 2015 at 10:49 AM
To: effron@immigrationappeals.org



Dear Josh,

**Re: Nicole Albrecht**

The 3 page fax you sent through MyFax.com to <u>17142458100</u> was
successfully transmitted at 2015-01-19 18:49:45 (GMT).

The length of transmission was 112 seconds

The receiving machine's fax ID:

If you need assistance, please visit our online help center at
<u>http://www.myfax.com/support/</u>. Thank you for using the MyFax service.

Best Regards,
myFax.com

---

**Contact Customer Support**

**Hours:** 24 hours per day, 7 days a week.
**Email:** <u>support@myfax.com</u>

**North America**
Toll-Free: <u>(866) 563-9212</u>

**UK**
Free Phone: 0808 804 0015
International: <u>(613) 260-6325</u>

---

**Reference ID:**

110



© 2015. All rights reserved. MyFax is a registered trademark of j2 Cloud Services, Inc. and its affiliates.
Your use of the MyFax service is subject to the terms of the MyFax Customer Agreement.



Immigr. Rep, Inc.
PO Box 4736
Rolling Hills Estates, CA 90274

☎ : (310) 427-7705
📠 : (310) 988-2886
✉ : info@immigrantrep.com
🌐 : www.immigrantrep.com

**Officer Mendoza**
Santa Ana City Jail
62 Civic Center Plaza
Santa Ana, CA 92701
**BY FAX: (714) 245-8136**

<u>Re: Nicole Albrecht, A# 206-407-728</u>

Dear Officer Mendoza:

I represent Ms. Albrecht, whose claims against the Santa Ana City Jail I understand you are currently investigating. My G-28 is already in the file.

The purpose of this letter is to outline some of the obstacles that the Santa Ana City Jail (where my client is currently being detained) has thrown in the way of my client's effective preparation for Immigration Court:

- On <u>01/09/2015</u>, I contacted your facility because I had been informed that Ms. Albrecht was feeling sick and needed to see a doctor. Instead, she was taken to a nurse who gave her some pills that were ineffective. When I explained that she had Immigration Court scheduled on <u>01/12/2015</u> and needed to have her medical issues addressed immediately so as to not adversely affect her Immigration Court case, I was told that she would receive all necessary medical treatment.
- Nonetheless, on **01/12/2015**, when we went to Immigration Court, I discovered that Ms. Albrecht's medical issues had not been dealt with, nor had she had a proper medical examination done by an actual doctor. As a result of Ms. Albrecht's declining health, her Immigration Court hearing could not go on that day and had to be continued to <u>01/26/2015</u>.
- On <u>01/16/2015</u>, Ms. Albrecht was victimized by another detainee, and the entire event was caught on video. Despite this, Ms. Albrecht – rather than the aggressor – was put in "protective custody," supposedly for Ms. Albrecht's protection. In the meantime, the aggressor was released back into the facility's general population.

  Inexplicably, Ms. Albrecht (but not the aggressor) remained locked up in "protective custody" for the next two weeks. Having only a few feet of space in which to move around, for 23 hours a day, significantly exacerbated Ms. Albrecht's already serious health conditions.

  In addition, even though detainees are supposed to be able to report threats against them anonymously, having Ms. Albrecht in "protective custody" was essentially an announcement to the other detainees that she had reported a threat against her. As a result, her placement in "protective custody" constituted a significant violation of her right to be able to anonymously report threats against her.

  Furthermore, her placement in "protective custody," with only one hour a day to telephone her attorney, prevented her from being able to fully prepare for Immigration Court on <u>01/26/2015</u>.

112

- As a result, on **01/26/2015**, Ms. Albrecht had to present her case in Immigration Court without the appropriate amount of preparation time that was due to her and with her health in a less than optimal state due to the constraints of being in "protective custody" for 23 hours a day for the previous two weeks. Consequently, her application was denied (and is currently on appeal before the Board of Immigration Appeals).

- On **03/03/2015**, one day before Ms. Albrecht's scheduled *Rodriguez* bond hearing, I was informed that Ms. Albrecht was again locked up and prevented from speaking with her attorney in order to prepare for her bond hearing. I made several telephone calls to the facility and was first told that **Officer Manriquez** was busy but would be available in the later afternoon. However, when I telephoned in the later afternoon. I was then told that he had left for a week.

- Later that day, I telephoned the facility and spoke with a woman calling herself "Thomas." "Thomas" informed me that the duty supervisor was in a meeting. I telephoned "Thomas" later that evening only to be told that the duty supervisor was still in a meeting but that this person would speak with me if I closed my office and drove two hours in traffic to the facility to speak with that duty supervisor in person. When I asked "Thomas" how my going to the facility would get the duty supervisor out of the meeting in which the supervisor supposedly was, I was not given an answer. Furthermore, as I explained to "Thomas," we had court the following day and needed to spend the time preparing the case and not driving all the way to Santa Ana to handle a matter that could have been easily dealt with on the telephone.

- As a result, when Ms. Albrecht went to her bond hearing with me on **03/04/2015**, she did so without the opportunity to fully prepare for it. This echoed what had happened prior to her 01/26/2015 Immigration Court hearing, when the Santa Ana City Jail again prevented her from being able to fully prepare for Immigration Court. Consequently, her bond, like her case in chief, was denied.

## Conclusion

Immigration Detention is always going to be a difficult experience for the detainees, and it brings about several challenges to the effective representation of clients in Immigration Court. These are, unfortunately, facts that come with the existence of Immigration Detention.

However, there is no reason for ICE detention facilities or detention facilities under contract with ICE to put up additional barriers to effective representation, and doing so constitutes a violation of the detainees' Due Process rights. This is, unfortunately, what has occurred in Ms. Albrecht's case.

Should you have any questions as you continue to investigate Ms. Albecht's situation, please do not hesitate to contact me at any time.

Sincerely,

Josh Effron, Esq.
President
Immigrant Rep, Inc.

113

## Successful transmission to 17142458136. Re: Nicole Albrecht, A# 206-407-728

NoReply@myfax.com <NoReply@myfax.com>
To: effron@immigrationappeals.org

Fri, Mar 6, 2015 at 2:27 PM



Dear Josh,

**Re: Nicole Albrecht, A# 206-407-728**

The 3 page fax you sent through MyFax.com to 17142458136 was successfully transmitted at 2015-03-06 22:27:48 (GMT).

The length of transmission was 121 seconds

The receiving machine's fax ID:

If you need assistance, please visit our online help center at http://www.myfax.com/support/. Thank you for using the MyFax service.

Best Regards,
myFax.com

---

**Contact Customer Support**

**Hours:** 24 hours per day, 7 days a week.
**Email:** support@myfax.com

**North America**
Toll-Free: (866) 563-9212

**UK**
Free Phone: 0808 804 0015
International: (613) 260-6325

---

**Reference ID:**

114



© 2015. All rights reserved. MyFax is a registered trademark of j2 Cloud Services, Inc. and its affiliates.
Your use of the MyFax service is subject to the terms of the MyFax Customer Agreement.

115

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>LIN-15-903-07415 | | CASE TYPE I130 PETITION FOR ALIEN RELATIVE |
|---|---|---|
| RECEIPT DATE<br>December 2, 2014 | PRIORITY DATE<br>December 1, 2014 | PETITIONER<br>WHEELER, RICHARD W. |
| NOTICE DATE<br>January 29, 2015 | PAGE<br>1 of 1 | BENEFICIARY A206 407 728<br>ALBRECHT, NICOLE |

| | |
|---|---|
| RICHARD WAYNE WHEELER<br>11064 MISSISSIPPI AVENUE<br>LOS ANGELES CA 90025 | **Notice Type:** Approval Notice<br>Section: Husband or wife of U.S. Citizen,<br>201(b) INA |

This courtesy notice is to advise you of action taken on this case. The official notice has been mailed to the authorized representative. Any relevant documentation included in the notice was also mailed as part of the official notice.

The above petition has been approved. The petition indicates that the person for whom you are petitioning is in the United States and will apply for adjustment of status. The information submitted with the petition shows that the person for whom you are petitioning is not eligible to file an adjustment of status application at this time.

Additional information about eligibility for adjustment of status may be obtained from the local USCIS office serving the area where the person for whom you are petitioning lives.

Until the person for whom you are petitioning files an adjustment application, or applies for an immigrant visa, this approved petition will be stored in this office. If the person for whom you are petitioning becomes eligible to adjust status based on this petition, he or she should submit a copy of this notice with Form I-485, Application for Permanent Residence. Form I-485 may be obtained at the local USCIS office.

If the person for whom you are petitioning decides to apply for an immigrant visa outside the United States based on this petition, the petitioner should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

**THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

NOTICE: Although this application/petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify the information submitted in this application, petition and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine whether revocation, rescission, and/or removal proceedings are appropriate. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal proceeding is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
NATIONAL BENEFITS CENTER
USCIS, DHS
P.O. BOX #648004
LEE'S SUMMIT   MO   64064
**Customer Service Telephone: (800) 375-5283**



116

Form I-797 (Rev. 01/31/05) N

**Extradition of Jayson Albrecht Back to Germany While His I-589 Was Pending**

Finally, on December 8, 2014, **Jayson Albrecht** (A# 206-409-422), the eleven-year-old son of Petra and brother of Nicole, filed an I-589 on account of his fear of persecution in Germany. The receipt number for the I-589 is **ZLA1400174260** . As the receipt itself expressly states, Jayson has the right to remain in the USA until his asylum application has been adjudicated. At a minimum, he cannot be returned to the very country from which he is claiming persecution (Germany) until and unless his application has been denied and all administrative appellate and review options have been exhausted.

Nonetheless, on December 17, 2014, Jayson was extradited back to Germany, both against his will (see attached letter from Jayson to Nicole,[2] in which Jayson clearly voices his desire to remain in the United States with his mother and sister) and against the law, inasmuch as a final decision had not yet been reached on his I-589, which remains pending with USCIS to this day.

The extradition was carried out by California dependency court, even though attempts were made to apprise that court of Jayson's pending I-589, to no avail. Both Nicole and Petra also attempted to prevent Jayson's extradition back to Germany, at least until the final adjudication of his I-589. However, their current status as ICE detainees prevented them from effectively doing so.

**Background**

Since ICE has mishandled the case and has refused to allow Applicants to attend criminal court proceedings to vindicate themselves, Applicants have been forced to bear the consequences of abuses and discrimination throughout their detention by Immigration and Customs Enforcement, the intentional separation of Petra Albrecht to a different detention facility, and ICE's refusal to allow Petra to attend dependency court hearings, which led to her losing custody of her 11-year-old son and key witness, Jayson Albrecht. Since ICE's actions directly caused Jayson Albrecht to be illegally extradited to Germany, ICE now bears the burden of bringing him back to the United States.

Please see attached I-589 receipt, with Jayson Albrecht A# 206 409 422, also his BCIS Asylum Office interview and biometrics appointment. Both appointments were kept by family member Richard Wheeler, and they are currently on hold and pending. Please see Jayson Albrecht letter to his sister Nicole Albrecht.

---

It should be noted that the letter was written and addressed by Jayson to his sister, Nicole, before he was sent out of the USA in December. However, for reasons as yet unknown, the letter was held by someone and not mailed to Nicole until January 7, 2015.

117

### ICE Denied Illegal Minor to be Placed in the Immigration System, Allowing No Protection Against Extradition.

11 year old Jayson Albrecht was purposefully exposed and sent back to his country by Immigration and Customs Enforcement and Child Protective Services, directly into the arms of the same authority he and his family fears mistreatment from. Jayson's mother, Petra Albrecht, A# 206-409-411, and sister Nicole Albrecht, A# 206-407-728 are currently detained and are in asylum only proceedings in immigration court, where their asylum claims are based on protecting the child. Therefore, Jayson Albrecht was included on his mother's asylum application, and he also has an individual affirmative asylum case that was filed while he was still present in the United States. When his mother and sister were taken into ICE custody September, 4th, 2014 for a visa waiver overstay, Jayson, who had the same legal status was purposefully kept out of the immigration system and away from his family, which would have secured him legal protection under immigration law. ICE disregarded immigration laws and proceedings, and the fact that every alien present in the United States has the right to make an asylum claim if they feel that they would face great harm by returning to their home country.

Instead, the child was unnecessarily placed in foster care for more than three months, isolated from his family and dragged through dependency court proceedings for no reason. This was due to a criminal pattern by different authorities that were stalling a case for celebrity neighborhood couple Alexandra Paul and Ian Murray, who are involved in a series of criminal activities against the Albrecht family, and who are utilizing witness tampering in form of deportation to avoid facing prosecution, in criminal and civil court, by using one law enforcement agency (ICE) to prevent other law enforcement agencies from prosecuting them. This alone constitutes U-Visa certification for the family. All of the actions led to the exposure of the child to the German authorities, and was the catalyst for the family losing their child and key witness to the occurred crimes, while Petra and Nicole Albrecht were detained with their hands tied.

During the entire dependency court proceedings, the family's procedural rights were completely ignored and violated by Child Protective Services, and they became victims of misconduct and discrimination in support by ICE.

ICE completely ignored their own directive on facilitating Parental Rights, released in 08/2013, and denied the mother every request to attend court hearings, by ignoring her, and by taking advantage of her language barrier and limitations to the German language, causing no visitation with her child for almost 4 months, additionally, Petra was separated far away from her daughter Nicole for no reason, but based on lies created to support ICE's argument for the separation. They basically locked her up in seclusion, so she could not defend herself or her child while they made fatal decisions without all of the facts. Petra and Nicole Albrecht were protecting their son and brother from the German Youth Authority, and Child Protective Services, in cooperation with ICE delivered the child to them while they were denying Petra and Nicole Albrecht their civil rights. Per conversations on the written detention report, ICE officer Castillo passed the responsibility to CSW Celeste Aceves (CPS), when he asked her if CPS was going to send Jayson back to Germany, instead of keeping the child in immigration. Officer Casillo also stated that this would be the most appropriate plan because if he were to be sent back by Homeland Security, he would be sent in the form of a deportation, which will affect his status and ability to return to the U.S. for 10 years. Officer Castillo knew that by keeping Jayson out of immigration, he would also be taking away Jayson's mother's rights to protect him, but he made the move anyway without any regard. Agencies such as ICE, the Department of Homeland Security, or CPS who continue to allow these crimes and constitutional violations to occur against this family are completely responsible.

Print                                                                                          Close

# Jayson Albrecht- Asylum Reply- Receipt-USCIS

From:  **Richard** (rochosbt@hotmail.com)
Sent:  Tue 1/13/15 7:44 AM
To:    Richard (rochosbt@hotmail.com)

1/13/15

Joshua,

Here is a reply from USCIS, the actual receipt is barely legible, and it reads:

From: US Dept. of Homeland Security
Bureau of Citizens and Immigration Services
Asylum Office
PO Box 65015
Anaheim, Ca 92815-8515

Name: Jayson Albrecht
A Number- 206 409 422 RCPT# ZLA1400174260
Acknowledgement of Receipt
Date: 12/9/14
Form I-589

Your complete form I-589 asylum application was received and is pending as of 12/8/14. You may
remain in the U.S. until your asylum application is decided. If you wish to leave while your
application is pending, you must obtain advanced parole from BCIS. If you change your address,
send written notification of the change within 10 days to the above address. You will receive a notice
informing you when you and those listed on your application as a spouse or dependents must appear
for an asylum interview. Bring to the interview 3 copies of your documentary evidence of your
relationship to those family members.

119

U.S. Department of Homeland Security
Citizenship and Immigration Services
P.O. Box 25515
Anaheim, CA 92615.5515

U.S. Citizenship
and Immigration
Services

SANTA ANA
CA 926
09 JAN '15
PM 1 1

Rec'd
1/12/15

Jayson Albrecht
c/o Richard Wheeler
11064 Mississippi Ave
Los Angeles, CA 90025

30025574554

120



F
R
O
M

# IMPORTANT INFORMATION ENCLOSED

JAN 0 3 2015

Not a
this address

NIXIE      918   CC 1009      7212/26/14

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 92815851515      *2808-06294-26-21

9027 5 515



122

Print                                                                                   Close

# Nicole Albrecht, A# 206-407-728

From: **Joshua Effron, Esq.** (effron@immigrantrep.com)
Sent: Fri 3/27/15 1:37 PM
To:   Ruben Vela (ruben.velajr@ice.dhs.gov)
        5 attachments
        G-28.pdf (954.6 KB) , Letter - 01-07-2015.pdf (401.8 KB) , Letter - 01-19-2015.pdf
        (567.3 KB) , Letter - 01-25-2015.pdf (236.1 KB) , Letter - 03-06-2015.pdf (598.9 KB)

Mr. Vela,

Thank you for taking the time to speak with me yesterday (03/26/2015). By way of reminder, I
represent Ms. Albrecht. (Please find attached a copy of my G-28.)

As we discussed, there are a number of issues relating to the conditions of her detention by ICE at
the Santa Ana City Jail. Most of these issues are outlined in the attached letters that have already
been submitted over the course of the past few months, with no response or results.

In summary:

1. Ms. Albrecht has had several unfounded accusations leveled against her by her neighbors
Alexandra Paul and by Ian Murray but, due to her detention by ICE, has been unable to vindicate
herself in criminal court. Ms. Paul and Mr. Murray contact ICE in a successful attempt at witness
tampering: by having Ms. Albrecht placed in Immigration custody, Ms. Albrecht was prevented
from testifying in criminal court, which would have enabled the falsity of the accusations against
Ms. Albrecht to have come to light.

The charges leveled against Ms. Albrecht by Ms. Paul and Mr. Murray were again used against her
at her *Rodriguez* bond hearing. Before Ms. Albrecht could explain her side of the story, the
Immigration Judge denied her bond.

Again, it must be pointed out that Ms. Albrecht has never been convicted of anything and only has
charges against her, which came in retaliation for charges that Ms. Albrecht had leveled against Ms.
Paul and Mr. Murray. Deciding which side is telling the truth is a matter for the criminal court, but
the criminal court has been prevented from adjudicating the case because ICE has been detaining
Ms. Albrecht starting from September 2014. (In fact, Ms. Albrecht was arrested by ICE when she
was on her way to criminal court to testify but, because of her arrest by ICE, never made it to
criminal court.)

As a government agency, ICE is not and cannot allow itself to be used as a weapon by private parties
(Ms. Paul and Mr. Murray) in their attempts to silence Ms. Albrecht, who truly is the victim here.

2. Ms. Albrecht has already been locked up by ICE for **over 180 days**. She **is not a flight risk**, as
demonstrated by the fact that before her detention, she attended every criminal court hearing, except

123

for one in which the Los Angeles Police Department locked her up, again at the behest of Ms. Paul and Mr. Murray, and (despite her payment of bail) did not release her until after her criminal court hearing.

She is married to a Richard Wheeler, a United States citizen, and thus has a permanent place where she will be residing upon her release.

In addition, her I-589 has merit and a good likelihood of approval, inasmuch as it is based on Germany's oppressive measures taken against families involved in homeschooling (which is illegal in that country).

Furthermore, she **is not a danger to society**. She has never been convicted of anything, and the only reason why the charges against her have gone unanswered is that ICE has been detaining her and thus preventing her from going to criminal court. Upon her release from ICE custody, she will go to criminal court and vindicate herself there.

> 3. In addition, as discussed in the attached materials, Ms. Albrecht's minor brother, Jayson, was illegally returned to Germany even while he had a pending I-589; to return a person to the very country from which he is claiming asylum, before a decision can be reached on the asylum application, violates the entire purpose of the asylum process. Ms. Albrecht needs to be released in order to use the resources at her disposal to locate her brother in Germany and secure his return to the United States, so that his I-589 can be adjudicated.

Also, I have been in contact with both Debbie Leon and Art Trevino (please forgive me if I have misspelled their names) on a number of occasions. In particular:

- 01/27/2015: I spoke with Officer Trevino regarding releasing Ms. Albrecht from "Protective Custody," inasmuch as Ms. Albrecht was essentially being punished for filing a report against a detainee who had threatened her. The detainee who had threatened her, on the other hand, was allowed to roam freely in the general population. It later turned out that that detainee had spent almost a decade in prison for, I believe, manslaughter, while Ms. Albrecht has never been convicted of anything; as a result, the detainee who had threatened Ms. Albrecht's life should have been locked up, rather than Ms. Albrecht.
- 01/28/2015: I again spoke with Officer Trevino requesting Ms. Albrecht's release from "Protective Custody," to which he replied that this was up to the policy of the facility, not to him. I also made Officer Trevino aware that Ms. Albrecht had marks on her wrists from being handcuffed (which I noticed when I saw Ms. Albrecht in Immigration Court on 01/26/2015), that this prolonged "Protective Custody" was taking a serious toll on her health, and that it was making work on her Immigration case difficult if not impossible.
- 01/30/2015: I spoke with Officer Leon regarding transferring Ms. Albrecht to a facility in which Ms. Albrecht's rights to work on her case, to make legal telephone calls, and to be free from unnecessary restraint (which makes the difficult situation brought about by immigration detention even more difficult) would be respected. Officer Leon explained that there were no other facilities available to house female detainees.

124

These letters and telephone conversations demonstrate repeated attempts to address the harm that has been visited upon Ms. Albrecht as a result of her continued detention by ICE and to have her released from ICE custody. It is unconscionable that she is still in ICE custody, especially given Ms. Albrecht's lack of a criminal record (as contrasted with the serious criminal records of many of her fellow detainees who have since been released).

For the foregoing reasons, I need to set up a meeting with you to address these issues and work to secure Ms. Albrecht's release from ICE custody.

Thank you for your prompt attention to this matter. I look forward to hearing back from you soon.

Sincerely,


Josh Effron
Attorney at Law
Immigrant Rep, Inc.
http://www.immigrantrep.com

Tel: (310) 427-7705
Fax: (310) 988-2886
P.O. Box 4736
Rolling Hills Estates, CA, 90274

CONFIDENTIAL: This communication is private and confidential. Additionally, it is intended to constitute an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510. Its disclosure is strictly limited to the recipient intended by the sender of this message. This communication contains confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete and destroy all copies of this communication.

125

Print                                                                                      Close

# Letter Regarding my wife- Nicole Albrecht

From: **Richard** (rochosbt@hotmail.com)
Sent: Wed 4/01/15 5:35 AM
To:    ruben.velajr@ice.dhs.gov (ruben.velajr@ice.dhs.gov); effron@immigrantrep.com
       (effron@immigrantrep.com)
          1 attachment
          Letter to Dep Ruben Vela 4-1-15.pdf (901.3 KB)

Dear Deputy Vela,

Thank you so much for getting back to our attorney Mr. Effron yesterday, and confirming that you
received my e-mail with the complaints from numerous detainees about the abusive conditions at the
Santa Ana City Jail. I realize that detention is not a pleasant place to be held, but when the facility
cannot provide enough staff to run it properly, at the expense of detainee legal rights, medical
abuses, and mistreatment, then it's a big problem. We look forward to your solution with the matter.

Also, please see the attached letter to you, describing my wife's situation from the start, her case
details, and where we are now. Mr. Effron explained to me that you forwarded our case information
to Arturo Trevino to look over last week. Respectfully, all ICE and DHS employees for the last
seven months have ignored me, my wife and our attorney, and our numerous submittals for relief,
and they do not deserve to be involved in the process from this point forward. As stated in my letter
to you, ICE officer Debbie Leon, supervisor Quinonas, and supervisor Arturo Trevino have been
completely absent from addressing my wife and her mother's cases since the start. We also
understand that your office probably did not know the specifics of our case, and how ICE and the
DHS have handled, or failed to handle the case, as Nicole and her mother's immigration cases are not
of the ordinary, so they cannot be treated as such. Again, respectfully, that is why we have come to
you and your office to secure my wife's release.

Thank you very much for your time this morning, Joshua Effron and I will call you mid morning.

Sincerely,

Richard Wheeler
310-293-1847



3/30/15

Department of Homeland Security
300 North Los Angeles Street
Los Angeles, CA 90012
Attn: Deputy Ruben Vela
RE: Detention of My Wife-
Nicole Albrecht- A #206 407 728

Dear Deputy Vela,

I am writing this letter to help secure my wife's release this week. Her unnecessary detainment is depriving her of medical attention, legal client-attorney counsel, and subjecting her to an excessive abusive environment in the Santa Ana City Jail, who has past violations. The abuses continue after many complaints, which shows the disregard from ICE and jail staff for almost seven months (two facilities). Also, the DHS are employing double standards and hypocritical methods to keep my wife detained, so please be aware of the following.

My wife has been involved in a legal battle with a neighborhood couple for almost two years. The DHS and immigration court has allowed this couple to simply provide you with letters stating that my wife and her family are horrible people, they have terrorized them, and they want my family deported. The DHS has also accepted these testimonials, after the couple clearly LIED to ICE on August 27th, 2014, when she failed to mention the "granted" TRO against her the day before.

Yes, she lied to you, in order to recruit ICE and the DHS to fight her private citizen legal battle that she was losing, and you took the bait. On August 23rd, 2014, Alexandra Paul tried to run me and my family off a canyon road in her husband's vehicle, which could have seriously injured or killed four of us, including Nicole's 11 year old brother, and 79 year old grandmother. <u>We obtained a restraining order against her, and she was served on August 26th, 2014, the day before she called ICE to have them arrested. This means, a civil court judge already granted that Alexandra Paul could not harass, intimidate, stalk, threaten, disturb the peace of, etc. against my wife Nicole Albrecht.</u> She also had them arrested on the exact day Nicole was to attend another pre-trial hearing on Sept. 4th, 2014, so they kept her from court again (for the third time). Nicole also missed the TRO hearing on Sept. 16th, 2014, and the TRO was dismissed. This is motive.

For almost seven months, our attorney Joshua Effron has provided ICE and the DHS with loads of evidence detailing these events (which ICE/DHS have ignored), via (4) humanitarian paroles, and many other verbal attempts, which clearly shows the intent of this neighborhood couple is to prevent Nicole and her family from going to court to prosecute them. Why does the couple want to keep them out of court so badly?

And it's almost laughable, or criminal, that any court or authority in the land, including the DHS or ICE would simply take this information from someone who has shown no credibility, and who have underlying motives, and use it against anyone in any court, to prevent them from being released from another court system, so that they cannot seek justice. We deserve an explanation for this? And this is information from an open court case, so nothing has been decided yet, it's still in pre-trial. So there are no convictions, and the evidence can still be used against my wife.

(27

Let me tell you a little bit about this perfect couple Alexandra Paul (the gay one from Baywatch) and her (bi-sexual) husband Ian Murray, that you know nothing about. In the beginning, Alexandra Paul made every effort to get close to Nicole and her brother Jayson, since they are complete athletes. Nicole and Jayson frequented the pool, and the neighbors liked them due to their clean, active lifestyle, including Alexandra Paul. Then her psychotic husband Ian Murray got his ego bruised by an 11 year old boy who could swim better than him (Ian's a swim coach), when neighbors started complimenting Jayson on his swimming, which was taught by his sister Nicole. After Nicole turned down both of their sexual favors, the crying Mr. Murray threw a tantrum, and forbid Alexandra from seeing Nicole anymore at the gym or at the pool, and that's when they both attacked Nicole legally, because Ian Murray bullied Alexandra into it. Then what followed was a trail of lies from them, and evidence from us. BTW- Ian Murray is known in the entire beach and swim community as being "the creepy husband married to that woman, who no one knows, from that show that no one remembers". Also, no one cares about your sexual orientation these days, but be proud if that's who you are. Their marriage is a sham and everyone in the community knows it, except people like you, who don't know the couple.

But whether you believe me or not is moot. But if you are impartial you should not believe them either, because you don't know them, therefore they are not credible, especially when we have provided you proof of their motives? I have never witnessed such criminal or unjust actions, as I have witnessed watching ICE and the DHS completely dismantle and destroy my wife and her family, my child (miscarriage at James A, Musick) and my future, by continuing to ignore a mountain of physical evidence (court documents) which supports witness tampering and obstruction, and then pretend as if it does not exist. My wife is now a skeleton of what she used to be, from no nutrition, no medical attention, and numerous abuses, and ICE and the DHS are discriminating against her by continuing her unnecessary detention. That is why we are contacting your office now to have my wife released.

Please read our facts, or credible evidence. My wife has been detained for over 180 days, she has no convictions, she is married to a US citizen / sponsor, no prior immigration violations, she has a good record of appearing at court, she is not a flight risk, and she is not a danger to society. Based on our evidence, which matches your criteria for release from detention, you have no right to continue holding my wife any longer. She has the right to work on her case from outside of detention like everyone else who meet this criteria, and those who don't, but are still released.

We are contacting your office since it's our right, and since all ICE and DHS representatives in the past have simply ignored our attorney, and Nicole and her mother's case for seven months, leaving them subject to severe abuse and civil rights violations, so they have lost the right to be a involved in the rest of the process, as ICE officer Debbie Leon, supervisor Arturo Trevino, and supervisor Quinonas have all been absent for seven months, and should face disciplinary action as a result.

I look forward to meeting you this week with Joshua Effron and my wife, Nicole, to have her released.

Sincerely,

Richard Wheeler

128

Print                                                              Close

# RE: Release of Detainee-Nicole Albrecht- A# 206 407 728

From: **Richard** (rochosbt@hotmail.com)
Sent: Wed 4/08/15 9:31 PM
To: ruben.velajr@ice.dhs.gov (ruben.velajr@ice.dhs.gov)
Bcc: Richard (rochosbt@hotmail.com)

Dear Deputy Vela,

After we had some dialogue with you for the last two weeks regarding my wife, you failed to get back to us for an additional week. Now I've been informed that you have turned my wife's case back over to the ICE officers who failed to respond to us for the last seven months, and that's precisely the reason we contacted your office in the first place. Per your own guidelines, it is our right to seek release assistance from the DHS District Office since ICE failed to respond to our urgent Humanitarian Parole requests, and that's what we want to do. Why would we have any faith in supervisors Trevino or others to be fair and balanced? As, Mr. Trevino and Quinonas, and ICE officer Leon all ignored the many eligible grounds for their release, an additionally, allowing the facility to violate civil rights with no counsel prior to court hearings, and falsely accusing Nicole of profanity, when she is simply stating facts about her case.

Yesterday, my wife asked ICE officer Leon questions regarding her case, and officer Leon barked out rude untruths and mis-information. Stating that, "you are still detained because you have two convictions, and that you have no constitutional rights in here". Someone needs to educate this unqualified federal employee. <u>My wife has no convictions, and she does have constitutional rights being a detainee,</u> and the DHS and ICE have violated many of those rights already. Officer Leon is my wife's deportation officer, and she doesn't want to know anything about my wife's case, and it clearly shows. This is unacceptable in her role.

ICE and the DHS are simply passing our case around from one table to the next, stating false allegations, and creating a snowball effect of invalid facts, because no one wants to clean up this mess that you have created. My wife is innocent until proven guilty, and you are violating constitutional laws by overstepping your jurisdiction, by making a ruling that belongs in criminal court, while also preventing my wife from attending criminal court. The DHS needs to address my wife's case in the appropriate manner, and secure her release, so that she will be able to deal with the neighborhood couple's accusations in criminal court, which will also alleviate the Department of Homeland Security's role in a private citizen legal battle.

We came to your office to get results, and that's what we want, results from a higher office than ICE, since ICE has already proven to be ineffective, and without merit to examine or judge any situation without bias. This is our right.

Respectfully,

Richard Wheeler

129

Department of Homeland Security
300 N Los Angeles St
Los Angeles, CA 90012

March 28, 2015

Dear Officer Ruben Vela,

We would like to file a formal grievance against the City of Santa Ana in it's capacity as the owner and manager of the Santa Ana City Jail, and also the Immigration and Customs Enforcement who is ultimately responsible for our detention. Since the SACJ does not have enough staff to operate the facility, detainees are being locked down unnecessarily for long periods during the last three weeks, and are being denied legal client-attorney phone calls, access to the law library and dayroom, and losing the ability to prepare for our immigration court hearings. The sole purpose of immigration detention is to assure that detainees will appear at court hearings, and the SACJ is preventing us from working on our respective forms of relief due to these unnecessary lock downs. It is also causing unnecessary mental and physical harm and we are all ill as a result.

130

Detainees and relatives have already
complaint in person and in writing, but our
complaints have been ignored.
Therefore we are reaching out to you to
end these violations.

Sincerely,
the detainees of module 4B

| Name | A # | Signature |
|------|-----|-----------|
| 1. Nicole Albrecht | 206-407-728 | |
| 2. Margarida Eshan | 070-250-507 | |
| 3. ARAKSI TORRAMOZHYAN | 028-137-85B | |
| 4. Claudia Miranda | 082-333699 | |
| 5. GLORIA HERNANDEZ | 094-94-51-00 | GLORIA Hernandez |
| 6. Cristina Gatica | 205-714-896 | |
| 7. Claudia Chavez | 072.060752 | Claudia Chavez |
| 8. Carter, Bertina | 042208161 | |

131