Name: NICOLE ALBRECHT

Address: 11064 MISSISSIPPI AVE

LOS ANGELES, CA 90025

Phone: 310-293-1847

Fax: _____

In Pro Per

FILED
CLERK, U.S. DISTRICT COURT

JUN 2 9 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE ALBRECHT | CASE NUMBER: |
| Plaintiff | SACV15-00451 GW (SS) |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY / IMMIGRATION AND CUSTOMS ENFORCEMENT | Supporting documents, exhibits- Habeas Corpus |
| Defendant(s). | TITLE OF PLEADING |

Exhibit 17- No Grounds to Continue Detention

Exhibit 18- Synopsis / Albrecht Case Overview

Exhibit 19- Jayson Albrecht Illegal Extradition

Exhibit 20- BIA Bond Appeal Denial

Exhibit 21- Bond Memo from Judge John Walsh

Exhibit 22- Unlawful, Inadmissible Statement submitted by "The Neighbors"

X _Nicole_ _____

6/29/15

CV-127 (09/09)          **PLEADING PAGE FOR A SUBSEQUENT DOCUMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

X _Nicole_

6/29/15

25

26

27

28

Habeas Corpus / Case # SACV15-00451 GW (SS) / 6/29/15

In the Matter of:

NICOLE ALBRECHT

Petitioner
Pro Se

A# 206 407 728

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### BY PETITIONER

NICOLE ALBRECHT,
Petitioner

v.

DEPARTMENT OF HOMELAND
SECURITY, and IMMIGRATION
AND CUSTOMS ENFORCEMENT

Habeas Corpus / Case #
SACV15-00451 GW (SS)

**Response to DHS Rebuttal
For a Writ of Habeas Corpus**

Date: 6/29/15        Miscellaneous Filings and (Other Documents)

Nicole ALBRECHT- Habeas Corpus  / Case # SACV15-00451 GW (SS)

<u>Table of Contents</u>

| <u>Exhibit</u> | <u>Description</u> | <u>Page</u> |
|---|---|---|
| Introduction | Petitioner Reply | 1-11 |
| 17 | No Grounds to Continue Detention | 12-16 |
| 18 | Synopsis / Albrecht Case Overview | 17-30 |
| 19 | Illegal Jayson Albrecht Extradition | 31-42 |
| 20 | BIA Bond Appeal Denial | 43-44 |
| 21 | Bond Hearing Memo- Judge Walsh | 45-47 |
| 22 | Unlawful, Inadmissible Statement by " Neighbors" | 48-53 |

Habeas Corpus  / Case # SACV15-00451 GW (SS)

**Introduction:** Petitioner- Nicole Albrecht Reply to DHS Habeas Corpus Rebuttal

The petitioner is stating that the rebuttal from the DHS regarding her detention is incorrect, based on the additional documents and evidence provided, and that the court should grant her release immediately from detention, as she has no convictions,  and no proof of a flight risk or danger to the community. Also, after requests from petitioner, and her attorney for 9 months, via (4) Humanitarian Paroles, and countless other documents, the petitioners DHS CASE FILE has never been corrected, and ICE / DHS continued to give out false conviction information about the petitioner, during the entire duration of her detainment, including throughout her asylum and bond hearings, which have decided her continued detainment. This is a CHANGED CONDITION, and it must be adjudicated sensibly, and lawfully by this court, meaning, the petitioner has the right to have her DHS CASE FILE corrected immediately. This is based upon an "NTA", or Notice To Appear document, where the petitioner has the right to expose incorrect charges or convictions, and the burden of proof lies with the DHS to prove the charges or convictions otherwise, and they have not done this. Therefore, she has the right to an NTA meeting with the DHS to correct her file, and since she is on appeal at the 9th circuit court, with no convictions, she has the immediate right to be released from detention, to work on her appeal from the outside.

Pertaining to Ground Three- The DHS / ICE also allowed non-credible evidence, and also an illegally doctored statement from "the neighbors"-Alexandra Paul and Ian Murray, (Marguerite LaLonde letter) as to which the petitioner will be filing state and federal charges against "the neighbors" for knowingly submitting this illegally in a federal court proceeding. The DHS / ICE were also immediately informed of this (illegally, doctored statement), per the June 10th, 2015, No Grounds

To Continue Detention letter from attorney Joshua Effron to the DHS, and the DHS has done nothing about this. The DHS must also file charges against "the neighbors", for knowingly submitting a doctored statement in a federal court hearing, and for breaking applicable laws, with the sole purpose to <u>falsely imprison the petitioner further,</u> to keep the petitioner from attending a criminal court proceeding against "the neighbors".  The charges against "the neighbors" being, witness tampering, obstruction of justice, perjury, and other possible charges.

SEE additional documents supporting all grounds, and supporting the petitioners release from detainment:

- Exhibit 17- No Grounds to Continue Detention- From attorney to the DHS.
- Exhibit 18- Synopsis / Case Overview E-mail from attorney to Chief Counsel.
- Exhibit 19- Jayson Albrecht Illegal Extradition letter-from attorney to DHS.
- Exhibit 20- **BIA Bond Appeal Denial- Conflicting, Incorrect, False Information.
- Exhibit 21- Bond Memo from Judge Walsh- Conflicting, Incorrect, False Information.
- Exhibit 22- Unlawful, Inadmissible Statement submitted by "The Neighbors".

## ** <u>The BIA Bond Appeal Denial, May 22nd, 2015</u>

Please read the following incorrect, false and misleading information in denying the petitioners Bond Appeal, along with petitioner's rebuttal. This false information is why the appeal was denied, (since incorrect information was also taken from IJ bond memo- explained later), and this court must acknowledge, and deliver the correct decision, based upon being informed of this false information allowed by the DHS and ICE.

<u>W</u>e affirm the Immigration judge's bond decision, that the DHS established by clear and convincing evidence, that the respondent is a danger to the community. The record indicates, the respondent was issued <u>more than one</u> restraining order against the victim, and then violated the restraining orders (plural). This is not true, and Alexandra Paul and Ian Murray performed perjury by stating this, as there is only (one restraining order, as the protective order

2

is a part of the RO, not an additional order), and it is the burden of the DHS and court to prove this, which they did not, as based upon an "NTA", or Notice To Appear meeting. This is false information that was purposefully used to deny the petitioner bond. Also, it has never been proven that the RO was violated, as it has not reached trial yet.

*We* considered the respondents arguments on appeal, and acknowledge that the respondent has apparently not been convicted of any criminal offense in this country. It's a little late for the BIA to state this fact, after the DHS and ICE have been stating that the petitioner had multiple convictions for 8 months or so, which helped to deny her original bond, but now they can simply state that they were apparently incorrect?

*N*onetheless, given the seriousness of the respondent's recent actions, we agree with the IJ that, upon the totality of the factors, the DHS has established, by clear and convincing evidence, that the respondent is a danger to the community and a flight risk. Therefore, the detention has been shown to be justified. This is completely incorrect. Please explain what recent actions the BIA are referring to? The RO was originally opened in 2013, so it is completely misleading and false to state that anything, of a serious nature or not, has happened recently regarding the RO, and the petitioner, against the so called "victim". This in no way can constitute the DHS or the court to clearly, or convincingly, prove danger to the community or a flight risk against the petitioner. In fact, the only recent actions that have actually occurred in this case, were when the "alleged victim" Alexandra Paul attempted to run the petitioner and her family off a canyon road on August 23rd, 2014, in which a criminal threat report was filed, a civil TRO was served against her, and then, Alexandra Paul in retaliation, contacted ICE the following day to have the

3

family arrested, using ICE as a way of preventing the family from attending court against her

and her husband. These are the only recent actions, and they were not performed by the

petitioner. The BIA or the IJ, based on incorrect information, have proven nothing. We ask the

DHS or this court to prove otherwise based on this evidence, since it's their burden to do so?

From DHS Rebuttal PG-1- (DHS Statements in **BOLD**)

**Petitioner's claims fail because she has failed to exhaust her administrative remedies; she already**

**had a bond hearing in front of an immigration judge and she was denied release on bond.**

The petitioner <u>has</u> exhausted her administrative remedies, since the BIA Bond Appeal was denied.

Note- Bond denial based on incorrect, false, and inadmissible information, in the petitioners DHS

case file, (and also illegally doctored statement) which will be explained again in detail.

**This court lacks jurisdiction to review the immigration judge's discretionary bond determination,**

**therefore, the petition should be denied.**

The court must address, and review the Immigration Judge's discretionary bond determination,

since incorrect, false, and inadmissible information contained in the petitioners DHS CASE FILE,

(including, illegally doctored statement) submitted by "the neighbors- Alexandra Paul and Ian

Murray", which was intentionally provided to the Immigration judge / court by the Dept. of

Homeland Security and ICE, to defame the petitioners character, and to damage her credibility and

good name. See Bond memo.

- <u>Pertaining to Ground Three</u>- The false DHS CASE FILE and  incorrect statements include; the

  petitioner has (2) convictions, and also violated (2) restraining orders or protective orders.

  Both statements are untrue, as the petitioner has NO CONVICTIONS, and was issued (ONE)

restraining order, (the protective order is part of the RO) which has not been proven to have

been violated yet, since the case has not yet gone to trial, and that the DHS is the actual agency

preventing the petitioner from attending criminal court. Can the DHS please explain this, since a

"significant public benefit" is one of the clear eligibilities of our attorney's request for

Humanitarian Parole, or to sign-off on a U-Visa?

Bond Hearing Memo from Judge Walsh- The IJ made incorrect, false statements in his memo,

(before the appeal denied), stating that the petitioner had violated (2) restraining orders, (when

only one exists), and that the petitioner had been stalking an actress and her husband (which has

yet to be determined, since it has not gone to trial yet). The IJ also specifically mentioned the letter

from ex-roommate Marguerite LaLonde, and used that against the petitioner, as which we now

know, was a purposefully doctored, and inadmissible statement or letter, submitted illegally by "the

neighbors", Alexandra Paul and Ian Murray.

NOTE- Even if the petitioner were to be convicted of one civil RO violation (which she has not),

it is a misdemeanor, imposed by a small fine, and not a deportable offense in the immigration

system. Due to the incorrect information in her DHS CASE FILE, preventing her to be released,

it's such as if, that the petitioner has already been convicted of a crime from a different court,

and she is being forced to serve time for the offense, which is not an offense imposed by jail

time. This is completely unheard of, and is not based on any legal guidelines of due process,

even with an immigration detainee.

5

- <u>Pertaining to Ground Three</u>- Illegally tampered document / statement from ex-roommate Marguerite Lalonde, (attached) submitted to the Department of Homeland Security by "the neighbors" Alexandra Paul and Ian Murray, around January 7th, 2015, to use against the petitioner in her March 4th, 2015 Rodriguez Bond hearing. This statement was from a prior Restraining Order attempt by Alexandra Paul filed on August 22nd, 2013 (case # SS023704), against the petitioner, which was dismissed by a judge due to insufficient evidence. Meaning the statement was adjudicated, dismissed, and now inadmissible. Therefore, Alexandra Paul and Ian Murray intentionally submitted the same document, to appear as if it was part of the active restraining order against the petitioner, knowing that it was not. Please see the detailed differences of the statement from the DISMISSED RO described below:

<u>Original Statement / Letter-Dismissed</u>

- See statement cover page and RO front page- CH-109 (August 22nd, 2013) with corresponding case #SS023704

- See page-1 of the original Marguerite LaLonde letter- there is no writing on TOP OF PAGE

- SEE page-2 of the original Marguerite LaLonde letter- bottom of page, it is signed by Marguerite LaLonde, 9/12/13, along with a signed, handwritten statement.

<u>Same Statement / Letter which has been doctored- Used again against the petitioner on March 4th, 2015 Rodriguez Bond hearing- To appear as if it was part of the active, "alleged" RO violation against the petitioner, which it is not.</u>

- See page-1 of Marguerite LaLonde letter- TOP OF PAGE, with handwritten words- Court statement of Marguerite LaLonde. This is the handwriting of Alexandra Paul.



- See page-2 of Marguerite LaLonde letter- BOTTOM OF PAGE, the letter is not signed by Marguerite LaLonde, and it has no signed, handwritten statement.

RE: Obstruction of Justice"Misleading conduct" may consist of deliberate lies or "material

omissions" (leaving out facts which are crucial to a case). It may also include knowingly submitting

or inviting a judge or jury to rely on false or misleading physical evidence, such as documents, maps,

photographs or other objects. Any other "trick, scheme, or device with intent to mislead" may

constitute a "misleading conduct" form of obstruction.

From DHS Rebuttal PG-4- **Petitioner has provided no argument that the government will not be able to remove her to Germany in the reasonably foreseeable future, so the court should deny the petition.**

Pertaining to Ground Six- This is incorrect based on many factors- Due to the DHS / ICE denying

petitioners release, with no convictions, and no flight risk or a danger to the community, (even

though other detainees are being released with multiple convictions), the petitioner is unable to

attend criminal court due to the DHS, which is hypocritically denying the petitioners immediate

eligibility for U-Visa status now, as to which the DHS should sign-off on immediately- (significant

public benefit), and additionally, she is also eligible for humanitarian parole based on the same

eligibilities of significant public benefit. Therefore, the petitioner is married to a U.S. citizen, and can

adjust her status in the United States utilizing her right to a Humanitarian Parole release, in which

the stipulation includes a visa waiver overstay. Previously, AFOD Art Trevino, and  ICE supervisor

Quinonas denied petitioners humanitarian parole request for this reason, presented by petitioners

attorney Joshua Effron, who then had to educate them that, a detainee who is released on

humanitarian parole, is eligible to adjust their status, even when detainee is a visa waiver overstay.

7

Meaning, ICE and the DHS were not aware of their own policy, and available relief options to the petitioner. And after confirming this was true through DHS attorneys, they still declined to give the petitioner this eligible relief. We are asking that the court, and the DHS to explain why?

OTHER GROUNDS NOT MENTIONED BY DHS REBUTTAL

Ground Five- Civil Rights Violations

James A. Musick Facility- Petitioner experienced detrimental emotional and physical harm, mistreatment and abuse at this facility for the first two months of her detention, including an early miscarriage, which would have allowed her to leave detention in the beginning. Petitioner was targeted and discriminated against by ICE officers, and jail staff repeatedly, with over a dozen complaints filed with ICE and the DHS / OIG, and other authorities. This targeted discrimination also led to the retaliation by the James A. Musick Facility, by transferring the petitioner to The Santa Ana City Jail, where conditions are tailored for criminals with convictions, who need correction. The petitioner is a detainee without convictions, she should not be locked up in a cell, and she does not need correction! Horrible medical conditions have been the norm in this facility, in addition to the denial of detainee-attorney legal phone calls prior to her immigration court hearings, in which she lost due to insufficient counsel prior to those hearings, which is her constitutional right, in which violated her civil rights and civil liberties.

Ground Four- Illegal Extradition of 11 year old brother Jayson Albrecht ( THE DHS IS FAILING TO MENTION THIS)

Petitioners brother was illegally extradited out of the United States to Germany on December 17th, 2014, when he had the right to remain in the U.S. until the adjudication of his asylum cases. His asylum cases remain pending at USCIS today. The petitioners detainment is preventing her from using resources outside of detention to remedy the problem ICE and the DHS has created by the

illegal extradition, and Nicole Albrecht has the right to locate, assist, and arrange for her brother's return to the United States, since their mother does not speak English. Regarding Jayson's mother, Petra Albrecht- After 6 days in detainment, on September 10th, 2014, Jayson's mother, Petra Albrecht was purposefully separated by ICE and the DHS from the petitioner, (her daughter) in James A. Musick, and transferred 100 miles further South from her son, to Otay Detention Facility in San Diego, CA. which is not logical, since her case is handled through the Los Angeles ICE Field Office. The separation caused a predictably engineered outcome, as Petra Albrecht does not speak English. Therefore, ICE and the DHS broke every rule of Facilitating Parental Rights, as she was never allowed to visit her son again, she was prevented from attending her own dependency court hearings, and she inevitably lost her son to an illegal extradition, while being purposefully locked up, and unable to communicate properly to protect her son, who was attached to her asylum claim. To this day, she is still being denied translators, so she is unable to communicate with her ICE officers, including officer Venetta, who is out of the LA Field Office, but who has been completely missing, as if he doesn't exist, since the first day of Petra's detainment at Otay. She also suffers from many medical conditions caused by her detainment in Otay, even though the facility and ICE cheer that the facility delivers "excellent medical care" , which is a complete lie. This is also supported by numerous complaints filed to the DHS / OIG. She walked into Otay as a healthy person, she is now a cripple of sorts, due to the sub-standard, inhuman treatment she is receiving at Otay. We would like the DHS to explain this, and how this constitutes "excellent medical care" at this facility?

Conclusion

CHANGED CONDITIONS and Updated Information-

To adjudicate this properly, the court must look at the presented evidence, documents and

statements from the petitioner, which provide proof that the DHS are incorrect in their assumption

that the petitioner is not eligible, or does not deserve to be released, while on appeal, to work on

her case outside of detention. This is further reinforced by the petitioner having no convictions,

which are the only criteria used in order to continue detaining someone after 180 days.

It is also a paramount issue for this case, that the petitioner has proven that a CHANGED

CONDITION exists, and it must be adjudicated sensibly, and lawfully by this court, meaning, the

petitioner has the right to have her DHS CASE FILE corrected immediately, based on a Notice To

Appear type meeting, either with an immigration judge, or with the DHS, and this is the detainees

right to have corrected before the detainee goes to court, or attends a bond hearing, and this was

not done, and it has still not been done to this day. Also, if the detainee contests the incorrect

charges or convictions against her, (as to which the petitioner and attorney has done many times,

but falling on deaf ears), it is the burden of the DHS to produce the documents and prove

otherwise, which they cannot do so, because no convictions or violations exist.  And since the

petitioner is on appeal at the 9th circuit court, with no convictions, and since she did not violate (2)

RO's or a protective order, and it has still not been proven that she actually violated "any restraining

order", since the case has not gone to trial, she has the immediate right to work on her appeal

outside of detention after 180 days. Again, this court must also take into consideration that ICE and

the DHS, also, continue to release, daily, detainees who actually have multiple convictions, and per

their own criteria, state that those detainees are NOT ELIGIBLE for release on bond or other relief,

but they hypocritically release them anyway. Sense this is the case, how can they justify the

continued detainment of the petitioner, with no convictions? This is targeted discrimination against

the petitioner? We ask this court to explain otherwise?

Also, the DHS and ICE are clearly aware that, the detainee has (2) separate relief options available

to her <u>at any time during her detention</u>, that of an immigration judge, and the Dept. of Homeland Security or ICE, which can release the detainee on bond, her own recognizance, U-Visa, Humanitarian Parole, or other options, and this is the standard protocol to release a detainee; when the detainee proves a CHANGED CONDITION, without having any convictions.

For these reasons, along with the additional documentation supporting the petitioner, this court must grant the petitioner an immediate release, so she can work on her appeal from outside detention, and to allow her to locate, and assist her brother to be brought back to the United States to adjudicate his asylum claims.

Sincerely,

Nicole Albrecht

# EXHIBIT 17



Immigr( )ep, Inc.
PU Box 4736
Rolling Hills Estates, CA 90274

P: (310) 427-7705
📠: (310) 988-2886
✎: info@immigrantrep.com
🌐: www.immigrantrep.com

**IMMIGRANT REP**

June 10, 2015

Nicole Albrecht, A# 206 407 728
RE: No Grounds to Continue Detention

To: The Department of Homeland Security

My name is Josh Effron, and I represent the above-named Immigration Detainee. (My G-28 is already in the file.) The purpose of this letter is to demonstrate the Constitutional and civil rights violations by ICE / DHS, when they have clearly overstepped their jurisdiction in the applicant's case.

Specifically, as already demonstrated in previous letters and in the paperwork that is already in the file, Ms. Albrecht's Immigration case began when she was in the midst of a dispute between herself and her neighbors, Alexandra Paul and Ian Murray ("The Neighbors").

The Neighbors had threatened Ms. Albrecht's life, and, as a result, Ms. Albrecht sought a restraining order against them. The Neighbors, in retaliation, made allegations against Ms. Albrecht and sought a restraining order against her. This case has not been able to be adjudicated in criminal court, because Ms. Albrecht has been prevented from going to criminal court due to her detention by Department of Homeland Security.

In fact, she was initially picked up by ICE agents while en route to a criminal court hearing regarding the restraining order, but due to the arrest, she never made it to court; had she not been preventing from going to court, the falsity of the accusations against her would have come to light, and the entire restraining order matter from 2013 would have been dismissed by the judge, as criminal court supersedes civil court. Also, Ms. Albrecht has not missed any court hearings in the past, as per the docket from criminal court, which is yet further evidence that she is not a flight risk.

At a custody redetermination hearing on March 4, 2015, DHS presented new letters from The Neighbors (but did not present The Neighbors themselves for cross-examination). When asked about the allegations against her, Ms. Albrecht asserted her Fifth Amendment right against self-incrimination, because the matter is still pending before the criminal court. Rather than continue with the bond hearing, the Immigration Judge immediately stopped the proceedings and denied Ms. Albrecht's bond. This denial was appealed to the Board of Immigration Appeals.

In the meantime, Ms. Albrecht has remained detained, as a result of which her medical needs have been denied. Furthermore, her brother was extradited from the United States back to Germany before a decision could be reached on his pending I-589 for asylum from Germany, an

obvious violation of the very purpose behind the I-589 process and something that both Ms. Albrecht, as well as her mother, Petra Albrecht (who is also detained by DHS) attempted to prevent without success (due to being detained by DHS).

Ms. Albrecht has made numerous requests to be released from custody, among other reasons, so that she can attend to the medical problems that have been brought about by her continued detention and so that she can work to correct her brother's unlawful return to Germany during the pendency of his I-589, something that she can only do using the resources available to her outside of Immigration detention.

These requests are already in the file and have been denied without addressing the concerns brought up in the requests.

The officers inside of the Santa Ana City Jail (where Ms. Albrecht is being detained), specifically, ICE Deportation Officer Debbie Leon, have stated that Ms. Albrecht is dangerous due to her "convictions," even though she has no convictions and only has the restraining order matter pending in the California criminal court. By continuing to detain her, DHS has been preventing Ms. Albrecht from attending the hearings in California court that were to be held in connection with the restraining order.

The DHS cannot simply take a legal matter that is still pending in criminal court, remove it from criminal court, and drag the matter into Immigration Court and proceedings, for the sole purpose of satisfying its own goals to keep Ms. Albrecht detained, before the charge or case has actually gone to trial, and before it has been adjudicated against her.

Put another way, the DHS cannot set aside any action, or decision from criminal court, and make its own ruling against Ms. Albrecht when the criminal court has yet to convict her of the restraining order violation with which she has been charged (charge is a misdemeanor, with no violence involved, and this is not a deportable offense). In fact, the civil restraining order (case # SS 023906) that is being used by the DHS against her to keep her detained after 180 days has been reopened in criminal court, which means that it leaves the decision completely open as to whether Ms. Paul, in particular, was actually stalked by Ms. Albrecht in 2013.



It should be noted (as the attached documents demonstrate) that Ms. Paul's claim (that Ms. Albrecht had stalked and harassed her) **was** originally **dismissed** by a judge on September 12, 2013, due to insufficient evidence (case# SS 023704). This was, in part, based on a **declaration** from Ms. Albrecht's **former roommate Marguerite LaLonde's, which Ms. LaLonde signed on September 12, 2013.**



**However, this same declaration from Ms. LaLonde was offered by DHS as evidence during Ms. Albrecht's *Rodriguez* bond hearing, on March 4, 2015, to make it appear as if the restraining order from November 2013 had been issued partially based on Ms. LaLonde's declaration. As discussed, this was not the case, and as a result, Ms. LaLonde's declaration was inadmissible due to lack of relevance.**

**(Please also see the attached declarations from Zoe Reeves, and Maryam Pashmforoosh, who persuasively impeach the character of Marguerite LaLonde as either a credible witness or as an honest and good citizen of this country.)**

Additionally, Ms. Albrecht was able to reach a mutual agreement with The Neighbors on September 12, 2013, to stay away from each other, but Ms. Paul, as the documents prove, violated the agreement within weeks. (See Lillie Grossman's witness declaration, and copy of agreement.) The report about the violation resulted in the retaliation by The Neighbors, and their next attempt at obtaining a restraining order against Ms. Albrecht, which occurred in November, 2013. The hearing was held by a substitute judge and not by the assigned judge who had already dismissed Ms. Paul's first attempt in September 2013, which allowed the couple to receive preferential treatment based on Ms. Paul's former celebrity status as an actress, when the judge did not rely on actual evidence, and issued a restraining order against Ms. Albrecht in November 2013 (Case # SS 023906).

The legal battle between The Neighbors and Ms. Albrecht, wherein The Neighbors branded Ms. Albrecht a stalker and initiated a court case in criminal court against her, after she was falsely arrested for violating a restraining order on May 22, 2014, all started as a result of having a friendship with Ms. Paul, and then turning down unwanted sexual advances from Ms. Paul and her husband Ian Murray (see declarations from Melissa Hines, David Schwartz, Harmin Greual, Zach Sherman, Donna Sternberg).

Note: The charge leveled against Ms. Albrecht was filed in retaliation for the police report and restraining order that Ms. Albrecht had filed against Mr. Murray (date to appear, May 28, 2014), to take the focus away from the crime he committed against Ms. Albrecht. This enabled The Neighbors to further harass and victimize Ms. Albrecht and her family, which continues to this day (see e-mails to Public Defender Ashley Price-August 29, 2014, and August 22, 2014).

The timeline is as follows:

☐ April 29, 2014: Ian Murray threatened Ms. Albrecht's life. Ms. Albrecht obtained a temporary restraining order (TRO) against him.
☐ May 22, 2014: Ms. Albrecht was falsely arrested for violating a restraining order against Alexandra Paul, as a way to take the focus away from the TRO that Ms. Albrecht had already obtained against Ian Murray.
☐ May 28, 2014: The TRO against Ian Murray was dismissed because Ms. Albrecht could not appear in court, due to her remaining locked up on May 22, 2014 (see above), even though her bail had been paid immediately upon her incarceration. Court case scheduled against Ms. Albrecht for alleged restraining order violation, for **September 4, 2014**.
☐ August 23, 2014: Alexandra Paul attacked Ms. Albrecht in an incident of road rage, using a vehicle trying to run her and her family (as well as Richard Wheeler), off a canyon road in Pacific Palisades, CA. (There were four witnesses.)
☐ August 25, 2014: Ms. Albrecht filed a criminal threat report and obtained a TRO against Alexandra Paul.
☐ August 26, 2014: Alexandra Paul was served with the civil TRO, date to appear: September 16, 2014.

14

☐ August 27, 2014: **Just one day after she was served with a temporary restraining order,** ordering Ms. Paul to stay away from Ms. Albrecht, Ms. Paul contacted ICE to put the wheels in motion for the family's arrest on September 4, 2014, in order to misuse the immigration enforcement process as way of ensuring that the Albrecht's would no longer be available as witnesses against her. In her communication to ICE, Alexandra Paul stated that the Albrecht family were illegal aliens (something that she had no power to ascertain), in order to recruit ICE to take care of her personal legal matter, by removing them as witnesses against her. Of course, Alexandra Paul failed to inform ICE that she had just been served a TRO the day before.

☐ September 4, 2014: As they were on their way to court to testify in a pre-trial hearing regarding the alleged restraining order violation (see notes above), ICE agents arrested Ms. Albrecht and Petra in what can only be described as a "commando-style" raid of the type usually reserved for terrorists and dangerous criminals. Alexandra Paul knew that the road rage TRO would destroy her court case against Ms. Albrecht, and all of her lies would come to light, and the charges would have been dropped against Ms. Albrecht, and Ms. Paul may have faced criminal charges. The sole purpose of her contact with ICE was to have the entire family deported. **Ms. Albrecht has missed three (3) court dates due to what can only be described as witness tampering (namely, detaining Ms. Albrecht and preventing her from testifying at the relevant hearings in criminal court), and two (2) restraining orders were dismissed as a result.**

As a government agency, ICE / DHS is not, and cannot allow itself to be used as a weapon by private parties (Alexandra Paul and Ian Murray) to recruit them as their own legal representatives and judge, since ICE / DHS has no jurisdiction over an alleged court order violation, and cannot investigate stalking and harassment matters. Therefore, any documents, letters, statements, or alleged evidence submitted from The Neighbors to DHS cannot be categorized as credible material and used against Ms. Albrecht until and unless she is, in fact, convicted of the alleged charge in criminal court, as the criminal court has yet to find credible any of this alleged evidence. Nonetheless, the DHS provided the Immigration Court with false and legally inaccurate information and documents from The Neighbors by simply assuming that they were credible, even though the previous and following statements prove they are not.

This influenced and led to confusion within the DHS, and also during the *Rodriguez* bond hearing on March 4, 2015, as when IJ Walsh asked on page 11 (see court transcript, line 3 and line 21), as IJ himself acknowledged that Ms. Albrecht had not yet been able to attend criminal court to defend herself against the charge, but he later used this alleged evidence to deny her bond in the hearing.

Furthermore, Ms. Albrecht is being accused of repeatedly violating two separate restraining orders: a restraining order and a protective order, per the statements from The Neighbors, submitted to the DHS on January 7, 2015, in which The Neighbors stated that Ms. Albrecht violated these orders 29 times before she was arrested. This statement is a complete lie from The Neighbors fashioned in such a way as to make it appear as if Ms. Albrecht violated two separate restraining orders, to show a pattern of misconduct. First, it has never been proven that Ms. Albrecht ever violated a restraining order, and secondly, The Neighbors were issued a protective

order after Ms. Albrecht's arrest on May 22, 2014, as standard procedure while Ms. Albrecht was still in custody. **This document is not an additional order against Ms. Albrecht.**

It violates common sense to assume that the statements from The Neighbors are true: if Ms. Albrecht would have violated not only the restraining order, and additionally, the protective order, the charge against her would have resulted into a conviction against her, **and she has no convictions**. DHS does not know The Neighbors, nor the relationship between the parties, and cannot simply take their word for anything, especially in light of the motivation of The Neighbors to keep Ms. Albrecht detained and removed from the United States, as a way of preventing her from attending court hearings to pursue The Neighbors legally (see Alexandra Paul and Ian Murray statements from January 7, 2015).

The previous statements and attached documents fully demonstrate that there is no possibility for Ms. Albrecht to currently be considered guilty of anything. (This is something that can only be determined by the criminal court in California once Ms. Albrecht is given the ability to appear before that court.)

Consequently, there is no rational justification for DHS' contention that it has established by clear and convincing evidence that Ms. Albrecht's ongoing detention is justified, due to her supposedly posing a danger to the community and being a flight risk. This would seem to thrust upon Ms. Albrecht a burden that has not been applied to other detainees who have been released, many of whom have actual serious convictions. (Again, Ms. Albrecht has no convictions.)

For the foregoing reasons, the Department of Homeland Security can no longer turn its head away from this evidence, and these are clear grounds to immediately release Ms. Albrecht, to ensure that she will be cleared of all wrong doing in this case.

We thus request Ms. Albrecht's immediate release from Immigration Detention.

Sincerely,

Joshua Effron, Esq.
President
Immigrant Rep, Inc.

16

# EXHIBIT 18

Print                                                                                                    Close

# Re: ** Nicole Albrecht, A# 206-407-728 , Petra Albrecht, A# 206-409-411

**From:** **Joshua Effron, Esq.** (effron@immigrantrep.com)
**Sent:** Mon 5/11/15 11:07 AM
**To:** sandra.anderson@dhs.gov

5 attachments
LETTER AND SA POLICE REPORT.pdf (111.0 KB) , Memorandum from ICE re Facilitation Parental Interests - Article about.pdf (2.7 MB) , Memorandum from ICE re Facilitation Parental Interests.pdf (206.0 KB) , E-Mail from Richard Wheeler to Sandra Anderson re Jayson Albrecht's Illegal Extradition from USA.pdf (74.4 KB) , L-F Nicole to ICE re Discrimination (Both Petra and Nicole).pdf (372.7 KB)

Dear Ms. Anderson,

Thank you so much for taking the time to speak with me a few days ago regarding the immigration cases for my clients, Nicole Albrecht, and her mother, Petra Albrecht. (My G-28's are in the files for both of them.)

As we discussed, ICE and the DHS appear to have successfully performed, and continue a "calculated stall" in delivering justice for them, as we have been tossed around from office to office (more detail to follow in this letter). It is indefensible that this has been allowed to continue to this degree, and we are requesting that these stall tactics end with you today.

We are asking from you, based on the facts submitted regarding the violations by ICE and the DHS, the complete disregard of ICE / DHS policies and guidelines; the illegal extradition of Jayson Albrecht; and the treatment and abuses of Nicole and her mother, Petra Albrecht while detained by ICE, that you finally deliver justice and have these two detainees released immediately via Humanitarian Parole, or bond.

Nicole and Petra Albrecht continue to pay for the mistakes and violations of ICE and the DHS, and their suffering needs to end. Also, please note that Nicole is married to Richard Wheeler, a U.S. citizen. As a result, both Nicole and Petra have a permanent place where they will be residing upon their release and are thus not flight risks.

Also, if you recall in December 2014, Nicole's husband, Richard Wheeler, while urgently sending correspondence to ICE, the DHS, the German Embassy, the German Consulate, and CPS, also sent an e-mail directly to you on December 16, 2014, asking you for assistance to stop the illegal extradition of Jayson Albrecht, **A# 206-409-422** (the younger child of Petra and younger brother of Nicole). (See attached e-mail.) However, you indicated at the time that you would not assist them, and Jayson was ultimately extradited back to Germany and placed in the custody of the very same German government agency upon which his I-589 - **which remains pending** - was based.

17

## Background

Petra Albrecht is the mother of Nicole Albrecht. Both of them are citizens of Germany and are currently in the custody of the Department of Homeland Security. Petra is detained in the Otay Detention Facility, while Nicole is currently detained in the Santa Ana City Jail (under contract with Immigration and Customs Enforcement).

In 2011, both of them entered the United States on the Visa Waiver Program, along with Petra's eleven-year-old son (and Nicole's brother), Jayson Albrecht . Petra and Nicole have not left the United States since then. (Jayson remained in the United States until approximately December 18, 2014, at which time he was forced to return to Germany, in a joint operation conducted by the governments of California and Germany, discussed below.)

The reason why they remained in the United States was out of fear of persecution, torture, and retribution in Germany due to their failure to abide by Germany's policies compelling attendance in government schools. Both Petra and Nicole were involved in Jayson's homeschooling – in violation of German law – and now face persecution and torture in Germany as a result. Jayson also faces persecution in Germany, **in the form of removal from his mother's home by German government officials** (due to her failure to send him to government-run schools) and through that government forcing him to attend government schools, in violation of the values with which he has been brought up.

For almost three years, the Albrechts continued to live in the United States without incident. Then, in 2013, the Albrechts began to be systematically victimized by Alexandra Paul and Ian Murray ("Neighbors"), their neighbors in Los Angeles. After Nicole turned down unwanted sexual advances from both, the Neighbors leveled several unfounded accusations leveled against Nicole, wherein they branded Nicole a stalker and had her arrested on May 22, 2014, in retaliation for the police report and restraining order that Nicole had sought against Mr. Murray (date to appear in court: May 28, 2014), and initiated a court case against Nicole, which enabled the couple to harass and victimize the Albrecht family to no end, which continues to this day. The timeline is as follows:

- April 29, 2014: Ian Murray threatened Nicole's life. Nicole obtained a temporary restraining order (TRO) against him.
- May 22, 2014: Nicole was falsely arrested for violating a restraining order against Alexandra Paul, as a way to take the focus away from the TRO that Nicole had already obtained against Ian Murray.
- May 28, 2014: The TRO against Ian Murray was dismissed because Nicole could not appear in court, due to her remaining locked up on May 22, 2014 (see above), even though her bail had been paid immediately upon her incarceration. Court case scheduled against Nicole for alleged restraining order violation, for **September 4, 2014**.
- August 23, 2014: Alexandra Paul attacked Nicole in an incident of road rage, using a vehicle trying to run her and her family (as well as Richard Wheeler), off a canyon road in Pacific Palisades, CA. (There were four witnesses.)
- August 25, 2014: Nicole filed a criminal threat report and obtained a TRO against Alexandra Paul.
- August 26, 2014: Alexandra Paul was served with the civil TRO, date to appear: September 16, 2014.
- August 27, 2014: **Just one day after she was served with a temporary restraining order,** ordering Ms. Paul to stay away from Nicole, Ms. Paul contacted ICE to put the wheels in motion for the family's arrest on September 4, 2014, in order to misuse the immigration enforcement process as way of



ensuring that the Albrechts would no longer be available as witnesses against her. In her communication to ICE, Alexandra Paul stated that the Albrecht family were illegal aliens (something that she had no power to ascertain), in order to recruit ICE to take care of her personal legal matter, by removing them as witnesses against her. Of course, Alexandra Paul failed to inform ICE that she had just been served a TRO the day before.

- September 4, 2014: As they were on their way to court to testify in a pre-trial hearing regarding the alleged restraining order violation (see notes above), ICE agents arrested Nicole and Petra in what can only be described as a "commando-style" raid of the type usually reserved for terrorists and dangerous criminals. Alexandra Paul knew that the road rage TRO would destroy her court case against Nicole, and all of her lies would come to light, and the charges would have been dropped against Nicole, and Ms. Paul may have faced criminal charges. The sole purpose of her contact with ICE was to have the entire family deported. **Nicole has missed three (3) court dates due to witness tampering and obstruction of justice, and two (2) restraining orders were dismissed as a result.**

Due to Nicole's detention by ICE, she has been unable to vindicate herself in criminal court. The Neighbors contacted ICE in a successful attempt at witness tampering: By having Nicole and Petra placed in immigration custody, the Albrechts were prevented from testifying in criminal court, which would have enabled the falsity of the accusations against Nicole to have come to light.

The charges leveled against Nicole by the Neighbors were again used against her at her *Rodriguez* bond hearing, in which ICE submitted a letter from the Neighbors accusing Nicole of a whole host of actions against them, again painting Nicole as the perpetrator. Then the Immigration Judge asked Nicole whether she had written a letter in violation of a restraining order. Knowing that an affirmative answer to this question could constitute an admission to a crime, Nicole asserted her Fifth Amendment privilege against self-incrimination. However, rather than continuing with further questioning, the Immigration Judge then immediately denied Nicole's *Rodriguez* bond, and that denial is currently on appeal with the Board of Immigration Appeals.

Again, it must be pointed out that Nicole has never been convicted of anything and only has charges against her, which came in retaliation for charges that she had leveled against the Neighbors. Deciding which side is telling the truth is a matter for the criminal court, but the criminal court has been prevented from adjudicating the case because ICE has been detaining the Albrechts starting from September 2014. (In fact, the Albrechts were arrested by ICE when they were on their way to criminal court to testify but, because of their arrest by ICE, never made it to criminal court.)

As a government agency, ICE is not, and cannot allow itself to be used as weapon by private parties (Alexandra Paul and Ian Murray), in their attempts to silence the Albrecht family, who truly are the victims here. Nicole and Petra Albrecht have already been locked up by ICE **for over 180 days**. Nicole is not a flight risk, as demonstrated by the fact that before her detention, she attended every criminal court hearing. Furthermore, she is not a danger to society, and the only reason why the charges against her have gone unanswered is that ICE has been detaining Nicole and Petra Albrecht, thus preventing them from going

19

Outlook.com Print Message

to criminal court to testify in the matters currently pending in the California courts against them (for the restraining order that Ms. Paul filed against Nicole) and against Ms. Paul (for the complaint that Nicole has filed against Ms. Paul for the actions described above). Upon their release from ICE custody, Nicole and Petra will go to criminal court to defend themselves.

Meanwhile, Jayson was taken into custody by the California Department of Child Protective Services and was placed in Dependency Proceedings therein, in a joint action by the governments of California and Germany. It should be noted that the (United States) federal government declined to place Jayson in removal proceedings along with his mother and sister.

In December 2014, Petra and Nicole filed I-589's with the Immigration Court. Jayson filed an I-589 with United States Citizenship and Immigration Services (Receipt Number **ZLA1400174260**), also in December 2014. In addition, Jayson was also attached to his mother's I-589.

Despite Jayson's pending Asylum application, Jayson was extradited back to Germany on or about December 18, 2014, before a decision could be reached on the Asylum application, even though Germany was the country from which he had fled persecution. Being in ICE custody, Petra and Nicole were powerless to prevent this extradition, despite numerous requests to ICE to be released to testify in California court on Jayson's behalf. At a minimum, he cannot be returned to the very country from which he is claiming persecution (Germany) until, unless, his application has been denied, and all administrative appellate and review options have been exhausted.

We have been in contact with Jayson's father in Germany and have found out that Jayson is not with him but, rather, is currently in a German orphanage, away from his family. This is the type of harm from which his I-589 - which remains pending - was meant to protect him (as this rogue welfare youth authority is known for human rights abuses and child trafficking).

**Circumstances Meriting Parole**

Under INA § 212(d)(5)(A), the Department of Homeland Security has the power to parole an alien for urgent humanitarian reasons or significant public benefit. INA § 212(d)(5)(B) goes on to state that a refugee may not be paroled into the United States unless there are "compelling reasons in the public interest with respect to that particular alien require that the alien be paroled into the United States rather than be admitted as a refugee."

The current case meets the requirements for humanitarian parole, inasmuch as there are urgent humanitarian reasons, significant public benefit, and compelling reasons in the public interest weighing in favor of a grant of humanitarian parole:

1. **Humanitarian Reasons and Compelling Reasons**

- ICE disregarded immigration laws and treaties by allowing Jayson to be returned to Germany before the resolution of his Asylum application, exposing him to the same authority from which the family had fled and against which the family is currently applying for Asylum, to return a person to the very country



20

from which he is claiming asylum, before a decision can be reached on the asylum application, violates the entire purpose of the asylum process.

- Nicole and Petra thus need to be released immediately so that they can work with the relevant State and federal authorities to locate Jayson in Germany and secure his immediate return to the United States, so that all three Asylum applications can be adjudicated without fear of persecution, torture, or retaliation by the German government.

- Jayson was abruptly taken out of his known lifestyle, and the country he calls his home, against his will, and against the law, and he has not had any contact from his family ever since. This is unbearable for an 11 year old, not to mention the psychological trauma of having lost his family, and the pain and suffering this is causing the entire family by not knowing the whereabouts and the safety of the child.

- Furthermore, throughout their entire case, ICE has discriminated against the family by violating their civil rights and civil liberties, and ignoring its own directive on facilitating Parental Rights (released in 08/13) and has not supported the family:

  - Nicole and Petra have been forced to bear the consequences of harassment, abuse and discrimination (that are specifically listed in the 287-G Program Complaint Process), by the DHS authorities and the facilities under contract with ICE. As a result Nicole suffered from an early miscarriage at the beginning of her detention, which left deep emotional scars on her, with which she is still dealing.
  - Additionally, Nicole's health continues to steadily decline, as she is dealing with frequent chest pains, has developed Anemia (frequently cold and turning blue), and has suffered significant weight loss, without receiving proper health care or nutrition.
  - Petra has been taken to the hospital numerous times due to heart and high blood pressure issues. She is so malnourished that one can see her veins through the palms of her hands. She is also painfully suffering with multiple herniated discs (with no treatment), and she is also emotionally dealing with losing her child, as a result of ICE / DHS allowing Germany to kidnap her child.
  - The detention of Petra and Nicole has also caused hardship to Nicole's 80-year-old grandmother, who lives in Los Angeles but only speaks German, and relies on their care. She needs urgent medical care now, and she has a serious health condition (**Cellulitis, which can cause death**), as she was already rushed to the emergency room twice, and her condition continues to decline.
  - As discussed in the attached documentation, in January 2015, Nicole was threatened by another detainee, Maria Avila-Baca, who, I understand, has a violent history and was in prison for approximately ten years for murder or manslaughter. Nonetheless, *Nicole*, rather than Ms. Avila-Baca, was locked in solitary confinement for almost two weeks. Although the facility referred to this solitary confinement as "protective custody," the name and supposed purpose do not change the fact it was Nicole, rather than Ms. Avila-Baca, who was confined. In fact, Ms. Avila-Baca was returned to the facility's general population and had the relatively full freedom that the other detainees enjoy while Nicole was confined. This not only served to punish Nicole - the victim - but also made all of the other detainees aware that Nicole had filed a complaint against Ms. Avila-Baca, even though such complaints are supposed to remain confidential.
  - Both Petra and Nicole have requested on numerous occasions that, until they are released, they be kept together in the same detention facility, so that at least this portion of the family be kept together. Currently in Otay, Petra has been subjected to mistreatment and fears the other detainees, who include drug felons and other convicts, whereas Petra has no convictions. One detainee - **Alba Medina, A# 098-023-895** - was recently transferred from Otay (where Petra is)

21

to the Santa Ana City Jail (where Nicole is) and confirms Petra's account of her mistreatment there. Ms. Medina's transfer also demonstrates that a transfer from Otay to the Santa Ana City Jail is possible, and until her release from detention, Petra requests that she be similarly transferred, so that she and Nicole can be together until released from Immigration detention.
- ○ In short, as a result of their current detention, Nicole and Petra have been traumatized and put in an extreme situation that is affecting their physical and mental well-being.


## 2.    **Significant Public Benefit**


Petra and Nicole's Humanitarian Parole will also constitute a significant public benefit for the following reasons:

- As discussed, Petra, Nicole, and Jayson Albrecht are all witnesses in civil and criminal court against Alexandra Paul and Ian Murray, a celebrity neighborhood couple who utilized the Immigration process to avoid criminal prosecution by co-opting one law enforcement agency (ICE) to prevent other law enforcement agencies from prosecuting them for a series of criminal activities committed against the Albrecht family.

- Witness tampering, perjury, and obstruction of justice were the catalysts for the family losing their child, Jayson, a key crime witness. As outlined, Petra and Nicole have been virtually powerless to prevent this series of events, due to their current detention by ICE.

- The prosecution of the persons who have threatened the Albrecht family members' lives will be in the interest of the people of the United States and benefit the public, not only because there is always a public interest in securing the conviction of individuals who commit such violent crimes but also because said convictions will prevent Ms. Paul and Mr. Murray from being able to threaten others in a similar manner.


It is unconscionable that Nicole and Petra are still in ICE custody, especially given the lack of criminal record, as contrasted with the serious criminal records of their fellow detainees who have since been released.The factors meriting humanitarian parole are substantial, and have been laid out in numerous humanitarian parole requests that I have submitted, but ICE / DHS continues to act with complete disregard and with no urgency regarding this matter, and with the approach that they do not deserve any type of release, even though the courts (especially the Ninth Circuit Court of Appeals) have affirmed their right to be released if they qualify for release. This is especially so in light of President Obama's order that is based on basic human decency.

Presidents, both Democratic and Republican, have used their discretion to not deport categories of people for reasons of humanitarian concerns, and resource decisions. Also, Jeh Johnson, the Secretary of Homeland Security has directed immigration authorities anew to focus on finding and deporting immigrants who pose a national security or public safety threat, those who have serious criminal records, and those who have recently crossed the Mexican border. In other words, the government must set priorities. This is also outlined in the attached nine-page directive "Facilitating Parental Interests" (Aug. 2013), which states that ICE agents are free to consider the background of the immigrant they are taking into custody, and use their own discretion in detaining and deporting undocumented immigrants. The policy also allows officers to consider alternatives to detention and urges them to act early in enforcement cases.

22

Again, it should be noted that the negligent stall tactics for months, by the Los Angeles and Santa Ana, CA field offices, should be investigated extensively, due to causing the Albrecht family more harm, and they cannot be allowed to make judgements regarding the Albrecht cases anymore. A decision has to be reached outside of these field offices. The same type of neglect and stall tactics have been used to ignore other detainees' rights and cases, by officers, supervisors, FOD's and others, despite my numerous requests made to FOD David Jennings, Deputy Ruben Vela Jr., Arturo Trevino, Officers Quinones, Leon and Venetta, among others.

For the foregoing reasons, and in consideration of criteria set out by the Women's Refugee Commission regarding detained and removed parents with child custody concerns, the need for the Department of Homeland Security to grant Petra and Nicole Albrecht Humanitarian Parole should be underscored. In the alternative, they should be released on their own recognizance or on bond, as others who are eligible for the same.

I respectfully request that you please get back to me within a couple of days, as we do not deserve to be put off any longer.

Thank you for your timely consideration of this matter.

All the best,

Josh Effron
Attorney at Law
Immigrant Rep, Inc.
http://www.immigrantrep.com

Tel: (310) 427-7705
Fax: (310) 988-2886
P.O. Box 4736
Rolling Hills Estates, CA, 90274

CONFIDENTIAL: This communication is private and confidential. Additionally, it is intended to constitute an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510. Its disclosure is strictly limited to the recipient intended by the sender of this message. This communication contains confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete and destroy all copies of this communication.

23

and Customs Enforcement. This document is for INTERNAL GOVERNMENT USE ONLY and may be exempt from disclosure under the Freedom of Information Act, 5 USC §§ 552(b)(5), (b)(7).

**From:** Richard [mailto:rochosbt@hotmail.com]
**Sent:** Tuesday, December 16, 2014 7:19 AM
**To:** OPLA-PD-LOS-OCC,
**Subject:** ILLEGAL EXTRADITION OF JAYSON ALBRECHT

# _URGENT / FAX / E-MAIL_

# _STOP THIS EXTRADITION TODAY!_

# _RE: ILLEGAL EXTRADITION_
# _OF JAYSON ALBRECHT_

DATE: **12/16/14**

24

December 16th, 2014

Sandra D. Anderson, Chief Counsel - Office of the Chief Counsel

606 South Olive Street 8th Floor

Los Angeles, CA, 90014

Phone: 213-894-2805

CC: Joshua Effron- Immigration Attorney

Scott Clarke- Dependency Attorney

RE: Asylum of Minor Child- Jayson Albrecht

Child's Mother- Petra Albrecht- A # 206 409 411

Dear Sandra D. Anderson / Chief Counsel,

We would like you to be aware that German citizen, 11 year old Jayson Albrecht has no legal status, and that he has a pending affirmative asylum case. His mother, Petra Albrecht is detained and is in asylum only proceedings in immigration court, where her case is based upon protecting her son. Jayson's status should be adjusted to his mothers, and the cases should be consolidated and expedited into the immigration courts immediately.

You should also be aware that the mother and child asylum claims are based on protecting Jayson Albrecht against the same authority that wants to extradite him back to Germany, therefore, it is the duty of the United States to protect the mother and child until the immigration courts have decided on their cases.

Since they are present in the United States, the law protects them, and they have a right to make asylum claims if the feel they would face great harm by returning to their home country. Germany is ignoring the fact that there are asylum cases filed, and since they have pending asylum claims, the decision lies with the immigration courts and not any other federal entity. Since Jayson was not originally placed into the immigration system as he should have been, with his mother, he had no protection. When Jayson is placed into the immigration system, he can be allowed to reside with his U.S. relatives instead of remaining in foster care with complete strangers, as outlined in the ICE Parental Interests Directive.

25

Thank you,

Richard Wheeler

310-293-1847

26

From: OPLA-PD-LOS-OCC@ice.dhs.gov
To: rochosbt@hotmail.com; OPLA-PD-LOS-OCC@ice.dhs.gov
Subject: RE: ILLEGAL EXTRADITION OF JAYSON ALBRECHT
Date: Tue, 16 Dec 2014 16:34:16 +0000

Dear Mr. Wheeler,


Thank you for your email. Matters involving the foster care system and placement are beyond my responsibilities.


Sincerely,


Sandra D. Anderson

Chief Counsel

Los Angeles Office of the Chief Counsel

U.S. Department of Homeland Security

U.S. Immigration and Customs Enforcement

606 S. Olive Street, 8th Floor

Los Angeles, CA 90014


(213) 633-4308 (office)

(213) 804-6381 (mobile)

**\*\*\* Warning \*\*\* Attorney/Client Privilege \*\*\* Attorney Work Product \*\*\***

This communication and any attachments may contain confidential and/or sensitive attorney/client privileged information or attorney work product and/or law enforcement sensitive information. It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient. Please notify the sender if this email has been misdirected and immediately destroy all originals and copies. Furthermore do not print, copy, re-transmit, disseminate, or otherwise use this information. Any disclosure of this communication or its attachments must be approved by the Office of the Principal Legal Advisor, U.S. Immigration

27

TO: OFFICE OF THE CHIEF COUNSEL

ATTN: SANDRA D. ANDERSON- CHIEF COUNSEL


FAX#:


# FROM: OTAY DETAINEE PETRA ALBRECHT

# A#- 206 409 411

# FAX:


NUMBER OF PAGES INCLUDING COVER SHEET:  3


*SEE ATTACHED LETTER, PICTURES AND TESTIMONIAL!*

*CONTACT- RICHARD WHEELER- 310-293-1847*


*\*\*\*IMPORTANT: THIS FAX TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION AND IS FOR THE SOLE USE OF THE INTENDED RECIPIENT.  IF YOU RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY THE SENDER BY TELEPHONE OR FAX AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION OF THIS MESSAGE IS PROHIBITED.*


28

December 16th, 2014

Sandra D. Anderson

Chief Counsel - Office of the Chief Counsel

To: Sandra D. Anderson

RE: Extradition of my child, German citizen Jayson Albrecht

I, Petra Albrecht, A #206 409 411, mother of the above named child Jayson Albrecht, born on 04/25/03 hereby notify the German embassy, that I am currently detained in the United States of America for asylum proceedings in immigration court. My son Jayson Albrecht who is a minor and is also present in the United States, is included in my pending asylum claim, and has additionally an affirmative asylum case pending against the same German authority that tries to extradite him back to Germany. Being present in the United States entitles me and my son the right to file for asylum and get protection under the laws of the United States. Therefore, the jurisdiction lies in the hands of the immigration court of the United States of America, and I am immediately requesting Germany to stop the "unlawful extradition" of my son, decided by a dependency judge that never had any jurisdiction about the decision, and mislead German representatives from the German Consulate to make wrong decisions in support of the dependency court on behalf of the German Jugendamt.

Jayson was illegally placed in dependency proceedings when he should have been placed with me into immigration proceedings from the beginning. Dependency court deals with cases related to child abuse and neglect, and no prove was ever found, therefore the case should have never been opened against him. My child could have also resided with U.S. relatives instead of being placed with complete strangers in a foster family, under the supervision of a Latino foster agency that deals with Hispanic children. He is not allowed to communicate in his native language, nor does he have any ties to the German culture anymore. The court nor CPS considered emotional ties between my child and his family, and his wish to return to his family and to remain in the United States. There was no form of contact arranged between my son and his family for over three months.

During the entire dependency proceedings, my procedural rights were violated and I became a victim misconduct and discrimination after a celebrity neighborhood couple, involved in a series of criminal activities against my family, (threats to our lives, obstruction of justice and witness tampering) to which my son is a key witness in open criminal and civil cases / court proceedings in the United States, had reached out to Child Protective Services (Celeste Aceves) and other authorities to help instigate and create a case without any evidence in dependency court, to be able to detain my son in foster care far

29

away from his neighborhood, simply to avoid facing prosecution, and incriminate my family with the help of the German authorities.

Recently received documents show a criminal pattern from different authorities involved in my child's case, fabricated lies without any back up. My detention in immigration allowed the court to stall the case for three months and act behind my back. I was never notified as required by law that a case was opened in dependency court on my child and why my child was in foster care. I did not receive any information nor updates, I was not allowed to attend any court hearings and ask questions, therefore I could not defend and represent myself, including regarding my asylum claim.

German cannot disregard the asylum cases that have been filed in the United States of America, which gives my son and I protection under the laws of the United States until the immigration court has decided on our cases. Additionally, I want the German authorities to know that my son is a key witness to crimes which occurred in the U.S against my family, and a pending court case which he needs to be present. Jayson has lived in the United States for over three years and has been "Americanized" and fully integrated into the community, has many friend, and received the Most Inspirational Junior Lifeguard award in 2014, and is a green and black belt at his karate dojo, and has no ties to Germany anymore.

I request in the best interest of the child to immediately remove my son from foster care and place him with his relatives in the United States, with my son in-law Richard Wheeler until the immigration matter is decided.

Respectfully,


Petra Albrecht


CC: Scott Clarke- Dependency Attorney

Joshua Effron- Immigration Attorney

CC: DHS, ICE, German Embassy,

German Consulates, USCIS, News Media

# EXHIBIT 19



Immigr        .ep, Inc.
PO Box 4736
Rolling Hills Estates, CA 90274

☎: (310) 427-7705
📠: (310) 988-2886
✉: info@immigrantrep.com
🌐: www.immigrantrep.com

**IMMIGRANT REP**

June 19, 2015

The Department of Homeland Security
The Honorable Jeh Johnson
Secretary of Homeland Security
Washington, D.C.  20528

RE: Illegal Extradition of Jayson Joel Albrecht

Dear Secretary Johnson,

My name is Joshua Effron, and I represent Petra Albrecht, mother of Jayson Albrecht, a minor child. (Please see the attached copy of my G-28.)

The purpose of this letter is to inform the Department of Homeland Security of the illegal extradition of Jayson Albrecht (United States Alien Registration Number **206-409-422**), and the urgent request to have him brought back to the United States immediately, since he is protected under the United Nations Protocol Relating to the Status of Refugees, which was signed in New York on January 31, 1967, to which both the United States and Germany are parties, particularly in light of the fact that Jayson Albrecht is a minor child.

### Background

On December 17, 2014, Jayson Albrecht was extradited back to Germany, both against his will and against the law, inasmuch as a final decision had not yet been reached on his application for Asylum, Withholding of Removal, and protection under the United Nations Convention Against Torture, which remains pending with United States Citizenship and Immigration Services (USCIS) to this day, Receipt Number # **ZLA1400174260**.

Both international treaty law and domestic laws uphold the right of a refugee/asylum applicant to *non-refoulement*. As a result of this asylum application, jurisdiction over Jayson Albrecht's asylum application had already been taken out of the hands of the California dependency court at the time of the ruling. As a result, the decision against Jayson, returning him to Germany against his will while he had a pending asylum application, was unlawful, as federal law in the U.S. supersedes any extradition conducted by a U.S. State court. It should also be mentioned that Jayson is a key witness to crimes committed against him in California, and the matter remains pending in California State court; Jayson is expected to testify in those court proceedings in the near future.

Jugendamt also provided false and assumed information per the letter between Jugendamt representative, Julia Bania, and Child Protective Services, Ms. Mendoza (see attached) stating that Jugendamt is the legal guardian of Jayson Albrecht, and as of <u>10/15/2014</u>, Jayson's mother, Petra Albrecht, will no longer reside in the United States. The letter went on to state that, assuming that Petra Albrecht resumes her residence in Germany, then Jugendamt would decide if there would be mother and son contact.

There was never any proof that Petra Albrecht was returning to Germany (as she has filed for asylum), and she no longer owns a home in Germany. Regardless, Jayson Albrecht is still protected because he has his own individual asylum claim allowing him to remain in the United States while the application is pending, notwithstanding his mother's status.

Conclusion

Jayson is still protected under both international and domestic law: he is a minor, and Jugendamt lacks jurisdiction over him while his U.S. asylum application remains pending.

We are advising you that Jayson Albrecht must be sent back to the United States immediately, so his pending asylum application can be adjudicated in the country that has jurisdiction over the child, the United States of America.

Please see the provided contact information for Jugendamt, and as to whom you should contact to have the child immediately returned to the United States:

> Jugendamt
> Adolf-Dechert-Strasa 1
> 16515 Oranienburg
> Attn: Mrs. Julia Bania
> Julia.Bania@oberhavel.de
> Tel- 3301/601-4841
> Fax- 3301/601-403
> RE: File Reference- 31.1.VO-Pf-11/A-1

Should you have any questions or concerns regarding this, please feel free to contact me at (310) 427-7705 (telephone), (310) 988-2886 (fax), or by e-mail at effron@immigrantrep.com .

Sincerely,

Joshua Effron, Esq.
President
Immigrant Rep, Inc.

32



# Notice of Entry of Appearance
## as Attorney or Accredited Representative
### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 02/29/2016

**Part 1.  Information About Attorney or Accredited Representative**

Name and Address of Attorney or Accredited Representative

**1.a.** Family Name *(Last Name)*   Effron

**1.b.** Given Name *(First Name)*   Joshua

**1.c.** Middle Name

**2.** Name of Law Firm or Recognized Organization
Immigrant Rep Inc

**3.** Name of Law Student or Law Graduate

**4.** State Bar Number   CA, 225247

**5.a.** Street Number   POB 4736

**5.b.** Street Name

**5.c.** Apt. ☐   Ste. ☐   Flr. ☐

**5.d.** City or Town   Rolling Hills Estate

**5.e.** State   CA   **5.f.** Zip Code   90274

**5.g.** Postal Code

**5.h.** Province

**5.i.** Country
United States

**6.** Daytime Phone Number ( 3 1 0 ) 4 2 7 - 7 7 0 5

**7.** E-Mail Address of Attorney or Accredited Representative
effron@immigrantrep.com

**Part 2.  Eligibility Information For Attorney or Accredited Representative**

(Check applicable items(s) below)

**1.** ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following State(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia.

**1.a.** California

**1.b.** I *(choose one)* ☒ **am not** ☐ **am** subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law. (If you are subject to any order(s), explain fully in the space below.)

**1.b.1.**

**2.** ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States, so recognized by the Department of Justice, Board of Immigration Appeals pursuant to 8 CFR 292.2. Provide the name of the organization and the expiration date of accreditation.

**2.a.** Name of Recognized Organization

**2.b.** Date Accreditation expires
*(mm/dd/yyyy)* ▶

**3.** ☐ I am associated with

**3.a.**

the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative is at his or her request. If you check this item, also complete **number 1 (1.a. - 1.b.1.) or number 2 (2.a. - 2.b.)** in **Part 2** *(whichever is appropriate)*.

**4.** ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2)(iv).

Form G-28 02/28/13 N

Page 1 of 2

33

This appearance relates to immigration matters before (select one):

1. ☐ USCIS - List the form number(s)

1.a.

2. ☒ ICE - List the specific matter in which appearance is entered

2.a. **All Immigration Matters**

3. ☐ CBP - List the specific matter in which appearance is entered

3.a.

I hereby enter my appearance as attorney or accredited representative at the request of:

4. Select only one:   ☐ Applicant   ☐ Petitioner
        ☒ Respondent (ICE, CBP)

Name of Applicant, Petitioner, or Respondent

5.a. Family Name (*Last Name*)  Albrecht

5.b. Given Name (*First Name*)  Petra

5.c. Middle Name

5.d. Name of Company or Organization, if applicable

NOTE: Provide the mailing address of Petitioner, Applicant, or Respondent and not the address of the attorney or accredited representative, except when a safe mailing address is permitted on an application or petition filed with Form G-28.

6.a. Street Number and Name  Ice Custody

6.b. Apt. ☐  Ste. ☐  Flr. ☐

6.c. City or Town  San Diego

6.d. State  CA   6.e. Zip Code

7. Provide A-Number and/or Receipt Number

206409411

Pursuant to the Privacy Act of 1974 and DHS policy, I hereby consent to the disclosure to the named Attorney or Accredited Representative of any record pertaining to me that appears in any system of records of USCIS, ICE, or CBP.

8.a. Signature of Applicant, Petitioner, or Respondent

8.b. Date   (mm/dd/yyyy) ▶  1/22/15

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before the Department of Homeland Security. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

1. Signature of Attorney or Accredited Representative

2. Signature of Law Student or Law Graduate

3. Date   (mm/dd/yyyy) ▶  09/28/2014

1.



34

Landkreis Oberhavel

Landkreis Oberhavel  PSF 10 01 45 • 16501 Oranienburg

Dezernat II – Bildung und Finanzen
FB Jugend
FD rechtliche Jugendbetreuung

Adolf-Dechert-Straße 1
16515 Oranienburg

**Attn.: Mrs. Mendoza**

**For submission at the appropriate court**

www.oberhavel.de

**File Reference:**
**31.1.VO-Pf-11/A-1**
**Processed by:**
**Mrs. Bania**
**Official Guardian**
**Tel: +3301/601-4841**
**Fax: +3301/601-403**
Julia.Bania@oberhavel.de

**10/09/2014**

Guardianship for Jayson Joel Albrecht, DOB 04/25/2003

Dear Sirs,

The Jugendamt [Youth Welfare Office] of the county of Oberhavel is the legal guardian for Jayson Joel Albrecht. Its sphere of influence among other things encompasses the custodial right to determine the place of residence.

On the part of the official guardian there is still a continued desire of Jayson's return to Germany. This also takes into consideration the fact, that the child's mother, Mrs. Petra Albrecht, as of 10/15/14 will no longer reside in the United States and that there is the assumption that she will take up her usual residence in Germany. The responsible Youth Welfare Office must then review, whether the return of Jason back to his mother is worth considering and/or in what way the boy can be brought into regular contact with her. Furthermore, Jayson's father lives in Germany. He too should be allowed the possibility of regular contact with his son. This, however, is rather difficult if Jayson remains in the United States.

Also, up to his September 2011 departure to the United States, Jayson lived in Germany and attended school there. He thus could reestablish old contacts again.

With kind regards,

p.p. {signature}

Bania
Legal Guardian

Charged with the responsibilities pursuant to § 55 SGB VIII

35



**Landkreis Oberhavel**

Der Landrat

Dezernat II – Bildung und Finanzen
FB Jugend
FD rechtliche Jugendbetreuung

Adolf-Dechert-Straße 1
16515 Oranienburg

www.oberhavel.de

Landkreis Oberhavelo PSF 10 01 45 o 16501 Oranienburg

z. H. Frau Mendoza

zur Vorlage beim zuständigen Gericht

Aktenzeichen:
**31.1.VO-Pf-11/A-1**

Bearbeiter:
Frau Bania
Amtsvormund

Telefon 0 33 01 / 601 – 4841
Telefax 0 33 01 / 601 –403
Julia.Bania@oberhavel.de

09.10.2014

Amtspflegschaft für Jayson Joel Albrecht, geboren am 25.04.2003

Sehr geehrte Damen und Herren,

das Jugendamt des Landkreises Oberhavel ist Amtspfleger für Jayson Joel Albrecht. Der Wirkungskreis umfasst unter anderem das Aufenthaltbestimmungsrecht.

Von Seiten des Amtspflegers besteht weiterhin der Wunsch, dass Jayson nach Deutschland zurück kehrt. Auch in Anbetracht der Tatsache, dass sich die Kindesmutter Frau Petra Albrecht ab dem 15.10.14 nicht mehr in den USA aufhalten und davon ausgegangen wird, dass sie ihren gewöhnlichen Aufenthalt wieder in Deutschland haben wird. Das zuständige Jugendamt hat dann zu prüfen, ob eine Rückführung von Jason zu seiner Mutter in Frage kommt bzw. in welcher Form der Junge regelmäßigen Kontakt zu ihr haben kann. Des Weiteren lebt Jaysons Vater in Deutschland. Auch zum Ihm sollte es die Möglichkeit des regelmäßigen Kontaktes geben. Dies ist jedoch nur schwer möglich, wenn Jayson in den USA verbleibt.
Auch lebte Jayson bis zu seiner Ausreise in die USA im September 2011 in Deutschland und besuchte hier die Schule. Er könnte somit wieder an alte Kontakte anknüpfen.

Mit freundlichen Grüßen
Im Auftrag

i.V. G. Bania

Bania
Amtsvormund

Mit der Ausübung der Aufgaben
gemäß § 55 SGB VIII beauftragt

Hausadresse:
Landkreis Oberhavel
Adolf-Dechert-Straße 1
16515 Oranienburg

Eine angegebene E-Mail-Adresse
dient nur dem Empfang einfacher
Mitteilungen ohne Signatur.

Bankverbindungen:
Mittelbrandenburgische Sparkasse
Konto-Nr. 3740923000
BLZ 160 500 00
IBAN: DE07 1605 0000 3740 9230 90
BIC: WELA DE 01 PMB

Commerzbank Oranienburg
Konto-Nr. 150 608 000
BLZ 160 800 00
IBAN: DE77 1608 0000 0150 6080 00
BIC: DRES DE FF 160



# Jayson Albrecht- Asylum Reply- Receipt-USCIS

From: **Richard** (rochosbt@hotmail.com)
Sent: Tue 1/13/15 7:44 AM
To:    Richard (rochosbt@hotmail.com)

1/13/15

Joshua,

Here is a reply from USCIS, the actual receipt is barely legible, and it reads:

From: US Dept. of Homeland Security
Bureau of Citizens and Immigration Services
Asylum Office
PO Box 65015
Anaheim, Ca 92815-8515

Name: Jayson Albrecht
A Number- 206 409 422 RCPT# ZLA1400174260
Acknowledgement of Receipt
Date: 12/9/14
Form I-589

Your complete form I-589 asylum application was received and is pending as of 12/8/14. You may remain in the U.S. until your asylum application is decided. If you wish to leave while your application is pending, you must obtain advanced parole from BCIS. If you change your address, send written notification of the change within 10 days to the above address. You will receive a notice informing you when you and those listed on your application as a spouse or dependents must appear for an asylum interview. Bring to the interview 3 copies of your documentary evidence of your relationship to those family members.

37



R
O
M

BUREAU OF CITZ & MIGRATION SVCS
ASYLUM OFFICE
P O BOX 43015
ANAHEIM, CA 92815-8515

T
O

AYSEN ALBRECHT
17133 PALISADES CIR
PACIFIC PALISADE, CA  90272

38

Dear Mama,

I love you and I drew you this picture to wish you a very very Mary Christmas! I wanted to tell you that I am fine and doing otay in school. My grades are very good and I'm getting enough food at the foster house. I promise that we will see each other together again soon and before Christmas. You will always be in my heart and we are always together. I will try my best to stay with you for now in Atherin. And you know how he is gonna be if they don't get along Alex. LOL! Alex we will get our right back. I can't stop thinking about you Mom I get to bed. I love you very much and I hope you write me each. Hugs and kisses from me and Alex! 😊

Love, Jayson

Orange County ... Evidence ... in case

39



Nicole Albrecht
Santa Ana Jail - M-8P
Po box 22003
Santa Ana CA. 92701

SANTA CLARITA CA 913

BK

Evidence

immigration cose

41

42

# EXHIBIT 20

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 20530

File:  A206 407 728 – Los Angeles, CA

Date:  **MAY 2 2 2015**

In re:  NICOLE <u>ALBRECHT</u>

IN BOND PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

APPLICATION:  Redetermination of custody status

The respondent, a native and citizen of Germany, appeals the bond decision of the Immigration Judge, dated March 4, 2015, denying her request for a redetermination of her custody status pursuant to the Order, Judgment and Permanent Injunction issued in *Rodriguez v. Holder*, No. 2:07-CV-03239, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013). We will dismiss the appeal.

We review an Immigration Judge's findings of fact for clear error; but questions of law, discretion, and judgment, and all other issues in appeals, are reviewed de novo. 8 C.F.R. §§ 1003.1(d)(3)(i), (ii).

We affirm the Immigration Judge's bond decision. As explained in the Bond Memorandum, dated March 19, 2015, the Immigration Judge found the Department of Homeland Security ("DHS") established, by clear and convincing evidence, that the respondent is a danger to the community (I.J. at 1-2). *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). The record indicates, the respondent was issued more than one restraining order against the victim and then violated the restraining orders (I.J. at 1). We considered the respondent's arguments on appeal, and acknowledge that the respondent has apparently not been convicted of any criminal offenses in this country. Nonetheless, given the seriousness of the respondent's recent actions, we agree with the Immigration Judge that, upon consideration of the totality of the factors, the DHS has established, by clear and convincing evidence, that the respondent is a danger to the community and a flight risk. Accordingly, as the respondent's ongoing detention has been shown to be justified, the following order is entered.

ORDER:  The respondent's bond appeal is dismissed.

_____
FOR THE BOARD

43

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 20530*

**ALBRECHT, NICOLE**
**A206-407-728**
**C/O CUSTODIAL OFFICER**
**62 CIVIC CENTER PLAZA**
**SANTA ANA, CA 92701**

**DHS/ICE Office of Chief Counsel - LOS**
**606 S. Olive Street, 8th Floor**
**Los Angeles, CA 90014**

Name: ALBRECHT, NICOLE                    A 206-407-728

**Date of this notice: 5/22/2015**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Guendelsberger, John

taylort
Userteam: Docket

44

# EXHIBIT 21

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## LOS ANGELES, CALIFORNIA

| | | |
|---|---|---|
| File Number: | **A 206 407 728** | ) **DETAINED** |
| In the Matter of: | | ) |
| | | ) |
| | **ALBRECHT, Nicole,** | ) **IN BOND PROCEEDINGS** |
| | | ) |
| Respondent | | ) |

**ON BEHALF OF RESPONDENT**
Joshua Effron, Esquire
Immigrant Rep, Incorporated
Post Office Box 4736
Rolling Hills Estates, California 90274

**ON BEHALF OF THE DEPARTMENT:**
Franklin S. Yu, Assistant Chief Counsel
U.S. Department of Homeland Security
606 South Olive Street, Eighth Floor
Los Angeles, California 90014

## BOND MEMORANDUM AND ORDER OF THE IMMIGRATION JUDGE

### I.  Procedural History

Nicole Albrecht (Respondent) is a native and citizen of Germany.  On January 26, 2015, the Court denied Respondent's applications for relief and ordered her removed.  On February 19, 2015, Respondent appealed the Court's order to the Board of Immigration Appeals (the Board).  The appeal is pending.

On March 4, 2015, the Court conducted a custody redetermination hearing pursuant to the U.S. District Court for the Central District of California's order in *Rodriguez v. Holder*, No. CV 07-3239-TJH, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013) (order granting permanent injunction); *see also Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) (affirming preliminary injunction).  At the hearing, the U.S. Department of Homeland Security (the Department) presented evidence that Respondent had been stalking an actress and the actress' husband.  Ex. B-2.  Specifically, the evidence documented that Respondent had repeatedly violated two separate restraining orders, prohibiting her from coming within 100 yards of either the actress or the actress' husband.  *Id.*, Tabs B-1.

After considering all of the evidence presented, the Court found that the Department had established by clear and convincing evidence that Respondent's ongoing detention is justified because she poses a danger to the community and a flight risk.  *See Rodriguez*, 2013 WL 5229795.  Accordingly, the Court denied her request for bond.

On March 12, 2015, Respondent appealed the Court's bond decision to the Board.  The Court provides this Memorandum to facilitate the Board's review of Respondent's appeal.  *See* Immigration Court Practice Manual, Chapter 9.3(e)(vii) (June 10, 2013).

8   45

## II.    Law and Analysis

In *Rodriguez v. Holder*, Senior U.S. District Court Judge Terry J. Hatter, Jr., ordered that bond hearings be conducted in the cases of several identified class members, each of whom have remained in immigration custody for longer than six months without being afforded a bond hearing. *See* 2013 WL 5229795. Specifically, Judge Hatter ordered the Department to provide class members with an individualized bond hearing before an immigration judge. *See id.* Additionally, the District Court's injunction requires the Department to establish by clear and convincing evidence that the respondent's continued detention is justified because the respondent is a danger to the community or a flight risk. *See id.*

In *Matter of Guerra*, the Board made clear that the Court "has extremely broad discretion in deciding whether or not to release an alien on bond." 24 I&N Dec. 37, 39 (BIA 2006). The Board provided an extensive, but not exhaustive, list of factors that the Court may consider when determining whether an alien should be released on bond. *Id.* at 39-40; *see also Matter of Saelee*, 22 I&N Dec. 1258, 1262-63 (BIA 2000); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994); *Matter of Sugay*, 17 I&N Dec. 637, 638-39 (BIA 1981). These factors include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) manner of entry to the United States.

*Guerra*, 24 I&N Dec. at 40. Additionally, "[t]he Immigration Judge may choose to give great weight to one factor over others, as long as the decision is reasonable." *Id.*

In the present matter, the Court considered the positive and negative factors in Respondent's case and determined that she poses a danger and a flight risk. The Court noted that Respondent submitted letters of support from her new husband, her acquaintances, his acquaintances, and her fellow detainees. Nevertheless, these positive factors were outweighed by Respondent's willingness to disobey the restraining orders, as evidenced by the documents in the Department's submission. Ex. B-2, Tabs C-M. In particular, the letter that Respondent wrote to the actress' mother indicates that Respondent is completely irrational regarding the appropriateness of her own behavior toward the actress and the actress' husband. *Id.*, Tab J. Their statements, as well as the statement of Respondent's former roommate, indicate that Respondent refuses to leave the actress and the actress' husband alone and that she poses a danger to them. *Id.*, Tab K-M. Furthermore, Respondent was unwilling to discuss the events documented in the Department's submission and explain her conduct to the Court.

With regard to Respondent's flight risk, the Court noted that Respondent's refusal to abide by the law militates strongly against the likelihood that she will comply with future court

orders. The Court also considered that Respondent's limited prospects for relief diminish her incentive to appear for future proceedings if she is released from the Department's custody. *See Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1988) ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief."). In the present matter, the Court already ordered Respondent removed on January 26, 2015; the Court denied her applications for asylum and withholding of removal because she failed to establish a nexus to a protected ground, did not establish harm rising to the level of persecution, and had no objective basis for her fear of returning to Germany. IJ Oral Decision at 6 (Jan. 26, 2015). There is no indication that Respondent's appeal to the Board will be successful.

Accordingly, the Court found that the positive factors in Respondent's case did not outweigh the negative factors presented by her history of noncompliance with civil and criminal restraining orders, stalking, and reduced incentive to appear at future proceedings. Furthermore, the Court considered alternatives to detention and found them inadequate. Therefore, the Court concluded that the Department had established by clear and convincing evidence that Respondent's ongoing detention is justified because she is a danger and a flight risk. *See Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) ("An Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community.").

Accordingly, the Court entered the following order:

## ORDER

**IT IS HEREBY ORDERED** that Respondent's request for custody redetermination pursuant to *Rodriguez v. Holder* be **DENIED**.

DATE: 3/18/15

John F. Walsh
Immigration Judge

47

# EXHIBIT 22

Statements from

1   Alexandra Paul
2   Marguerite Lalonde
3   Shohre Rad
4   Ian Murray
5

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

8
9   Alexandra Paul                    )
10                                     )        CASE NO. 55 0 2 3 7 0 4
        Plaintiff,                     )
11   · vs.                             )        _____
12   Nicole Albrecht                   )        _____
                                       )
13          Defendant.                 )
14

26   DATED: _____
                                       Print or Type Name
27
28

48

**CH-109**    **Notice of Court Hearing**

Clerk stamps date here when form is filed.

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 22 2013

JOHN A. CLARKE, CLERK
BY G. VILLARREAL, DEPUTY

**(1) Person Seeking Protection**

a. Your Full Name: Alexandra Elizabeth Paul

Your Lawyer *(if you have one for this case):*
Name: _____
Firm Name: _____ State Bar No.: _____

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.):*

Address: PO Box 1544
City: Pacific Palesades State: CA Zip: 90272
Telephone: _____ Fax: _____
E-Mail Address: _____

Fill in court name and street address:
Superior Court of California, County of
**Santa Monica Courthouse**
**1725 Main Street**
**Santa Monica, CA 90401**

Court fills in case number when form is filed:
Case Number: **SS023704**

**(2) Person From Whom Protection Is Sought**
Full Name: Nicole Albrecht

*The court will complete the rest of this form.*

**(3) Notice of Hearing**

A court hearing is scheduled on the request for restraining orders against the person in (2):

| Hearing Date | Date: 09/12/1 Time: 8:30 Am | Name and address of court if different from above: |
|---|---|---|
| | Dept.: E Room: 115 | |

**(4) Temporary Restraining Orders** *(Any orders granted are on Form CH-110, served with this notice.)*

a. Temporary Restraining Orders for personal conduct and stay-away orders as requested in Form CH-100, *Request for Civil Harassment Restraining Orders,* are *(check only one box below):*

(1) ☑ All **GRANTED** until the court hearing.

(2) ☐ All **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

(3) ☐ Partly **GRANTED** and partly **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

Judicial Council of California, www.courts.ca.gov
New January 1, 2012, Mandatory Form
Code of Civil Procedure, § 527.6
Approved by DOJ

**Notice of Court Hearing**
**(Civil Harassment Prevention)**

CH-109, Page 1 of 3
→

49

My name is Marguerite LaLonde and I reside and have resided at 17181 Avenida De Santa Ynez, Pacific Palisades, CA 90272 since March, 2012.

In January, 2013, Nicole Albrecht, her mother Petra and brother Jayson moved into my residence where I lived.

Between January, 2013 and March 2013 Nicole's behavior was pretty normal although she had a strict schedule with regards to the Spectrum Gym early in the morning and to the Homeowner's Community Pool later in the day. Nicole said that she had to work out on a certain treadmill at a certain time.

On or about May 13, 2013, I was not pleased when Nicole told me that she needed my car because her car got towed. Nicole stated that the man that she hated and the man that was keeping her from talking to a certain woman, had it towed. At this point, I asked about this man and learned that it was Ian, the husband of the woman, Alexandra Paul.

May, 2013 is when blatant behavioral changes in Nicole were evident. Nicole would come home from the Spectrum gym and have to lay down because she felt sick and nervous. Nicole said that this Ian guy must have said something to Alexandra because now, "Alexandra will not look at me or talk to me when I start to work out by her. In fact, Alexandra just leaves or walks to another part of the gym". Nicole perceived Alexandra's behavior as not scared of Nicole, but scared of what Ian would do if Alexandra was "caught" talking with Nicole. Nicole said that she couldn't stand Ian.

Nicole became more obsessed with going to the gym and going to the pool. It is important to note that Nicole and I never any issues between the two of us.

Nicole stated to me that she was certain that Ian was hurting and abusing Alexandra. Nicole said that she hated Ian and that Ian had confronted Nicole, I believe at the gym, and told Nicole to stay away from his wife. This only made Nicole more certain to get Alexandra away from Ian. Nicole even carried a note in her waistband to give to Alexandra. Nicole stated to me that she knew where all the cameras were located at the Spectrum and that she wanted to give and/or talk with Alexandra away from the cameras, and this is why she had not given Alexandra her note.

Nicole stated to me that she knew the woman specifically wanted Nicole to save her. I asked Nicole how she knew and Nicole stated to me that she could tell by the way the woman looked into her eyes. Nicole said that she knew the deep message behind those eyes.

I also witnessed Nicole changing her personal schedule to match Alexandra's schedule at the Spectrum. On days wherein she missed seeing Alexandra, Nicole would be all the more certain to find Alexandra as soon as possible. She was obsessed with being in the same presence as Alexandra and Nicole told me that she just wanted Alexandra to get in Nicole's car so that Nicole could talk to Alexandra away from everyone. Nicole said that she grabbed Alexandra's arm to try to get Alexandra to get into her car, but that "everything turned out wrong". Nicole was convinced that Ian was stalking Nicole and telling everyone to stay away from Nicole. She told me, "I hate that man for being in the way".

On one occasion, Nicole told me that she ran into Alexandra on the hiking trail, saw her on the phone, got as close as she could to hear if Alexandra was truly talking to someone. Nicole showed me the note she had in her waistband and said she forgot to give it Alexandra. I never knew Nicole to hike or run on the trails so asked how she ran into Alexandra out in the middle of the woods and Nicole said that she didn't know. I told Nicole should just leave her alone but Nicole said that she had to save Alexandra, that she was probably scared that her husband was following her or waiting for her and/or would find out about this incident and hurt Alexandra.

On another occasion, our landlady said that a man came to the door, looking for Petra, Nicole's mother. Nicole was convinced that this man was Ian even though the description was that of a short, dark-haired man. I reiterated this to Nicole, but Nicole stated at that time again that she was convinced that Ian had her car towed and that he was now coming to the house. I have never seen Ian near the house and have not met him prior to court today.

I tried (on several occasions) to convince Nicole to just leave Alexandra alone. Nicole said that she could never leave this situation, much less Alexandra alone. I realized that Nicole's behavior was based on having to be near Alexandra whenever she could, no matter what. I knew that at some point Nicole would be served with a restraining order because the whole matter was escalating very rapidly.

Nicole told me that when she did see Ian at the pool, she would try go get close to him because she was certain he was talking to other people about her.

Nicole and her family moved out of the house around August 17, 2013 after they were evicted by the landlord for other reasons. Nicole and I have not had any contact since then.

In my opinion, Nicole should not be allowed to even see Alexandra at this point, much less be in the same arena. Any sight of Alexandra only fuels Nicole's frustration. It is disturbing to observe and I feel that Nicole needs professional counseling to guide her out of this horrible fantasy of hers. Extreme measures need to be implemented immediately so that this situation does not get more convoluted; even to the point of a person's demise. I definitely see this scenario getting more out of control if not addressed accordingly. To date, in my opinion, Alexandra and Ian's general livelihood and well-being are at risk.

Sincerely, *Marguerite LaLande  9/12/13*

Marguerite Lalonde

(347) 687-2306

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

*Marguerite LaLande*

Court Statement of Marguerite LaLonde

My name is Marguerite LaLonde and I reside and have resided at 17181 Avenida De Santa Ynez, Pacific Palisades, CA 90272 since March, 2012.

In January, 2013, Nicole Albrecht, her mother Petra and brother Jayson moved into my residence where I lived.

Between January, 2013 and March 2013 Nicole's behavior was pretty normal although she had a strict schedule with regards to the Spectrum Gym early in the morning and to the Homeowner's Community Pool later in the day. Nicole said that she had to work out on a certain treadmill at a certain time.

On or about May 13, 2013, I was not pleased when Nicole told me that she needed my car because her car got towed. Nicole stated that the man that she hated and the man that was keeping her from talking to a certain woman, had it towed. At this point, I asked about this man and learned that it was Ian, the husband of the woman, Alexandra Paul.

May, 2013 is when blatant behavioral changes in Nicole were evident. Nicole would come home from the Spectrum gym and have to lay down because she felt sick and nervous. Nicole said that this Ian guy must have said something to Alexandra because now, "Alexandra will not look at me or talk to me when I start to work out by her. In fact, Alexandra just leaves or walks to another part of the gym". Nicole perceived Alexandra's behavior as not scared of Nicole, but scared of what Ian would do if Alexandra was "caught" talking with Nicole. Nicole said that she couldn't stand Ian.

Nicole became more obsessed with going to the gym and going to the pool. It is important to note that Nicole and I never any issues between the two of us.

Nicole stated to me that she was certain that Ian was hurting and abusing Alexandra. Nicole said that she hated Ian and that Ian had confronted Nicole, I believe at the gym, and told Nicole to stay away from his wife. This only made Nicole more certain to get Alexandra away from Ian. Nicole even carried a note in her waistband to give to Alexandra. Nicole stated to me that she knew where all the cameras were located at the Spectrum and that she wanted to give and/or talk with Alexandra away from the cameras, and this is why she had not given Alexandra her note.

Nicole stated to me that she knew the woman specifically wanted Nicole to save her. I asked Nicole how she knew and Nicole stated to me that she could tell by the way the woman looked into her eyes. Nicole said that she knew the deep message behind those eyes.

I also witnessed Nicole changing her personal schedule to match Alexandra's schedule at the Spectrum. On days wherein she missed seeing Alexandra, Nicole would be all the more certain to find Alexandra as soon as possible. She was obsessed with being in the same presence as Alexandra and Nicole told me that she just wanted Alexandra to get in Nicole's car so that Nicole could talk to Alexandra away from everyone. Nicole said that she grabbed Alexandra's arm to try to get Alexandra to get into her car, but that "everything turned out wrong". Nicole was convinced that Ian was stalking Nicole and telling everyone to stay away from Nicole. She told me, "I hate that man for being in the way".



On one occasion, Nicole told me that she ran into Alexandra on the hiking trail, saw her on the phone, got as close as she could to hear if Alexandra was truly talking to someone. Nicole showed me the note she had in her waistband and said she forgot to give it Alexandra. I never knew Nicole to hike or run on the trails so asked how she ran into Alexandra out in the middle of the woods and Nicole said that she didn't know. I told Nicole should just leave her alone but Nicole said that she had to save Alexandra, that she was probably scared that her husband was following her or waiting for her and/or would find out about this incident and hurt Alexandra.

On another occasion, our landlady said that a man came to the door, looking for Petra, Nicole's mother. Nicole was convinced that this man was Ian even though the description was that of a short, dark-haired man. I reiterated this to Nicole, but Nicole stated at that time again that she was convinced that Ian had her car towed and that he was now coming to the house. I have never seen Ian near the house and have not met him prior to court today.

I tried (on several occasions) to convince Nicole to just leave Alexandra alone. Nicole said that she could never leave this situation, much less Alexandra alone. I realized that Nicole's behavior was based on having to be near Alexandra whenever she could, no matter what. I knew that at some point Nicole would be served with a restraining order because the whole matter was escalating very rapidly.

Nicole told me that when she did see Ian at the pool, she would try go get close to him because she was certain he was talking to other people about her.

Nicole and her family moved out of the house around August 17, 2013 after they were evicted by the landlord for other reasons. Nicole and I have not had any contact since then.

In my opinion, Nicole should not be allowed to even see Alexandra at this point, much less be in the same arena. Any sight of Alexandra only fuels Nicole's frustration. It is disturbing to observe and I feel that Nicole needs professional counseling to guide her out of this horrible fantasy of hers. Extreme measures need to be implemented immediately so that this situation does not get more convoluted; even to the point of a person's demise. I definitely see this scenario getting more out of control if not addressed accordingly. To date, in my opinion, Alexandra and Ian's general livelihood and well-being are at risk.

Sincerely,

Marguerite Lalonde

(347) 687-2306

61



1

2   Nicole Albrecht _____ (Full Name)

3   11064 Mississippi Ave, ____ (Address Line 1)

    Los Angeles, CA 90025 ____ (Address Line 2)

4   310-293-1847 _____ (Phone Number)

5   Plaintiff _____ in Pro Per

6   (indicate Plaintiff or Defendant)

7

8

9               **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   Nicole Albrecht _____ ,)   Case No.: SACV15-00451
                                   )              GW (SS)
13          Plaintiff,            )

14          vs.                   )   **PROOF OF SERVICE BY MAIL**

15   Dept. of Homeland           )

16   Security / Immigration      )

17   and Customs                 )

18   Enforcement                 )

19   _____ ,     )

20          Defendant(s).         )

21   _____      )

22

23   I, Richard Wheeler _____ , declare as follows:
              (name of person serving documents)

24

25   My address is 11064 Mississippi Ave.

26   Los Angeles, CA 90025 _____ , which is located in the

     county where the mailing described below took place.
27

28

1    On ___6/29/15___, I served the document(s) described as:
2                    (date of mailing)
3
4                        (list the names of the documents you are mailing)
5    Introduction / Petitioner Reply , Exhibit 17- No Grounds to Continue Detention
6    Exhibit 18- Synopsis / Albrecht Case Overview, Exhibit 19-Illegal Jayson Albrecht Extradition
7    Exhibit 20- BIA Bond Appeal Denial, Exhibit 21- Bond Hearing Memo- Judge Walsh
8    Exhibit 22- Unlawful, Inadmissible Statement by " Neighbors"
9
10
11
12   on all interested parties in this action by placing a true and correct copy thereof in
13   a sealed envelope, with first-class postage prepaid thereon, and deposited said
14   envelope in the United States mail at or in _Los Angeles, CA_____,
15   addressed to:                                (city and state of mailing)
16   _Dept of Homeland_ (name)      _US District Court_ (name)
17   _Security (ICE_ (address)      _312 N. Spring Street_ (address)
18   _606 S. Olive St. 8th FL_ (address)   _Los Angeles, CA 90012_ (address)
19   _Los Angeles, CA 90014_ (address)   _____ (address)
20
21   I declare under penalty of perjury that the foregoing is true and correct.
22   Executed on __6/29/15__ at _Los Angeles, CA_____.
23              (date)              (city and state of signing)
24                              _____
25                              (sign)
26                              _Richard Wheeler_
                                (print name)
27
28

Pro Se Clinic Form                    2
                               Proof of Service